IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARKS CONSTRUCTION CO., INC.,
a West Virginia corporation
on behalf of
Marks Construction Co., Inc.
401(k) Profit Sharing Plan and
JAMES MARKS, KAREN MARKS,
ANGELA DAVIS and RICHARD STRAIGHT,
all individual participants
thereunder,

      Plaintiff,

v.                                Civil Action No. 1:05CV73
                                        (STAMP)

THE HUNTINGTON NATIONAL BANK
and SHARON HUGHES,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
GRANTING PLAINTIFF'S MOTION TO AMEND STATE COURT
COMPLAINT TO STATE ERISA CAUSES OF ACTION**

I.  Procedural History

Plaintiff Marks Construction Company, Inc. ("Marks Construction"), on behalf of its 401(k) profit sharing plan, and James Marks, Karen Marks, Angela Davis, and Richard Straight initiated this action in the Circuit Court of Harrison County, West Virginia against defendants Huntington National Bank ("HNB") and Sharon Hughes. The complaint alleges breach of fiduciary duty, negligence, fraud, and liability of HNB for Hughes's wrongful conduct under the doctrine of respondeat superior. As relief, the plaintiff seeks compensatory, general, and exemplary damages, pre-

and post-judgment interest, and other relief as may be deemed just. The plaintiff also seeks attorneys' fees and costs.

The defendants timely removed the action to this Court, invoking federal jurisdiction on the grounds of preemption pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, <u>et seq</u>.  The plaintiff concedes that removal was proper, and this Court agrees that it has jurisdiction over this action pursuant to ERISA.

Thereafter, the defendants filed an answer, which they subsequently amended to add a counterclaim.  Pursuant to this Court's scheduling order, the parties began conducting discovery. Before discovery was completed, the defendants filed a motion for summary judgment.  By agreement of the parties, this Court ordered that all further proceedings be stayed pending a ruling upon the defendants' motion for summary judgment.  The plaintiff then filed a response to the defendants' motion for summary judgment, to which the defendants replied.  Additionally, the plaintiff filed a motion to amend its state court complaint to state ERISA causes of action. The defendants filed a response in opposition, and the plaintiff has replied.

While these matters were under this Court's consideration, the United States Supreme Court decided <u>La Rue v. Wolff, Boberg & Associates, Inc.</u>, 128 S. Ct. 1020 (2008).  By leave of court, the parties filed supplemental memoranda to address the effect, if any,

of the Supreme Court's <u>LaRue</u> decision on the issues raised by the defendants' summary judgment motion. The parties' pending motions have been fully briefed and are now ripe for disposition. For the reasons that follow, the defendants' motion for summary judgment will be granted in part and denied in part, and the plaintiff's motion to amend its complaint to state causes of action under ERISA will be granted.

## II.  <u>Facts</u>

Count I of the plaintiff's original complaint alleges breach of fiduciary duty in connection with investment of the assets from the Marks Construction 401(k) retirement plan ("the Plan") pending conversion of the Plan from a managed plan to a participant-directed plan ("the investment claims"). Count I also alleges breach of fiduciary duty for failure of the defendants to provide proper advice in connection with repayment of loans obtained from Plan assets by Plan participants James Marks, Karen Marks, and Angela Davis ("the loan claims"). In Count II, the plaintiff alleges that the defendants had a duty to act as reasonably prudent trustees, investment advisors, and managers of the Plan's assets and that the same conduct giving rise to their claims for breach of fiduciary duty also constitutes negligence. Count III alleges common law fraud, asserting that the defendants falsely represented that they would prudently advise plaintiff Marks Construction with regard to proper investment of the Plan's assets and that they

would not allow the Plan's assets to remain improperly invested. The plaintiff alleges that it reasonably and detrimentally relied upon these representations and that it and the Plan participants have suffered financial and emotional harm as a result. Count IV of the complaint asserts that defendant HNB is vicariously liable for the conduct, actions, and omissions of defendant Hughes relating to the plaintiff's claims against Hughes in her role as HNB's representative for managing the Plan.

According to the plaintiff, HNB and its agents and employees acted as the trustees, investment advisors, and managers of the Plan. The beneficiaries of the Plan were the principal shareholders of Marks Construction, James Marks and Karen Marks, and two employees, Angela Davis and Richard Straight. HNB initially managed the Plan from its office in Columbus, Ohio, and provided services from an HNB division in Michigan.

Some time in late 2001, James Marks raised concerns with HNB concerning the Plan's performance and HNB's services relating to the Plan. At that time, James Marks explained to HNB that if the services and performance relating the Plan did not improve, Marks Construction would move the Plan to a new financial institution. In response, defendant Hughes, an HNB employee working in Charleston, West Virginia, contacted Marks Construction to address the concerns James Marks had raised on behalf of Marks Construction. Subsequently, Hughes met with James Marks, Karen

Marks, and Angela Davis at Marks Construction's office. The plaintiff claims that at that meeting, Hughes stated that if Marks Construction retained Hughes as the account representative for the Plan, she would lower the fees charged to the Plan, provide better service, and generate a higher return on the Plan assets. Relying upon Hughes' representations, Marks Construction elected to keep the Plan with HNB and to have Hughes serve as the Plan's account representative. On February 18, 2003, Marks Construction adopted a board resolution to amend the Plan effective April 1, 2003.

Thereafter, HNB converted the Plan from an HNB-managed plan to a participant-directed plan. The conversion began some time in February 2003 and was completed on September 9, 2003. To implement the conversion, HNB liquidated the Plan's investment portfolio assets over a two-day period, April 6-7, 2003, causing losses to the Plan. The plaintiff claims that Marks Construction did not authorize the liquidation of the Plan's assets and that Marks Construction learned about the liquidation only after it had been effected, when the plaintiff received a copy of the amended Plan on or about April 30, 2003. After liquidating the assets, HNB did not reinvest the proceeds, but instead placed them in a Huntington Bank Money Market Fund pending completion of the conversion process.

On July 31, 2004, the Plan was terminated and its assets distributed to each plan participant, then rolled over into

separate individual retirement accounts managed by a different financial institution, Bank One.

The plaintiff contends that the defendants breached their fiduciary duties by liquidating Plan assets without regard to gain or loss, by failing to reinvest the proceeds obtained from liquidation, and by placing proceeds in a low-interest money market fund for several months without the Plan participants' knowledge. The plaintiff seeks damages for losses sustained in liquidation and loss in income from date of liquidation until reinvestment and/or transfer of Plan assets to Bank One.

In addition to its claims relating to the investment of the Plan assets, the plaintiff also asserts claims relating to loans which Plan participants secured against Plan assets and which the defendants administered. In April 2001, James Marks, Karen Marks and Angela Davis, took out participant loans against the Plan. No amounts were repaid on those loans. HNB then reported the loan amounts as taxable income. The complaint alleges that these Plan participants executed a promissory note on the loans but believed that repayment was not required because the loan originated from funds they each owned. According to the plaintiff, the defendants failed to provide proper notification that repayment of the loans in full was required, and that failure to repay the loans would result in the loan amount being reportable as taxable income. The plaintiff further alleges that the defendants failed to provide any

notice that the payments were in default or delinquent before orally informing the Plan participants in late 2002 or early 2003 that the Plan participants would have to repay the loans in full and immediately to avoid tax penalties. The plaintiff seeks reimbursement on behalf of these Plan participants for taxes and penalties incurred.

In their motion for summary judgment, the defendants contend that the plaintiff's claims for breach of fiduciary duty and negligence are completely preempted under ERISA and, therefore, must be treated as federal causes of action which, according to the defendants, fail as a matter of law. The defendants also argue that the plaintiff's claims for common law fraud and vicarious liability are preempted by ERISA but not actionable thereunder and, consequently, must be dismissed.

The plaintiff agrees that ERISA governs this action and has filed a motion seeking leave to file an amended complaint to recast as ERISA causes of action the claims asserted in its state court complaint. However, the plaintiff disputes that the defendants are entitled to summary judgment.

## III. <u>Discussion</u>

Although the parties' summary judgment pleadings argue issues relating to the plaintiff's claims set forth in its proposed amended complaint, those arguments are not properly before this Court in the context of the pending motion for summary judgment.

Accordingly, this Court will address the summary judgment arguments insofar as they pertain to the claims set forth in the original complaint, and will then separately consider the plaintiff's motion to amend the complaint.

A.   <u>Defendants' Motion for Summary Judgment</u>

    1.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."

Anderson, 477 U.S. at 256.  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery.  See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992).  In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

2. <u>Analysis</u>

    a. <u>Preemption</u>

The plaintiff's putative state causes of action are preempted by ERISA. Counts I and II are subject to complete preemption and must proceed as federal causes of action under ERISA, and Counts III and IV are subject to simple preemption and must be dismissed. Section 514(a) of ERISA provides that, with narrow exceptions not applicable to this action, "the provisions of this title . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Claims that fall within the field defined by § 514(a) may be prosecuted as a federal action if they fall within the scope of § 502(a), which "authorizes participants or beneficiaries to file civil actions to, among other things, recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duty, clarify rights to benefits, and enjoin violations of ERISA." <u>Marks v. Watters</u>, 322 F.3d 316, 323 (4th Cir. 2003) (citing 29 U.S.C. § 1132(a)). Thus, where a putative state law claim relates to an employee benefit plan and falls within the scope of § 502(a), such claim is preempted and becomes an exclusively federal cause of action. <u>Id.</u> In other words, such claims are subject to "complete preemption" and may be prosecuted only under the statutory provisions of ERISA. <u>Id.</u> However, where a putative state law claim relates to an employee benefit plan but

does not fall within the scope of § 502(a), the prosecution of such claim is precluded by § 514(a).  Id.  That is, such claims are subject to "simple preemption" and must be dismissed.  Id.

Here, the parties agree that Counts I and II, which allege breach of fiduciary duty and negligence, respectively, in connection with the administration of an ERISA retirement plan are completely preempted by ERISA because these putative state law claims are related to an employee benefit plan for purposes of § 514(a) of the statute and fall within the scope of ERISA § 502(a).  Although not pled as ERISA causes of action, these allegations directly relate to an ERISA plan and assert breaches of ERISA's core fiduciary standards of loyalty and care, in violation of §§ 502(a)(2) and (3).  See ERISA §§ 409, 502(a)(2)-(3), 29 U.S.C. §§ 1009, 1132(a)(2)-(3).  Therefore, Counts I and II are completely preempted and must be prosecuted as federal causes of action arising under ERISA.

As to Counts III and IV, which allege common law fraud and vicarious liability, respectively, the defendants argue, and the plaintiff does not dispute, that these claims relate to an ERISA plan for purposes of § 514(a) but do not fall within the scope of § 502(a) and are therefore not actionable.  The plaintiff's fraud claim relates to allegedly false representations made by the defendants concerning the administration of an employee benefit plan.  Because the state law fraud claim arises out of the same

underlying facts as the ERISA claims for breach of fiduciary duty and because there is no statutory counterpart under § 502(a) for a fraud claim, it must be dismissed. <u>See</u> <u>District 65 Retirement Trust v. Prudential Securities, Inc.</u>, 925 F. Supp. 1551, 1562 (N.D. Ga. 1996). Similarly, the plaintiff's claim for vicarious liability arises from alleged conduct by HNB's agents and employees relating to the administration of an employee benefit plan; however, ERISA provides for no comparable claim for vicarious liability in § 502(a). <u>See</u> <u>David P. Coldesina, D.D.S. v. Estate of Simper</u>, 407 F.3d 1126, 1138-39 (10th Cir. 2005). Therefore, the claim for vicarious liability must be dismissed.

In sum, ERISA completely preempts Counts I and II, which must be prosecuted as federal causes of action under the provisions of that statute but which remain as viable claims. Additionally, ERISA preempts Counts III and IV but provides no cause of action under that statute. Accordingly, Counts III and IV must be dismissed.

> b. <u>Merits</u>

The plaintiff's claims for breach of fiduciary duty and negligence set forth sufficient allegations under ERISA to survive a motion for summary judgment. As noted above, a federal civil action may be brought under ERISA if the claim falls within the scope of § 502(a). Two subsections of § 502(a) are potentially relevant to this action -- subsection (2) and subsection (3).

Subsection (2) authorizes civil actions which are brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 409." ERISA § 502(a), 29 U.S.C. § 1132(a)(2). In turn, ERISA § 409 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

ERISA § 409, 29 U.S.C. § 1109.

Subsection (3) authorizes civil actions which are brought "by a participant, beneficiary, or fiduciary" for the following purposes:

> (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

Thus, relief under subsection (a)(2) may be legal or equitable in nature, but relief under subsection (a)(3) must be equitable.

The defendants contend that the plaintiff's claims must fail under both provisions because the remedies the plaintiff seeks are not authorized by ERISA. As noted above, the plaintiff's initial complaint states claims relating to Plan investments and claims

relating to the loans Plan participants took out against the Plan. This Court will address each set of claims in turn.

(1)  Investment Claims

The defendants argue that the plaintiff's investment claims must fail under § 502(a)(2) for two reasons.  First, the defendants contend that the plaintiff seeks relief in the form of damages for individual investment losses resulting from the liquidation of Plan assets, which does not constitute a remedy for the plan as a whole. Second, the defendants argue that any monetary relief awarded under § 502(a)(2) cannot be paid to the Plan in any event because the Plan has been terminated.  The defendants argue, further, that the plaintiff's investment claims also must fail under § 502(a)(3) because the relief sought does not constitute equitable relief. The plaintiff has conceded that its investment claims are not viable under § 502(a)(3) but maintains that the remedy it seeks for its investment claims is authorized by § 502(a)(2).  This Court agrees.

In 2006, the United States Court of Appeals for the Fourth Circuit held that a participant in a defined contribution plan could not maintain a cause of action under §§ 409 and 502(a)(2) of ERISA because those provisions authorize relief only for the plan as a whole, not for individual participants in the plan.  LaRue v. De Wolff, Boberg & Associates, Inc., 450 F.3d 570, 574 (4th Cir. 2006), vacated, 128 S. Ct. 1020 (2008)("LaRue I").  However, in

14

2008, the United States Supreme Court vacated that decision, holding that, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." LaRue v. Wolff, Boberg & Associates, Inc., 128 S. Ct. 1020, 1026 (2008) ("LaRue II").

In light of LaRue II, this Court must reject the defendants' argument that the plaintiff's investment claims must fail under § 502(a)(2) because the remedy they seek does not constitute a remedy to the Plan as a whole. Here, the individual injuries alleged in the investment claims are not distinct from Plan injuries, and the alleged fiduciary misconduct impaired the value of Plan assets in the participants' individual accounts.[1]

The defendants argue that LaRue is inapplicable because the plaintiff seeks a remedy not authorized under § 502(a)(2), given that the Plan has been terminated and, therefore, cannot be the repository of any monetary relief which may be awarded. This argument also lacks merit.

The United States Court of Appeals for the Fourth Circuit has squarely rejected the defendants' contention, stating that under § 502(a)(2), "[t]he statute grants plan participants the right to

_____

[1]It would also appear that the alleged fiduciary misconduct also impaired the value of the Plan as a whole. However, given the holding of LaRue II, this Court need not address the issue.

sue for breach of fiduciary duty without qualification. It does not say that a plan participant can sue for breach of fiduciary duty 'until plan termination' or 'before plan termination,' just that a participant can sue for breach of fiduciary duty." Wilmington Shipping Co. v. New England Life Ins. Co., 496 F.3d 326, 338 (4th Cir. 2007). See also Pfahler v. National Latex Products Co., 517 F.3d 816, 827-28 (6th Cir. 2007)(rejecting argument that plaintiffs should not be able to recover on behalf of a defunct plan and stating that "permitting beneficiaries to bring suit to remedy fiduciary breaches even after a plan is defunct effectuates ERISA's underlying goals.")). As noted by the United States Court of Appeals for the Sixth Circuit,

> One of the primary purposes of ERISA is to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and by providing for appropriate remedies, sanctions, and ready access to the Federal courts. 29 U.S.C. § 1001(b). The accomplishment of these goals would be significantly frustrated if a breaching fiduciary could escape liability merely by terminating a plan before a lawsuit is commenced or during its pendency.

Id. at 827.

The defendants attempt to distinguish Wilmington Shipping from this case by observing that the terminated plan at issue here is a defined contributions plan, whereas the plan in Wilmington Shipping was an underfunded defined benefits plan for which the Pension Benefits Guaranty Corporation ("PBGC") was the plan trustee. See

<u>Wilmington Shipping</u>, 496 at 332.   A "defined contribution plan,"
like the one at issue in this action, is distinct from a "defined
benefit plan."   "A defined contribution plan is one where employees
and employers may contribute to the plan, and the employer's
contribution is fixed and the employee receives whatever level of
benefits the amount contributed on his behalf will provide . . . .
A defined benefit plan, on the other hand, consists of a general
pool of assets rather than individual dedicated accounts.   Such a
plan, as its name implies, is one where the employee, upon
retirement, is entitled to a fixed periodic payment."   <u>Hughes
Aircraft Co. v. Jacobson</u>, 525 U.S. 432 (1999) (internal citations
and internal quotation marks omitted).

   The defendants take the view that, absent an ongoing plan or
the appointment of the PBGC as plan trustee for an underfunded
defined benefits plan, the only possible repository for a monetary
award would be each individual participant or separate investment
accounts for each participant.   Because payments to the Plan
participants would not benefit the Plan in this case, the
defendants argue, the plaintiff seeks a remedy which ERISA does not
authorize.

   This Court rejects the defendant's position because it ignores
the possibility that other remedies may potentially be available
for ensuring that any recovery goes to the Plan, not to individual
participants.   <u>See</u> <u>Pfahler</u>, 517 F.3d at 828 (noting that an

independent fiduciary could be appointed to hold in trust any amounts recovered from the defendants to ensure that all recovery went to the plan rather than to the plaintiffs).  Thus, the distinction between a defunct defined contributions plan and a defunct defined benefits plan does not, as a practical matter, support the defendants' contention that the plaintiff has no remedy under § 502(a)(2).  Moreover, given the rationale of both Wilmington Shipping and LaRue, as well as ERISA's purposes, this Court believes that such a difference is immaterial in cases where the alleged fiduciary misconduct relating to a defunct plan occurred before the termination of the plan.  Accordingly, the plaintiff's investment claims may proceed under § 502(a)(2).

The plaintiff has also stated that it seeks injunctive relief on its investment claims pursuant to § 502(a)(3).  The defendants argue that the plaintiff is not entitled to such relief for reasons the defendants set forth in their response opposing the plaintiff's motion to amend its complaint to state ERISA causes of action.  However, these arguments are not properly before this Court given that they were presented in pleadings relating to a motion to amend upon which this Court has not yet ruled.  Therefore, to the extent that the plaintiff's investment claims seek equitable relief under § 502(a)(3), this Court will deny without prejudice the defendants' motion for summary judgment as to that issue.

(2)  <u>Loan Claims</u>

The plaintiff's loan claims must be dismissed insofar as they might be construed to seek a legal remedy under § 502(a)(2), but they survive to the extent they seek equitable relief under § 502(a)(3).  The defendants argue, and the plaintiff concedes, that § 502(a)(2) does not authorize civil actions by individual participants for any economic harms they may sustain individually as a result of fiduciary misconduct.  Such claims, the parties agree, must be brought pursuant to § 502(a)(3), which authorizes only equitable relief.  The defendants contend that the plaintiff does not seek equitable relief because it seeks monetary reimbursement for taxes and penalties incurred when certain Plan participants failed to repay the loans they borrowed against the assets of their individual retirement accounts as a result of the defendants' alleged breach of fiduciary duty.  This Court agrees that the plaintiff is not entitled to compensatory damages in the form of reimbursement for tax liabilities and penalties incurred as a result of the defendants' alleged fiduciary misconduct relating to the loans claims.  Accordingly, the defendants' motion for summary judgment will be granted insofar as it pertains to compensatory relief for the plaintiff's loan claims.

However, as noted above, the plaintiff states in its initial complaint that it seeks not only specified legal relief in the form of monetary damages but also other unspecified relief, which this

Court construes to include equitable remedies, such as injunctive relief, restitution, or both. In light of the limited discovery which has taken place in this action, this Court believes that, as with the investment claims, the defendants' motion for summary judgment should be denied without prejudice insofar as it seeks dismissal of the loan claims based upon the equitable relief the plaintiff seeks pursuant to § 502(a)(3).

Having addressed the defendants' motion for summary judgment on the original complaint, this Court now turns to the plaintiff's motion to amend its complaint.

B.   <u>Motion for Leave to Amend</u>

    1.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 15(a) applies to parties seeking to amend their pleadings in federal court. This Rule states in pertinent part:

> (1)  A party may amend its pleading once as a matter of course:
>> (A)  before being served with a responsive pleading; or
>> (B)  within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.
> (2)  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Rule 15(a) gives courts broad discretion, and a court should grant leave to amend absent futility of amendment, substantial

prejudice to the defendant, or an improper motive such as undue delay, bad faith, or dilatoriness.  See Ward Elec. Serv., Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987)(citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

   2.  Analysis

   The defendants do not argue, nor does this Court find, that the plaintiff has requested the amendment for any improper motive. However, the defendants do claim that an amendment would both be futile and would prejudice them.  This Court finds to the contrary.

   In the ERISA context, "[a] proposed amendment may be futile if the complaint, as amended, would be subject to dismissal."  Lind v. Aetna Health, Inc., 466 F.3d 1195, 1199 (10th Cir. 2006).  An amendment is futile where the opposing party would be entitled to summary judgment on the amended claim.  Adkins v. Labor Ready, Inc., 205 F.R.D. 460, 462 (S.D. W. Va. 2001) (citing Edell & Associates, P.C. v. Law Offices of Angelos, 264 F.3d 424, 446 (4th Cir. 2001)).

   Here, the plaintiff's proposed amended complaint sets forth three claims.  Count I alleges that the defendants' liquidation of Plan investments without regard to income loss and the defendants' subsequent failure to appropriately reinvest Plan assets violates ERISA §§ 404(a)(1), 406(a)(b) (29 U.S.C. §§ 1104(a)(1), 1106(a)-(b)).  Count II alleges that the defendants charged unreasonable fees to the Plan in violation of ERISA §§ 404(a)(1),

406(a)-(b) (29 U.S.C. §§ 1104(a)(1), 1106(a)-(b)). Count III alleges that the defendants knowingly participated in violations of ERISA § 404(a)(1) and/or §§ 406(a)-(b), thereby entitling the plaintiff to relief pursuant to ERISA § 502(a)(3). As to Count III, the plaintiff alleges, in the alternative, that to the extent the defendants are found not to have been acting as fiduciaries with respect to certain conduct, their knowingly having engaged in conduct which constituted ERISA violations entitles the plaintiff to equitable relief.

The defendants assert several reasons why the amendment would be futile. First, they argue that the proposed amended claims, like the claims in the original complaint, seek remedies that are not authorized by ERISA. The defendants' arguments mirror those set forth in their briefs supporting summary judgment. Specifically, they argue that, as to Counts I and II, the plaintiff is ineligible for relief under § 502(a)(2) because the Plan has been terminated and, as a result, any monetary award would inure to the benefit of the individual participants rather than to the Plan. For the reasons articulated above, this Court rejects the defendants' argument that the termination of the Plan renders relief unavailable under § 502(a)(2).

Second, the defendants argue that the plaintiff is ineligible for relief under § 502(a)(3), which authorizes only equitable relief. As to all three counts, the defendants contend, the remedy

the plaintiff seeks does not constitute equitable relief. In connection with all three counts, the plaintiff seeks as relief a constructive trust or equitable lien, or both, on any amounts by which the defendants were unjustly enriched at the expense of the plaintiff or the Plan as a result of their fiduciary misconduct. The defendants argue that the plaintiff's desired redress for unjust enrichment is not an equitable remedy. Relying on <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 209 (2002), the defendants claim that any unjustly obtained proceeds must be traceable to the Plan. According to the defendants, such tracing is not possible in this case. Although the defendants acknowledge that in <u>Sereboff v. Mid Atlantic Medical Services, Inc.</u>, 126 S. Ct. 1869, 1873 (2006), the United States Supreme Court recognized an exception to the tracing requirement where equitable liens are created by agreement or assignment, the defendants assert that no such agreement exists in this action. For these reasons, the defendants argue, the motion to amend must be denied. However, discovery is not yet complete in this case, and at this stage of the proceedings, the conclusions urged by the defendants are prematurely advanced. Accordingly, this Court rejects the defendants' argument that the plaintiff's motion to amend should be denied to the extent that the amendment seeks the imposition of a constructive trust or equitable lien.

The defendants further argue that the amended complaint would be futile because the plaintiff is not entitled to injunctions prohibiting the defendants from acting as service providers or fiduciaries with respect to other employee benefit plans.  This Court does not consider this argument at this time, however, because it goes to the merits of the case under facts to be developed in discovery.

As a further reason they believe amendment would be futile, the defendants claim that Count II of the proposed amended complaint is barred by ERISA's statute of limitations.  ERISA sets the following limitations on the initiation of civil actions:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, obligation under this part, or with respect to a violation of this part, after the earlier of–
> (1)  six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the violation, or
> (2)  three years after the earliest date on which the plaintiff had actual knowledge of the breach of the violation.

ERISA § 413, 29 U.S.C. § 1113.  Cases involving fraud or concealment are exempt from this provision and may be filed up to six years after discovery of the violation.  Id.  Determining the accrual of an ERISA action is guided by a two-part analysis.  See Meyer v. Berkshire Life Ins. Co., 128 F. Supp. 2d 831, 836 (D. Md. 2001).  The first step is to "'isolate and define the underlying violation.'"  Id. (quoting Meagher v. International Ass'n of

Machinists and Aerospace Workers Pension Plan, 856 F.2d 1418, 1422 (9th Cir. 1988)). The second step is to identify when the plaintiff had actual knowledge of the violation. Id. (citing Ziegler v. Connecticut Gen. Life Ins. Co., 916 F.2d 548, 550 (9th Cir. 1990); Maher v. Strachan Shipping Co., 68 F.3d 951, 954 (5th Cir. 1995); Gluck v. Unisys Corp., 960 F.2d 1168, 1178 (3d Cir. 1992)).

Here, Count II of the plaintiff's proposed amended complaint alleges that defendant HNB charged excessive fees beginning no later than 1999. The defendants contend that under ERISA's statute of limitations, the plaintiff was required to bring the claim asserted in Count II no later than 2005. The defendants acknowledge that the original complaint was filed in April 2005, thereby coming within the period permitted under ERISA. They argue, however, that Count II does not relate back to that date and is, therefore, time-barred. Thus, this Court must determine whether the Count II of the amended complaint relates back to the original complaint.

Rule 15(b) of the Federal Rules of Civil Procedure sets forth the requirements for relation back of an amended complaint and provides, in relevant part, that an amendment relates back to the date on which the original complaint was filed when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrences set out -- or attempted to be set out

-- in the original pleading." Fed. R. Civ. P. 15(b). To determine whether an amended pleading relates back, a court must first ascertain whether a factual nexus exists between the amendment and the original complaint. <u>Grattan v. Burnett</u>, 710 F.2d 160, 163 (4th Cir. 1983). Where such a factual nexus exists, "an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." <u>Id.</u>

In the defendant's view, the excessive fee claims do not relate back because the original complaint does not specifically mention the fees associated with the administration of the Plan. Therefore, the defendants assert, the nexus between the amended complaint and the original complaint is tenuous at best. This Court disagrees.

Applying the first part of the <u>Grattan</u> analysis, this Court finds that the allegations in Count II of the proposed amendment form a clear nexus with the original complaint. The original complaint asserts, among other things, that the defendants failed to manage the plaintiff's account in a manner consistent with stated objections. This allegation appears to arise out of the same conduct, transaction, and occurrences as the claim in Count II of the amended complaint alleging that the defendants charged excessive fees in connection with the administration of the Plan.

Therefore, the amended complaint has the requisite nexus under Rule 15(b) with the original complaint.

The defendants argue, however, that even if a factual nexus does exist, they were not put on notice that they would need to defend against a claim that HNB had charged unreasonable fees, and they would be prejudiced if required at this juncture to defend such claims. This contention lacks merit.

As noted above, the plaintiff alleged in its original complaint that the defendants had failed to manage the account in a manner consistent with stated objectives. Allegations of account mismanagement should have put the defendants on notice that fees relating to the management of the account would probably be the subject of discovery by the plaintiff. Indeed, the plaintiff's initial discovery requests sought discovery on the fees charged to the Plan. Under these circumstances, this Court finds that the defendants were put on notice and that allowing the fee claims to proceed will not substantially prejudice the defendants.

Finally, the defendants argue that Count II of the amended complaint would be futile because it fails to state a claim upon which relief can be granted. Specifically, they argue that they were not acting as fiduciaries with respect to the Plan in connection with the fee transactions. As the defendants correctly observe, "[f]iduciary duty under ERISA is not an all-or-nothing concept." <u>Coleman v. Nationwide Life Ins. Co.</u>, 969 F.2d 54, 61

(4th Cir. 1992). "The same entity may function as an ERISA fiduciary in some contexts but not in others." <u>Darcangelo v.</u> <u>Verizon Communications, Inc.</u>, 292 F.3d 181, 192 (4th Cir. 2002). However, this Court finds that given the incomplete discovery posture of this action, it is premature to determine whether the defendants were acting as fiduciaries in the context of the fee transactions. Accordingly, this Court rejects this asserted ground of futility of amendment.

In sum, this Court finds that the amended complaint would not be futile on any of the grounds asserted by the defendants, that the amended complaint relates back to original complaint, and that permitting the amended claims to proceed would not substantially prejudice the defendants. Accordingly, the plaintiff's motion for leave to amend the complaint will be granted.

V. <u>Conclusion</u>

For the reasons articulated above, the defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, the defendants' motion for summary judgment is GRANTED insofar as it seeks dismissal of Counts III and IV of the original complaint; it is also GRANTED insofar as it seeks dismissal of those aspects of the plaintiff's loan claims seeking compensatory damages. However, the defendants' motion for summary judgment is DENIED as to Counts I and II; it is also DENIED insofar as it seeks dismissal of the plaintiff's investment claims and

insofar as it seeks dismissal of those aspects of the plaintiff's loan claims seeking equitable relief. However, the motion is DENIED WITHOUT PREJUDICE to the extent that it seeks dismissal of the plaintiffs' claims for equitable relief on the investment claims and the loan claims. The plaintiff's motion to amend its state court complaint to state ERISA causes of action is GRANTED.

IT IS SO ORDERED.

The Clerk is directed to file the plaintiff's first amended complaint, which pursuant to paragraph five of this Court's scheduling order, the plaintiff has submitted as Attachment A to the plaintiff's motion to amend state court complaint to state ERISA causes of action. Defendants shall respond to the first amended complaint pursuant to the Federal Rules of Civil Procedure. The Clerk is further directed to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:      January 23, 2009


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE