IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**MARKS CONSTRUCTION CO., INC.**
a West Virginia Corporation, on behalf
of the Marks Construction Co., Inc. 401(k)
Profit Sharing Plan
and
**JAMES MARKS, KAREN MARKS,**
**ANGELA DAVIS, and RICHARD STRAIGHT,**
all individual participants thereunder,

        **Plaintiffs,**

v.                             **Civil Action No. 1:05CV73**
                                   (Judge Frederick P. Stamp, Jr.)

**THE HUNTINGTON NATIONAL BANK** and
**SHARON HUGHES,**

        **Defendants.**

### DECLARATION OF MICHAEL J. ROMANO IN SUPPORT OF PETITION FOR ATTORNEYS FEES AND COSTS

I, Michael J. Romano, declare as follows:

1.      I am co-counsel on behalf of the Plaintiffs in the above styled action involving the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

2.      I am a member in good standing with the West Virginia State Bar, admitted to practice before the United States District Court for the Northern and Southern District of West Virginia, and the United State Fourth Circuit Court of Appeals.

3.      I am providing this declaration in support of Plaintiffs' Petition for Attorneys' Fees and Costs Pursuant to ERISA §502 in the above styled matter, and I have personal knowledge of the facts stated herein and, if called upon to testify to those facts, I would testify as set forth herein.

4.      In addition to my legal education, training, and experience, I obtained my credentials as Certified Public Accountant in 1984, practicing with Peat Marwick Main, and I also am a member in good standing with the American Institute of Certified Public Accountants and the West Virginia State Society of Certified Public Accountants since 1985.

**Exhibit 23**

5.      I have extensive experience in publicly traded securities and investments through my employment as a federal officer with the United States Securities Exchange Commission both in its Division of Corporate Finance and Division of Enforcement from 1986 to 1992, in addition to my qualifications and experience as a CPA.

6.      Since entering private practice in 1995, my litigation practice continued to involve securities and financial instruments having been legal counsel for entities publicly traded on national stock exchanges. I have successfully litigated causes in federal and state courts throughout West Virginia and, to a lesser extent, in other states, involving a variety of issues for both individual and corporate clients.  I have worked as lead counsel in a variety of complex litigation cases including co-counsel of a class action involving nearly 10,000 participants over a wide geographical area.

7.      I was named Trial Lawyer of the Year in 2005 by the West Virginia Trial Lawyers Association, now known as the West Virginia Association for Justice, and I have been a leader in the Harrison County Bar serving on its Board since 2000 and an officer since 2005.

8.      I have served as an expert witness regarding interpretation of contractual and insurance issues. I have taught numerous classes in a continuing legal education format on various legal issues as well as to students at both the collegiate and high school level. In addition to my litigation practice, I have provided and currently provide legal advice to employers in connection with potential litigation regarding employee benefit plans and, to a lesser extent, interpretation of plan and benefit documents, however, ERISA issues are a small part of my overall litigation practice.  During my career, I have provided consulting services to other lawyers in actions involving class claims, insurance bad faith, discovery disputes, and a variety of other litigation issues and cases.

9.      In 2003, I formed the firm of Romano & Miley, and, since 2006, I have been the sole principal of the law firm of Michael J. Romano. Prior to 2003, my career included my tenure as an income principal with the Romano Law Office and as an associate with the Fusco Legal Group.

10.      Most, if not all of my litigation cases are undertaken on a contingency fee basis. A current estimate of the contingency fees I have earned, calculated on an hourly basis, would exceed

**Exhibit 23**

$350 per hour. I conservatively estimate that contingency fees actually collected in 2008 and 2009 would ranked, on an hourly basis, between $500.00 and $750.00 per hour.  My acceptance of the action at Bar in order to assist the Plaintiffs in their recovery of their retirement account losses forced me to forgo more lucrative contingency fee cases which otherwise were available.

11.     In this matter, based upon my knowledge of the difficulty claimants have in obtaining representation in ERISA matters where recoverable damages are limited to actual losses, and my litigation experience, ability, and skill which I brought to this matter, I respectfully request an hourly rate of $350.00 based on my knowledge of rates charged by other litigation attorneys in this state, particularly in employment and ERISA matters in which claimant attorneys undertake significant risks.

12.     The hourly rate requested, in my opinion, is at or below a reasonable rate for my litigation services. *See*, Affidavit of Barry Hill, Esq. (**Exhibit A**); Affidavit of Thomas C. McCarthy, Esq. (**Exhibit B**); Affidavit of Allan Karlin, Esq. (**Exhibit C**).

13.     During the course of this action, I maintained contemporaneous time records in increments of six minutes (or 1/10 of an hour). I do not bill for any attorney time which did not exceed 0.2 hours, and excluded all time relating to Plaintiffs' Second Amended Complaint and the Motion therefore, which was pending before the Court at the time this matter was resolved.

14.     According to my billing records, which I have reviewed in great detail, I expended hours on this matter, including an additional 15.0 hours which I anticipate will be necessary to reply to the Defendants' opposition to the fee motion at Bar. I did not estimate, and therefore omitted, attorney time anticipated for preparation and attendance at an anticipated hearing on this motion, but which I estimate would be approximately 3.0 hours.

15.     Accordingly, my total fees incurred in the above styled action, which was initiated in 2004, with a Complaint being filed on behalf of the Plaintiffs in 2005, and the matter materially concluded on October 2, 2009 (including the 15.0 hours for estimated for additional briefing in reply to the Defendants' anticipated opposition), total 1110.90 hours at $350.00 per hour or $388,815.00.

16.     A detailed time description is attached to this Declaration as **Exhibit D**, which I have

3

**Exhibit 23**

reviewed and attest is true and accurate to the best of my information and belief.

17.     Although my legal staff contributed literally hundreds of hours during this case including, but not limited to, research, investigation, and other tasks, none of their time is included in the detailed time description attached hereto as **Exhibit D**, as I do not charge for assistance and tasks completed by my legal staff as a standard practice, therefore, did not believe it was appropriate to do so in this case.  There charges for attorney time incurred in preparation of Plaintiffs' Motion to Amend their First Amended Complaint (Doc 131) or the Amended Complaint which was an exhibit thereto.

18.     It is my standard and routine practice to charge my client for all litigation related expenses and costs, including, but not limited to filing fees, deposition transcripts, service of process, postage, travel, photocopying, and expert services.

19.     It is my further standard and routine practice to advance litigation expenses and only seek reimbursement from the clients should the cause be successful and an appropriate award be received for the losses caused them. Conversely, should a case prove to be unsuccessful, it is my standard in routine practice to bear all of the costs and expenses incurred on behalf of my clients without seeking reimbursement of the same, however, in this matter, my clients were contractually responsible for all litigation expenses incurred regardless of the outcome.

16.     A detailed description of all non-taxable litigation expenses incurred in the above styled action in the amount of $20,079.21 is included on the detailed time description attached hereto as **Exhibit E**. Further, although the taxable costs and expenses are both detailed thereon, such taxable costs submitted on Form AO-133 have been deducted from the Total Litigation Expenses both on **Exhibit E** and from the amount of such Total Litigation Expenses in this paragraph.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief. Executed this 20th day of November 2009 West Virginia.

//s// Michael J. Romano
_____
Michael J. Romano (WV Bar ID # 6952)

4

**Exhibit 23**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

MARKS CONSTRUCTION CO., INC.
a West Virginia Corporation, on behalf
of the Marks Construction Co., Inc. 401(k)
Profit Sharing Plan

and

JAMES MARKS, KAREN MARKS,
ANGELA DAVIS, and RICHARD STRAIGHT,
all individual participants thereunder,

      *Plaintiffs,*

vs.

THE HUNTINGTON NATIONAL BANK

and

SHARON HUGHES,

      *Defendants*

Civil Action No. 1:05CV73

Judge Frederick P. Stamp, Jr.

### Affidavit of Barry Hill

Barry Hill states the following under oath.

1. I am an attorney licensed to practice in West Virginia, Ohio, and Pennsylvania. I am admitted to federal district courts in these states, federal district courts for the Eastern and Western Districts of Wisconsin, nine United States courts of appeal, and the United States Supreme Court.

2. Some aspects of my experience as an attorney are outlined in the curriculum vitae attached as Exhibit 1. .

1

3. I have served as an expert witness in 17 cases. Two involved attorney fee issues, and I testified in court in both. The first was in the Circuit Court of Kanawha County, West Virginia, and the issue was the customary referral fee in a contingent fee case. The other was in the Circuit Court of Harrison County, West Virginia, in which I testified in post-trial proceedings that a one-third class counsel fee on a $400 million verdict returned in the case is reasonable under the circumstances. The court later awarded a one-third fee. A list of the cases in which I was retained as an expert is attached as Exhibit 2.

4. I am, and for many years have been, familiar with the "Johnson Factors," originating in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) for evaluating the reasonableness of attorney fees being set or approved by a court. In some instances *Johnson* factors are used to set the amount of the fee, and in others they are used as a cross check against a fee computed by a percentage of the recovery. Courts in ERISA cases frequently establish a lodestar figure by multiplying an hourly rate by time expended, then look to the *Johnson* factors to determine if the hourly rate should be adjusted up or down. *Seitzman v. Sun Life Ins. Co. of Canada, Inc.,* 311 F.3d 485, 487 (2d Cir. 2002).

5. I have not asked if there is a contingent fee agreement in the present case, because it is inappropriate to rely on a contingency agreement to increase or decrease what a court determines to be a reasonable attorney's fee. *Gerwin v. Guarantee Mutual Life Co.,* 214 F.3d 1041 (9th Cir. 2000), *Davis v. City & County of San Francisco,* 976 F.2d 1536, 1548-49 (9th Cir. 1992), vacated in part on other grounds, 948 F.2d 345 (9th Cir. 1993); *Quesada v. Thomason,* 850 F.2d 537, 543 (9th Cir. 1988) (holding that district court abused its discretion in applying downward multiplier to lodestar amount based on contingency agreement); and *City of Burlington v. Dague,* 505 U.S. 557, 566-67 (1992)

2

(federal fee-shifting statutes do not allow for upward adjustments to lodestar amount based on contingency agreement).

6. Ascertaining and applying the law is, of course, for the court, not for an expert witness. However, in the area of attorney fee awards to be determined or approved by a court, a person offering an opinion as to a reasonable fee may consider the legal context in which the fee is being requested, along with customary charges for similar work and results, awards made in analogous situations, and other factors in arriving at an opinion.

7 In addition to the two expert witness cases identified above, I have been involved in various situations over the years in which the reasonableness of attorney fees were addressed. These situations mostly fall into two general categories:

a. individual cases in which I was either asking the court to award attorney fees in cases in which I represented a prevailing plaintiff or negotiated an attorney fee with the defendant, and

b. mass tort cases involving common benefit fee requests or allocations.

8. Cases falling into category 7a are illustrated by a fee request following a successful trial of a §1983 civil rights violation case in federal district court in Columbus, Ohio, several first party insurance cases in West Virginia, and an anti-trust case against GlaxoSmithKline in which I represented the State of West Virginia in the capacity of special assistant attorney general.

9. Cases falling into category 7b are illustrated by participation in the allocation criteria determination for $15 million in common benefit fees in *In re Propulsid Product Liability Litigation,* U.S.D.C., E.D. La., MDL 1355 (Judge Fallon), and lead counsel for 31 firms opposing a proposed $48 million fee for common benefit lawyers in *In re Guidant Corp. Implantable Defibrillators Litigation,* U.S.D.C., D. Minn., MDL 1708 (Judge Frank).

3

10. A case involving court-approved attorney fees that does not fit either of the above categories is *Rine v. Sunbeam*, Nos. 04-C266-M and 05-C-36M, Circuit Court of Marshall County, W.Va., in which I was class co-counsel in a case brought under the West Virginia Consumer Protection Act, and in which the court approved a class counsel fee of approximately $600,000.

11. Two recent examples of hourly fee awards in situations generally analogous to the present one are:

a. Mass tort:  $200 an hour for attorneys with one-to-five years experience, $300 an hour for attorneys with six-to-nine years, $400 an hour for 10 to 14 years, and $500 an hour for 15 years and over. *In Re: Sulzer Orthopedics, Inc.* 398 F3d 778 (N.D. Ohio 2005).

b. ERISA:  $550 hourly rate approved. *Rorabaugh v. Continental Casualty Co.*, 2009 WL 1578403 (U.S.D.C., C.D. Cal. 2009).

12. I am familiar with Attorney Michael Romano, and I know him to be a skilled, diligent, experienced, and effective advocate, and I also know that he is a certified public accountant in addition to being a lawyer.

13. Most plaintiffs' attorneys find ERISA cases unappealing, because the bad faith component of litigation against one's own carrier is not incorporated into the ERISA statute, as was determined in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987).

14. As many courts have observed, if not for the possibility of recovering lodestar attorneys' fees and upward adjustment of lodestar rates, it would be difficult, and in many instances so unlikely as to be effectively impossible, for those who are denied employment-related benefits covered by ERISA to obtain competent legal counsel.

4

**Exhibit A to Declaration of M. Romano**

15. I have been told that Attorney Michael Romano has requested an hourly rate of $350 in the present case.  This is toward the low end of the range of reasonable rates for him and his work.



Barry Hill

Subscribed and sworn to before me by Barry Hill on November 18, 2009.

Kathi M. Eastham
Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
KATHI M. EASTHAM
3712 Brightway
Weirton, WV 26062
My Commission Expires September 17, 2016

5

**Exhibit A to Declaration of M. Romano**





**Barry Hill**

ANAPOL |SCHWARTZ| WEISS | COHAN | FELDMAN | SMALLEY P.C.
ATTORNEYS AT LAW

89 12th Street
Wheeling, West Virginia 26003

Email:  bhill@anapolschwartz.com
Website:  www.anapolschwartz.com
Phone:  304.233.4966

**General background**

• 32 years as a civil litigation lawyer.

• Core business:  prescription drug, medical device, financial fraud, mass tort, and other complex litigation.

• Resident partner in the Wheeling, West Virginia, office of the Philadelphia-based law firm of Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.

• International Academy of Trial Lawyers (limited to 500 lawyers from the United States).

• Law Dragon's Top 500 Plaintiffs' Lawyers in America.

• West Virginia Super Lawyers.

• Litigation Counsel of America (trial lawyer honorary society limited to less than ½ of 1% of American lawyers)

• Certified as a Civil Litigation Specialist by the National Board of Trial Advocacy

• Certified as a medical malpractice trial specialist by the American Board of Professional Liability Attorneys

• In Who's Who in the World, Who's Who in America, and Who's Who in American Law.

• Citation of Meritorious Achievement for Service to the Legal Profession from the International Biographical Centre, Cambridge, England, 1995.

• Married to Lisa Hill, M.D.

• B.S. in journalism from West Virginia University 1968.

• J.D. from West Virginia University School of Law 1977.

• First Lieutenant, U.S. Army 1969-71.

• Bronze Star for service in Vietnam 1970-71.

**Appointed and elected positions**

1. President, West Virginia Association for Justice, 1987-88.

2. Vice President, West Virginia Association for Justice, 1985-87.

3. Parliamentarian, West Virginia Association for Justice, 1983-85.

1

**Exhibit A to Declaration of M. Romano**

4. Outstanding member, West Virginia Association for Justice, 1984.

5. State Delegate from West Virginia to AAJ (1990-92).

6. Board of Governors, West Virginia Association for Justice, 1983-present.

7. Board of Governors, Southern Trial Lawyers Association, 1987-2005.

8. West Virginia Blue Ribbon Panel for drafting pattern jury instructions (1985-termination).

9. Draftsman for the Law & Medicine Committee of the W.Va. State Bar of an inter-professional code for physicians and lawyers (1988).

10. West Virginia State Bar Committee for review of the Rules of Civil Procedure (1987-88).

11. Executive Committee for review & revision of the juror selection process for the U.S. District Court, Northern District of W.Va. (1990).

12. Civil Justice Reform Act Advisory Group for the United States District Court for the Northern District of W.Va. (1991-1995).

13. American Association for Justice (AAJ) Key Person Committee (1987-88).

14. AAJ President's Council (1987-89).

15. AAJ President's Council Study Committee (1988-89).

16. AAJ Insurance Practices Committee (1988-91).

17. AAJ People's Law School Committee Vice Chairman (1989-90).

18. AAJ New Orleans Spring Seminar Committee (1989-90).

19. AAJ Discovery Abuse Committee (1992-93).

20. AAJ Committee on the Courts (1992-95).

21. AAJ Convention Planning Committee (1993-95).

22. Editorial Board, Torts and Insurance Practices Section of the ABA, 1987-88.

23. Chairman, WVAJ 1984 Midwinter Seminar.

24. Chairman, WVAJ 1988 Annual Seminar.

25. Chairman, WVAJ 1997 Midwinter Seminar.

26. Chairman, WVAJ Amicus Curiae Committee, 1994-1997.

27. Trustee, WVAJ Political Action Committee, 1986-89.

28. Court appointed arbitrator in the court annexed arbitration program, U.S. District Court, Western District of Pennsylvania, 1993-2000.

2

**Exhibit A to Declaration of M. Romano**

29. Adjunct Professor, Saba University School of Medicine, Saba, Netherlands Antilles, 1994-96.

30. Chairman, Professional Negligence Section of the West Virginia Association for Justice, 2000 to 2002.

31. Co-Chairman, West Virginia Supreme Court Committee for Drafting a General Civil Jury Charge, 2000.

32. Co-Chairman, West Virginia Supreme Court Committee for Drafting Standard Medical Negligence Jury Instructions, 2000.

33. Chairman, AAJ Propulsid Litigation Group, 2000 to present.

34. Co-Chairman, Plaintiffs' Science & Expert Witness Committee, *Propulsid Product Liability Litigation,* MDL 1355, U.S.D.C., E.D. La., 2001-2005.

35. State Liaison Committee, *Propulsid Product Liability Litigation,* MDL 1355, U.S.D.C., E.D. La., 2001 to present.

36. Co-Chairman, Class Action Committee, *Propulsid Product Liability Litigation,* MDL 1355, U.S.D.C., E.D. La., 2001-present.

37. Settlement Committee; *Propulsid Product Liability Litigation*, MDL 1355, U.S.D.C., E.D. La., 2001-present.

38. Treasurer, AAJ Oxycontin Litigation Group, 2001.

39. Co-Chairman, AAJ Baycol Litigation Group, 2001 to 2003, Vice Chairman, 2004.

40. Plaintiffs' Science and Expert Witness Committee, In *re: Baycol Product Liability Litigation,* Nov. 2001 Term, No. 0001, C.P. Ct. Philadelphia County Pa., 2002 to 2003.

41. Co-Chairman, Mealey's (Lexis Nexis) Baycol Conference, Amelia Island, Florida, June 2003.

42. AAJ Section and Litigation Group Coordination Committee, 2003 to 2006.

43. AAJ Litigation Group Leaders Council, 2000 to present.

44. Special Assistant Attorney General for the State of West Virginia in consumer protection litigation against ten Wall Street investment banking firms, 2003 to 2005.

45. Mealey's (Lexis/Nexis) Plaintiffs' Toxic Tort Advisory Panel Member, 2003 to 2006.

46. Special Assistant Attorney General for the State of West Virginia in Visa and MasterCard antitrust litigation, 2003 - 2007.

47. Co-Chairman, Mealey's (Lexis/Nexis) Emerging Prescription Drug and Medical Device Litigation Conference, Scottsdale, Arizona, March 2004.

48. Special Assistant Attorney General for the State of West Virginia in Augmentin antitrust litigation, 2004.

49. Vice Chairman, AAJ Section & Litigation Group Coordination Committee, 2004 – 2006.

50. Special Assistant Attorney General for the State of West Virginia in Relafen antitrust litigation, 2004.

51. Special Assistant Attorney General for the State of West Virginia in Paxil consumer protection and antitrust

3

**Exhibit A to Declaration of M. Romano**

litigation, 2004.

52. Special Assistant Attorney General for the State of West Virginia in Risperdal and Duragesic consumer protection litigation, 2004 to present.

53. Special Assistant Attorney General for the State of West Virginia in Celebrex and Bextra consumer protection litigation, 2005.

54. Special Assistant Attorney General for the State of West Virginia in mutual funds consumer protection and securities act litigation, 2005.

55. Special Assistant Attorney General for the State of West Virginia for generic drug pricing litigation, 2005.

56. State Liaison Committee, *In re: Vioxx Product Liability Litigation,* MDL 1657, U.S.D.C., E.D. La.,   2005.

57. Co-chairman, AAJ Gadolinium Litigation Group, 2007 – present.

58. Court-appointed member of the Plaintiffs' Steering Committee, *In re:  Gadolinium Based Contrast Agents Product Liability Litigation, U.S.D.C., N.D. Ohio at Cleveland (MDL 1909)* 2008.

**Publications and presentations**

1. "Using Preliminary Pretrial Orders to Move Your Case," WVAJ *Advocate*, 1983.

2. "Prejudgment Interest and Jury Trials," *WVAJ Advocate*, 1983.

3. "Is Loss of Enjoyment of Life the Only Element of General Damages?" *WVAJ Advocate*, 1983.

4. "Fees and Fee Awards in Compensation Cases," *WVAJ Advocate*, 1984.

5. "Interdisciplinary Use of Medical Experts," presented at the Pennsylvania Trial Lawyers Association 1986 Annual Seminar, Seven Springs, Pa.

6. "Update on Products Liability," presented at the 1985 W.Va. State Bar Trial Advocacy Seminar, Canaan Valley, W.Va.

7. "Handling Different Kinds of Automobile Collisions," presented at the 1986 W.Va. State Bar Tort Liability Seminar, Morgantown, W.Va.

8. "Current Trends in Insurance Law," presented at the 1985 WVAJ Mid-Winter Seminar, Parkersburg, W.Va.

9. "Obtaining a Six Year Statute of Limitations in All Product Liability Actions against the Manufacturer of a Nationally-Distributed Product," presented at the 1987 WVAJ Mid-Winter Seminar, Parkersburg, W.Va.

10. "Direct Actions against Insurance Carriers in West Virginia," presented at the 1986 WVAJ Annual Seminar, Charleston, W.Va.

11. "Let the Truth be Known (about structured settlement annuity prices)," *WVAJ Advocate*, 1987.

12. "President's Column," *WVAJ Advocate*, 1987-88.

13. *President's Newsletter,* (WVAJ), 1987-88 (Originator of this publication).

14. "Value of a Contingent Fee Practice in Divorce Proceedings," *WVAJ Advocate* 1988 (Made available

4

nationally by AAJ).

15. "Examination of an Adverse Party in the Plaintiff's Case-in-Chief," presented at the 1988 Southern Trial Lawyers Association Annual Seminar, New Orleans, La.

16. "Lawyer advertising," presented at the 1988 WVAJ Mid-Winter Seminar, Parkersburg, W.Va.

17. "Unfair Claims Settlement Practices," presented at a 1988 Mountain State Bar Association CLE Seminar, Follansbee, W.Va.

18. "Persuasive Openings," presented at the 1989 Southern Trial Lawyers Annual Seminar, New Orleans, La., the 1989 Academy of Florida Trial Lawyers Tortmasters Seminar, Panama City, Fla.; and the 1990 Tennessee Trial Lawyers Annual Convention, Chattanooga, Tenn.

19. "Structured Mythology," *WVAJ Advocate*, Spring 1989.

20.  "Useful Insurance Cases," *WVAJ Advocate*, Spring 1989.

21. "Simplified Infant Tort Settlement Procedure," *West Virginia Lawyer*, May/June 1989.

22. "The Admissibility of Evidence of Insurance under FRE/WVRE 411," presented at the 1990 WVAJ Mid-Winter Seminar, Charleston, W.Va.

23. "The Form and Substance of Releases," presented at the 1990 WVAJ Annual Seminar, Charleston, W.Va.

24. "The End of Discovery Disputes," 1991 Defense Trial Counsel of W.Va. Handbook for Lawyers and Judges.

25. "Punitive Damages in West Virginia," presented at a National Business Institute Seminar, Morgantown, W.Va., 1991.

26. "Cannibals at the Courthouse" (a view on lawyer advertising), presented at the 1992 WVAJ Mid-Winter Seminar, Charleston, W.Va.

27. "First Party Automobile Insurance Coverage in Ohio, West Virginia and Pennsylvania:  Comparisons and Contrasts," presented at the Mountain State Bar Association's 1992 Annual Seminar, Morgantown, W.Va.

28. "Effective Discovery Techniques," presented at a National Business Institute Seminar in Morgantown, W.Va., in 1993.

29. "Overview of the Use of Expert Witnesses in Civil Litigation," presented at the Mountaineer CLE Series, 1993 in Morgantown WV.

30. "Persuasive Use of the New Federal Discovery Rules," presented at the West Virginia Association for Justice's 1994 Mid-Winter Seminar in Charleston, W.Va.

31. "A Practitioner's Perspective on the Successful Handling of a Bad Faith Insurance Case," presented at the West Virginia Association for Justice's 1994 Annual Seminar in Charleston, W.Va.

32. "The Relationship between Adjusters and Plaintiff's Attorneys," presented in August and October 1994 to Nationwide Insurance adjusters, claims supervisors, and in-house counsel in Columbus, Ohio.

33. "The Fundamentals of Medical Professional Liability," presented at Saba University School of Medicine, Saba, Netherlands Antilles, in November 1994, and twice in November 1995.

5

34. "Having Fun with Discovery," presented at the West Virginia Trial Lawyers 1995 Midwinter Convention in Charleston, W.Va., and at the West Virginia Legal Assistants 1995 Annual Seminar in Wheeling, W.Va.

35. "Stacking, How Does It Work?" presented at the West Virginia Trial Lawyers 1995 Annual Convention in Charleston, W.Va.

36. "Five Case Studies of Preventable Deaths Caused by Septicemia Secondary to Peritonitis," presented at Saba University School of Medicine, Saba, Netherlands Antilles, in September 1995.

37. "The Neurosurgeon Who Was Too Smart for His Patients' Own Good," presented at Saba University School of Medicine, Saba, Netherlands Antilles, in July 1995.

38. "The Advantages of Litigating Insurance and Related Issues in West Virginia," presented to the Academy of Trial Lawyers of Washington County (PA) in Washington, PA, in September 1995.

39. "Messages That Work in Professional Liability Cases," presented at the National College of Advocacy 1995 Thanksgiving Seminar in Pebble Beach, California.

40. "Drunks on the Highways: Who Pays?" presented at the West Virginia Trial Lawyers 1996 Midwinter Seminar in Charleston, W.Va.

41. "Direct Examination of the Plaintiff's Economist at Trial," presented at the October 1996 American Board of Trial Advocacy Seminar in New Orleans. Louisiana.

42. "The Decline of *Youler* and *Pristavek* and Other Reference Points on the Decay Curve of Policyholder Rights," presented at the West Virginia Trial Lawyers 1998 Annual Convention in Charleston, W.Va.

43. "Don't Let Insurance Companies Set Your Court's Agenda," presented to the circuit court judicial clerks in Charleston, W.Va., in August 1998.

44. "Ponzi Rides Again:  the PIE Mutual Story," *WVAJ Advocate*, Fall 1998; republished in the Kansas Trial Lawyers Association *Journal*, March 1999.

45. "1998 Insurance Decisions by the West Virginia Supreme Court," presented to the Ohio County (W.Va.) Bar Association in December 1998.

46. "Trial Lawyers' Guide to the Internet," presented at the West Virginia State Bar Litigation Seminar at Canaan Valley (W.Va.) Resort in January 1999.

47. "Medical Negligence Case Evaluation," presented at the 2000 WVAJ Midwinter Seminar in Charleston, W.Va., in February 2000.

48. "Propulsid Litigation Strategies," presented at Mealey's Propulsid Litigation Seminar in Philadelphia in September 2000.

49. "Propulsid Mass Litigation," presented at the 2000 American Board of Professional Liability Attorneys Convention in Atlanta in October 2000.

50. "A Review of the Medical Literature and What the Adverse Event Statistics Reveal:  A Chronology," presented at the NCA Rezulin and Propulsid Seminar in Atlanta in October 2000.

51. "Mass Litigation – How to Get Involved," presented at the WVAJ Winter Seminar in Charleston, W.Va., in February 2001.

6

**Exhibit A to Declaration of M. Romano**

52.  "Cost and Availability of Medical Malpractice Insurance:  Legislative and Litigation Consequences," presented at the WVAJ Winter Seminar in Charleston, W.Va., in February 2001.

53. "Propulsid Mass Litigation:  Impressions from the Field," (with Richard Arsenault and Steve Knowlton) presented at Mealey's Propulsid Seminar in New Orleans in June 2001.

54. "Courtroom Epidemiology," presented at MDL 1355 Propulsid Mass Tort Seminar in New Orleans in August 2001.  Presented again at a Mountaineer CLE Series seminar in Morgantown, WV in October 2001.

55. "Propulsid Litigation Update," presented at the National College of Advocacy Drug Products and Medical Devices Seminar in Dallas in October 2001.

56.  "Emerging Trends in National Drug Product Liability Litigation," presented at the WVAJ Winter Seminar in Charleston, W.Va., in February 2002.

57. "National Drug Product Litigation," presented at the Idaho Trial Lawyers Association Winter Seminar in Boise, Idaho, in February 2002.

58. "The Propulsid MDL Medical Monitoring Case," presented at Mealey's Drug Product Litigation Conference in Phoenix, Arizona, in April 2002.

59. "Baycol Medical Literature:  What Did Bayer Know, and When Did It Know It?" presented at Mealey's Baycol Conference in Pasadena, California, in May 2002.

60. "A Baycol Tragedy," presented to the ATLA Baycol Litigation Group at the ATLA Annual Convention in Atlanta in July 2002.

61. "Propulsid Digital Settlement Brochures and Propulsid Causation Issues," presented to the AAJ Propulsid Litigation Group at the AAJ Annual Convention in Atlanta in July 2002.

62. "Baycol Samples," presented at the National College of Advocacy's Drug Product and Medical Device Hot Documents Seminar in October 2002 in Scottsdale, Arizona.

63. "Winning a Prescription Drug Case," presented at Ohio Association for Justice' Seminars in Cleveland and again in Columbus in November 2002.

64. "The State of Ongoing Prescription Drug Litigation," presented at Mealey's Emerging Drugs and Medical Devices Conference in Naples, Florida, in December 2002.

65. "Mass Tort Litigation," presented at the West Virginia Trial Lawyers Winter Seminar in Charleston, West Virginia, in February 2003.

66. "Litigating Prescription Drug Cases in Today's Political and Social Climate," presented at Mealey's (Lexis Nexis) Fen Phen Conference in Dallas, Texas, in March 2003.

67.  "Baycol Medicine," presented in a Baycol Litigation Seminar distributed via the internet and originating from Woodbridge, New Jersey, to plaintiffs' lawyers handling Baycol cases in May 2003.

68. "Baycol Medical Issues," presented at Mealey's (LexisNexis) Baycol Conference in Amelia Island, Florida in June 2003.

69. "The Devil is in the Detailers," presented at an AAJ Pharmaceutical Litigation Seminar in Las Vegas, Nevada, in September 2003.

**Exhibit A to Declaration of M. Romano**

70. "Baycol Settlements from Agreement to Distribution," presented at Mealey's (Lexis/Nexis) Baycol Conference in Houston, Texas, in January 2004.

71. "Introduction to Emerging Pharmaceutical and Medical Device Litigation," presented at Mealey's (Lexis/Nexis) Emerging Drug and Medical Device Conference in Scottsdale, Arizona, in March 2004.

72. "Digital Settlement Brochures," presented at the Wyoming Trial Lawyers Annual Convention at Jackson Lake, Wyoming, in June 2004.

73. "Litigation Group Financial Management," presented at the AAJ Convention in Boston, Massachusetts, in July 2004.

74. "What Went Right and Wrong in Baycol Litigation," presented at the AAJ Convention in Boston, Massachusetts, in July 2004.

75. "Zyprexa and the Prescribing Physician," presented at Mealey's (Lexis/Nexis) Zyprexa Conference in Pasadena, California, in November, 2004.

76. Opening remarks and moderator, Vioxx Litigation Strategy Seminar, presented in Charleston, West Virginia, in November 2004.

77. Opening remarks and moderator, Vioxx Litigation Strategy Seminar, presented in Columbus, Ohio, in December 2004.

78. Opening remarks and moderator, Vioxx Litigation Strategy Seminar, Indianapolis, Indiana, January 2005.

79. Opening remarks and moderator, Vioxx Litigation Strategy Seminar, presented in Louisville, Kentucky, in January 2005.

80. "Vioxx Clinical Studies," presented at Mealey's (Lexis/Nexis) Vioxx Litigation Conference in Philadelphia in January 2005.

81. "Background History of Acute Heart Attacks and Ischemic Strokes," presented at Harris Martin Publishing's Vioxx Litigation Conference in Philadelphia in February 2005.

82. "Vioxx Case Selection," Vioxx Litigation Strategy Seminar, presented in to the Washington County Bar Association in Washington, Pennsylvania, in January 2005.

83. Opening remarks and moderator, Vioxx Litigation Strategy Seminar, presented in Nashville, Tennessee, in February 2005.

84. "Electronic Discovery and Other Electronic Communications," presented at the West Virginia Trial Lawyers Winter Seminar in Charleston, West Virginia, in February 2005.

85. "Vioxx Case Filing Options," Vioxx Litigation Strategy Seminar, presented in Little Rock, Arkansas, in March 2005.

86. "Vioxx Scientific Literature – Plaintiffs' Perspective:  Why the Risks Outweigh the Benefits," presented at a Vioxx Mock Trial sponsored by the National College of Advocacy in New Orleans in May 2005.

87. "Vioxx and the FDA: a Profound Regulatory Failure," presented to the Blackstone Club in Wheeling, West Virginia, in June 2005.

88. "Litigation Group Membership and Financial Management," presented at a New Litigation Group Leaders

8

**Exhibit A to Declaration of M. Romano**

Workshop at the AAJ Convention in Toronto, Canada, in July 2005.

89. "Vioxx Case Selection and Filing Options," presented at the Washington County (Pennsylvania) Summer Bench and Bar Convention in Williamsburg, Virginia, in August 2005.

90. "Ethics in Mass Tort Settlements," presented at an AAJ "Trends and Hot Topics in Pharmaceutical Litigation" seminar in Las Vegas in September 2005, and presented again at a Winter Bench and Bar Convention in January 2006 sponsored by the Washington County Bar Association in Washington, Pennsylvania.

91. Program designer and moderator of a Guidant Implanted Cardiac Device conference presented by the AAJ Heart Device Litigation Group in Minneapolis in December 2005.

92. "Class III Medical Device Preemption," presented at an Implanted Cardiac Device Scientific Conference sponsored by Med-Expertise in Houston in January 2006.

93. "Ethics in Mass Tort Settlements," presented at the Washington County Bar Association's Winter Bench & Bar Convention in Southpointe, Pennsylvania in January 2006.

94. Course planner and moderator, Propulsid MDL Settlement Program Seminar in Jackson, Mississippi, February 2006.

95. "Propulsid Death and Injury Claims," presented at a Propulsid MDL Settlement Program Seminar in Jackson, Mississippi, February 2006.

96. "Ethics in Class Actions," presented as one of three panel members in a Mealey's (LexisNexis) teleseminar in September 2006.

97. "Vioxx Litigation Update," presented at a National College of Advocacy seminar in Las Vegas, November 2006.

98. "Vioxx and Heart Device Litigation Updates," presented at a Trial Advocacy Seminar sponsored by Clark, Perdue, Arnold & Scott in Columbus, Ohio, December 2006.

99. "Medtronic and Guidant Implanted Device Litigation," presented at the American Association for Justice Winter Convention in Miami in February 2007.

100. "Gadolinium Client Selection and Rejection Criteria," presented at a Harris Martin Gadolinium Conference in Denver in June 2007.

101. "Identification of Viable Gadolinium Cases," presented at a Meeting of the AAJ Gadolinium Litigation Group in Chicago in July 2007.

102. Moderator for 15 speakers at AAJ Pharmaceutical Litigation Seminar in New York City in October 2007.

103. "Gadolinium Litigation Science," presented at a Mass Torts Made Perfect seminar in Las Vegas in November 2007.

104. "The Small Firm's Guide to Fighting the Drug Giants," presented in an Ohio Academy for Justice web seminar in November 2007.

105. "Gadolinium Litigation," presented at the AAJ Winter Convention in Fajardo, Puerto Rico, in January 2008.

106. "Gadolinium Litigation Tips and Traps," presented at a meeting of the AAJ Gadolinium Litigation Group in

9

**Exhibit A to Declaration of M. Romano**

Fajardo, Puerto Rico, in January 2008.

107. "Gadolinium Systemic Fibrosis," presented at a Mass Torts Made Perfect Seminar in Las Vegas in April 2008.

108. "Digitek Litigation in West Virginia State Court," presented at a meeting of the AAJ Digitek Litigation Group in Las Vegas in September 2008.

109. "Using Technology to Cut Overhead and Increase Efficiency in Difficult Economic Times," presented at an Ohio State Bar Association seminar in Columbus, Ohio, in July 2009; at an Ohio County (WV) Bar Association in seminar in Wheeling, West Virginia, in April 2009; and scheduled for presentation at a Pennsylvania Association for Justice seminar in Philadelphia in December 2009.

**Reported decisions**

*1. Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983).

This landmark West Virginia Supreme Court decisions established the role and scope of testimony allowed and required for experts in product liability actions. Hill represented the plaintiff, a young woman who sustained a foot amputation in a collision claimed to have been caused by the mismatching of radial and bias ply tires on a Ford Mustang that went out-of-control, hit a utility pole, and cracked in half at the fire wall within a few miles after the mismatch situation was created by a tire dealer and installer. The plaintiff claimed that the installer was negligent in creating the mismatch and that the two radial tires made by Michelin were defective because they did not contain a warning of the mismatch risk, which could have been embossed on the sidewall for less than five cents a tire cost to the manufacturer, which had know of the mismatch risk for 25 years. Following a two-week trial, the jury returned a $500,000 verdict against Michelin and the installer. The West Virginia appellate court upheld the verdict.

2. *Brent v. Board of Trustees of Davis & Elkins College*, 173 W.Va. 36, 311 S.E.2d 153 (1983).

Hill represented the plaintiff, a college student who lost an eye in chemistry class when a glass test tube exploded. The plaintiff sued the college for negligent supervision and Corning Glass, maker of the test tube, claiming it was defectively made. The case went to the West Virginia Supreme court twice on the procedural questions involving the appropriate venue for the case and notice requirements of action taken by the trial court. Ultimately the case was settled without trial.

3. *Deller v. Naymick*, 176 W.Va. 108, 342 S.E.2d 73 (1985).

The plaintiff, represented by Hill, was a steel worker who sustained a back injury at the steel mill which employed both him and a full-time company doctor. The plaintiff sued the company doctor for medical malpractice, claiming that his treatment, or lack of treatment, turned what would otherwise have been a relatively mild injury into one that was permanently, totally disabling. The defendant claimed entitlement to coemployee immunity under workers' compensation laws. The plaintiff contended that such coemployee immunity is inapplicable to the extent of available medical malpractice insurance coverage. The West Virginia Supreme Court ruled in favor of the defendant.

4. *Board of Commissioners of Columbiana County v. Samuelson*, 493 N.E.2d 245, 24 Ohio St.3d 62 (1986).

Hill represented five physicians who placed a bid for purchase of the former county poor home, intending to convert it into a nursing home. After winning the bid, the doctors discovered use restrictions on the property that would make operating a profitable nursing home difficult or impossible, and the doctors refused to complete the purchase. The county sued the doctors, and the case went to trial. The trial court ruled in favor of the county. The doctors appealed, and while their appeal was pending, they entered into a settlement agreement with the county under which the county agreed to obtain certain permits, and the doctors gave up their right to appeal the verdict against them. When the county did not provide the items it had agreed to provide in the settlement agreement, the doctors again refused to complete the purchase. The county then attempted to execute on its original verdict. The doctors contended that the county could not do this, but rather that its only remedy was a new action based on a claim the settlement agreement had been breached. The question went up to the Ohio intermediate appellate court, which held in favor of the county. However, the Ohio Supreme Court reversed, ruling in favor of the doctors.

5. *Waggoner v. Mosti*, 792 F.2d 595 (6th Cir.1986).

Hill's client as a man arrested for causing a minor disturbance at a convenient store late at night. After his arrest, he was kicked by one of the arresting officers on steps outside the city jail. The plaintiff was handcuffed with his hands behind his back and hit the steps with his jaw and one knee, because he was unable to use his hands or arms to break his fall. He suffered multiple fractures and had to undergo several surgeries, including a jaw reconstruction procedure that took 13 hours. The plaintiff sued the police and the city of Toronto, Ohio,

10

**Exhibit A to Declaration of M. Romano**

claiming police brutality in violation of his civil rights under federal law.  The jury in a federal court trial in Columbus returned a verdict in favor of the plaintiff for his medical expenses, wage loss, pain, and suffering.  The trial judge added attorney fees, litigation expenses, and interest.  The defendants appealed, and the Sixth Circuit Federal Court of Appeals in Cincinnati upheld the verdict and the additional damages added by the trial judge.

6. *Galanos v. National Steel Corp.*, 178 W.Va. 193, 358 S.E.2d 452 (1987).

Three plant worker plaintiffs represented by a previous attorney claimed damages from an explosion in the steel mill where they worked.  The previous attorney went to trial in the case of a fourth plaintiff also represented by him, and the jury returned a verdict for the defendants, finding that none was at fault in causing the explosion.  The trial judge then ruled that the three other plaintiffs were barred by the result in the fourth plaintiff's trial from taking their own cases to trial.  Hill assumed representation of the three plaintiffs and appealed to the West Virginia Supreme Court of Appeals, which held that the three were not precluded by the fourth plaintiff's result and were each entitled to their own day in court.

7. *Martin v. Charleston Area Medical Center*, 181 W.Va. 308, 382 S.E.2d 502 (1989).

Hill represented the widow and four children of a 31-year-old man who died in a Charleston WV hospital while undergoing a routine diagnostic test.  Suit was brought against the hospital and two doctors, and the case went to trial. Evidence showed wage loss of over $700,000 for the decedent, who was an auto factory worker.  The jury found that all defendants were negligent, but then inexplicably awarded only $250,000 in damages.  The plaintiff family was black, and the jury was all white.  Hill appealed, contending that the family was entitled to a new trial on the amount of damages, because the low verdict was a result of racial prejudice.  The West Virginia Supreme Court ruled in the plaintiffs' favor, fining that the verdict was inadequate under the evidence presented, and that there was no explanation other than racial discrimination to explain it.

8. *Mosser v. Fruehauf Corp.*, 940 F.2d 77 (4th Cir. 1991).

Hill's clients were the widow and minor child of a truck driver killed when three steel coils weighing about 25,000 pounds each broke loose from the Fruehauf flatbed trailer he was pulling and caused the tractor trailer to overturn.  The case was tried in federal court in West Virginia, and the jury awarded $1.1 million in compensatory damages and $5 million punitive damages against Fruehauf.  On appeal to the federal Fourth Circuit Court of Appeals, the compensatory verdict was upheld and the punitive damages were disallowed.

9. *Jackson v. Donohue*, 193 W.Va. 587, 457 S.E.2d 524 (1995).

Hill represented a 24-year-old woman who was a passenger in a tractor trailer rig that went off a mountainside in West Virginia, rendering the woman an incomplete quadriplegic.  The defendant trucking company's primary coverage was $500,000 in self insurance under a permit issued by the West Virginia Public Service Commission.  The company had $10 million in insurance coverage above the $500,000 in self insurance.  A settlement was reached with the insurance company in federal court in West Virginia where the lawsuit was brought.  The federal judge certified the question of the trucking company's liability for its self insurance to the West Virginia Supreme Court, which held that the self insurance was owed, because a trucking company that is given the privilege of self insuring by the state cannot use that privilege as a shield against liability that an insurance company would have under the same circumstances.

10. *Jackson v. Builders Transport, Inc.*, 1996 U.S. App. LEXIS 19049 (4th Cir. unofficially reported).

This is the underlying federal court case that gave rise to the certified question of law answered by the West Virginia Supreme Court in no. 9 above.  The issue raised by the defendant on appeal was whether the West Virginia Supreme Court misinterpreted applicable federal law in issuing its decision in no. 9.  The U.S. Court of Appeals for the Fourth Circuit held that the Judiciary Act of 1789 prohibits a federal court from second-guessing the basis used by a state's highest court in interpreting questions of that state's law in a diversity case.

## Professional organization memberships

1. AAJ Baycol Litigation Group, 2002-2005.

1. AAJ Electric Blanket Litigation Group, 2006 – present.

3. AAJ Gadolinium Litigation Group, 2007 - present

4. AAJ Leadership Forum, 2005 - present.

5. AAJ Litigation Group Leaders Council, 2001-present.

11

**Exhibit A to Declaration of M. Romano**

6. AAJ Meridia Litigation Group, 2002-2003.

7. AAJ Oxycontin Litigation Group, 2001-2002.

8. AAJ Propulsid Litigation Group, 2000-present.

9. AAJ Phenylpropanolomine (PPA) Litigation Group, 2001-2003.

10. AAJ Section and Litigation Group Coordinating Committee, 2003-2006.

11. AAJ Sulzer Hip Litigation Group, 2000-2003.

12. Academy of Florida Trial Lawyers, 1984-88.

13. Allegheny County (Pa.) Bar Association, 1992-2002.

14. American Academy of Experts in Traumatic Stress, 1997.

15. American Bar Association, 1977-88.

16. American Board of Forensic Examiners, 1995-96.

17. American Inns of Court, Pittsburgh Chapter, 1995-1997.

18. American Society of Law, Medicine, and Ethics, 1993-2000.

19. American Association for Justice, 1977-present and sustaining member since 1988.

20. California Trial Lawyers Association, 1987-88.

21. Civil Justice Foundation, founding sponsor and member from 1987 to present.

22. Colorado Trial Lawyers Association, 1988.

23. Columbiana County (Ohio) Bar Association, 1992-2001.

24. Hancock County (W.Va.) Bar Association, 1977-2003.

25. International Academy of Trial Lawyers, 2005 - present

26. Jefferson County (Ohio) Bar Association, 1988-2001.

27. Million Dollar Advocates Forum, 2001- present.

28. Mountain State Bar Association, 1988-2001

29. N.A.A.C.P. West Virginia Chapter (life member since 1992)

30. New York Trial Lawyers Association, 1987.

31. Ohio Association for Justice, 1984-present.

32. Ohio Bar Association, 1999-2001.

12

**Exhibit A to Declaration of M. Romano**

33. Ohio State Bar, 1978-present.

34. Ohio County (W.Va.) Bar Association, 1992-present.

35. Pennsylvania Association for Justice, 1986-present.

36. Pennsylvania Bar Association, 1998-2005.

37. Roscoe Pound Foundation, 1994-present.

38. Southern Trial Lawyers Association, 1987-present, founding member.

39. Public Justice Foundation, 1993-present.

40. Washington County (Pa.) Bar Association, 1992-2008.

41. West Virginia Association for Justice, 1977-present, sustaining member since 1980.

42. West Virginia State Bar, 1977-present.

43. Western Pennsylvania Trial Lawyers Association, 1995- 2002.

**State court admissions and licenses**

• West Virginia since 1977

• Ohio since 1978

• Pennsylvania since 1986

**Federal court admissions**

1. United States Supreme Court

2. United States Court of Appeals, Second Circuit

3. United States Court of Appeals, Third Circuit

4. United States Court of Appeals, Fourth Circuit

5. United States Court of Appeals, Fifth Circuit

6. United States Court of Appeals, Sixth Circuit

7. United States Court of Appeals, Seventh Circuit

8. United States Court of Appeals, Tenth Circuit

9. United States Court of Appeals, Eleventh Circuit

10. United States Court of Appeals, District of Columbia Circuit

11. United States District Court, Western District of Pennsylvania

13

**Exhibit A to Declaration of M. Romano**

12. United States District Court, Northern District of West Virginia

13. United States District Court, Southern District of West Virginia

14. United States District Court, Northern District of Ohio

15. United States District Court, Southern District of Ohio

16. United States District Court, Eastern District of Wisconsin

17. United States District Court, Western District of Wisconsin

Revised October 2009

14

**Exhibit A to Declaration of M. Romano**

Current as of November 2009

## Cases in which Barry Hill has served as an expert since 1994

| # | Case caption and involvement | Court and year | Type of case | |
|---|---|---|---|---|
| 6. | *Krzys v. Hissam and Nationwide*<br>• No written report<br>• No deposition | Hancock Co. W.Va. Cir. Ct. 1997 | Insurance UTP | Defendant (Attorney Greg McDermott, Wheeling WV) |
| 1. | *Bails v. Construction*<br>• No trial testimony<br>• No written report<br>• No deposition | Berkeley Co. W.Va. Cir. Ct. 1994 | Attorney fee dispute | Plaintiff (Attorney Mike Burke, Martinsburg WV) |
| 7. | *Angelos v. Super Val.*<br>• No trial testimony<br>• No written report<br>• No deposition | Wood Co. W.Va. Cir. Ct. 1999 | Attorney negligence | Plaintiffs (Attorney Harry Dietzler, Charleston WV) |
| 2. | *Call v. CSX*<br>• No trial testimony<br>• No written report | Harrison Co. W.Va. Cir. Ct.1995 | Insurance UTP | Plaintiff (Attorney Mike Benninger, Morgantown WV) |
| 8. | *Coros v. Westfield*<br>• No trial testimony<br>• Written report made | U.S.D.C. N.D. W.Va. 1999 | Insurance UTP | Defendant (Attorney Mel Moser, Pittsburgh PA) |
| 3. | *Bish v. Nationwide*<br>• Trial testimony given<br>• No written report<br>• No deposition<br>• No trial testimony | Brooke Co. W.Va. Cir. Ct. 1995 | Insurance UTP | Plaintiff (Attorney Frank Cuomo, Jr., Wellsburg WV) |
| 9. | *Myers v. Westfield* | Ohio Co. W.Va. Cir. Ct. 1999 | Insurance UTP | Defendant (Attorney Mel Moser, Pittsburgh PA) |
| 4. | *Marshall (Bandy) v. Mose*<br>• Deposition given<br>• No trial testimony<br>• No deposition<br>• Hearing testimony | Kanawha Co. W.Va. Cir. Ct.1996 | Attorney fee dispute | Plaintiff (Attorney Gerard Stowers, Charleston WV) |
| 10. | *Patrick v. Prudential*<br>• No written report | McDowell Co. W.Va. Cir. Ct.1999 | Insurance bad faith & UTP | Plaintiff (Attorney Joe Long, Bluefield WV) |
| 5. | *Stonebraker v. Prudential*<br>• No deposition<br>• No trial testimony<br>• Written report | U.S.D.C. N.D. W.Va. 1996 | Attorney negligence | Plaintiff (Attorney Mike Allen, Charleston WV) |
| 11. | *Addes v. Allstate*<br>• Deposition given<br>• No written report<br>• Deposition given<br>• No trial testimony | Wood Co. W.Va. Cir. Ct. 2000 | Insurance UTP | Plaintiff (Attorney Harry Dietzler, Charleston WV) |

1

12. *Ireland v. Allstate*

  • No written report
  • Deposition given
  • No trial testimony

Ohio County, W.Va. Cir. Ct. 2000

Insurance UTP

Plaintiff (Attorney Frank Cuomo, Wellsburg WV)

13. *Donahoe v. Vital*

  • No written report
  • No deposition
  • No trial testimony

Cabell County, W.Va. Cir. Ct 2001

Attorney negligence

Plaintiff (Attorney Ed Hill, Charleston WV)

14. *Rose v. Direct General*

  • No written report
  • No deposition
  • No trial testimony

U.S.D.C., S.D. W.Va. 2001

Insurance UTP

Plaintiff (Attorney Joe Long, Bluefield WV)

15. *Westfield v. R.H. Armstrong*

  • Written report made
  • No deposition
  • No trial testimony

Tucker County, W.Va. Cir. Ct. 2002

Insurance contract

Defendant (Attorney John Cooper, Parsons WV)

16. *Hadorn v. Liberty Mutual*

  • Written report made
  • No deposition
  • No trial testimony

U.S.D.C., N.D. W.Va. 2005

Insurance UTP

Plaintiff (Attorney Jacob Robinson, Wheeling WV)

17. *Perrine v. Du Pont*

  • Written affidavit made
  • No deposition
  • Hearing testimony given

Harrison  County, W.Va. Cir. Ct.  2008

Class action attorney fee

Plaintiffs (Attorney Virginia Buchanan, Pensacola FL)

2

**Exhibit A to Declaration of M. Romano**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**MARKS CONSTRUCTION CO., INC.**
a West Virginia Corporation, on behalf
of the Marks Construction Co., Inc. 401(k)
Profit Sharing Plan
and
**JAMES MARKS, KAREN MARKS,**
**ANGELA DAVIS, and RICHARD STRAIGHT,**
all individual participants thereunder,

      **Plaintiff,**

v.                                      **Civil Action No. 1:05CV73**
                                           (Judge Frederick P. Stamp, Jr.)

**THE HUNTINGTON NATIONAL BANK** and
**SHARON HUGHES,**

      **Defendants.**

## AFFIDAVIT

The undersigned, T. C. McCarthy, Jr., being first duly sworn, deposes and states upon his oath as follows:

1.     I have been a practicing attorney in the state of West Virginia since June 1, 1971.

2.     My professional experience in the practice of law in West Virginia has included representation of individuals, corporations, municipalities, partnerships and other entities in real estate matters, commercial matters, labor law matters for both corporations and unions, mergers and acquisitions, with a concentration in litigation involving negligent personal injury, medical malpractice, employment law matters and general commercial litigation matters.

3.     I have known and observed Attorney Michael J. Romano in numerous professional settings and capacities since approximately 1995. I am very familiar with his work in various

**Exhibit B to Declaration of M. Romano**

aspects of his legal practice.  From participation with him, I am familiar with his knowledge, leadership skills, and dedication to his clients and organizations to which he belongs.

4.      Attorney Romano is an accomplished, skillful, and experienced litigation attorney. He has extensive knowledge, understanding and proficiency in legal research and possesses excellent writing skills.  Attorney Romano has a keen sense of honor and a determination for professional excellence, which drives and guides him in his pursuit of justice for his clients. Attorney Romano's character, reputation and integrity are of the highest caliber and he maintains a relentless drive and conviction for proper justice for his clients.  His legal skills and ability, diligence and perseverance, and a moral integrity beyond reproach, make him one of West Virginia's exceptional litigators.

5.      In addition to being a highly qualified and accomplished attorney, Attorney Romano is one of a small number of lawyers who also is a Certified Public Accountant.  The combination of his legal and accounting skills provides him with a most unique proficiency in cases involving accounting and financial issues, which are an added advantage to his clients.  This combination of expertise in accounting and law also provides his clients with a benefit in legal matters, or litigation, involving financial issues and matters.

6.      From my long personal relationship with Attorney Romano, I know that he spent more than eight (8) years with the U.S. Securities and Exchange Commission, which also provides him with a unique knowledge and proficiency in cases involving financial matters.  Additionally, Attorney Romano is quite proficient in his computer skills and especially computer legal research.

7.      From my many years of practicing law in West Virginia, I also am familiar with court awards of attorneys' fees that have been rendered in recent years in West Virginia in practice areas such as employment law, civil rights, consumer rights, breach of implied warranty of merchantability under the Uniform Commercial Code, and other fee shifting cases.  Likewise, I am familiar with awards of attorneys fees in discovery matters, and the chargeable hourly rates for attorneys of varying degrees of experience.

**Exhibit B to Declaration of M. Romano**

8.    Based upon my experience, information and knowledge, I believe that Three Hundred Dollars ($300.00) to Three Hundred Fifty dollars ($350.00) per hour is a reasonable hourly rate in the current market in West Virginia for lawyers with the knowledge, training, experience, abilities, and expertise of Attorney Romano.

The foregoing is true and accurate to the best of my knowledge, information and belief.

T. C. McCarthy, Jr., Esquire
Gompers, McCarthy & McClure
60 Fourteenth Street
Wheeling, WV 26003
(304) 233-2450

Subscribed and sworn to before me by T. C. McCarthy, Jr., this 17th day of November, 2009.



Notary Public

3

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**MARKS CONSTRUCTION CO., INC.**
a West Virginia Corporation, on behalf
of the Marks Construction Co., Inc. 401(k)
Profit Sharing Plan
and
**JAMES MARKS, KAREN MARKS,**
**ANGELA DAVIS, and RICHARD STRAIGHT,**
all individual participants thereunder,

        **Plaintiff,**

v.                              **Civil Action No. 1:05CV73**
                                      (Judge Frederick P. Stamp, Jr.)

**THE HUNTINGTON NATIONAL BANK and**
**SHARON HUGHES,**

        **Defendants.**

## DECLARATION OF ALLAN N. KARLIN IN SUPPORT OF FEE PETITION

        Comes now the Affiant, Allan N. Karlin, and being first duly sworn, deposes and states as follows:

        1.     I have been practicing law in West Virginia since 1975, and am a graduate of the University of California at Berkeley School of Law.  I am admitted to practice law in the state of West Virginia, as well as the Fourth Circuit Court of Appeals, the United States District Courts for the Northern and Southern District of West Virginia, and the United States Supreme Court.

        2.     Since 1981, I have been engaged in the private practice of law as a member of the Allan N. Karlin & Associates.  Most of my practice is in West Virginia.  I practice in courts throughout the State of West Virginia, including the United States District for the Northern District of West Virginia.

        3.     I devote a substantial portion of my practice and the practice of my firm to areas of law including employment cases, including those relating to employee benefits litigation.  In

addition to litigating such cases, I have frequently presented continuing legal education programs in the area of employment law.

4.      I am familiar with the standards for awarding attorney fees in cases involving employment and employee benefit law. I am also familiar with litigation in the federal court system.

5.      I am also member of the Ethics and Sanctions Committee of the National Employment Lawyers Association and a former Chairperson of the West Virginia Lawyer Disciplinary Board.

6.      In my experience, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. (ERISA) matters is a specialized practice area. Few attorneys in West Virginia are willing to represent plaintiffs in matters such as these. These cases are generally difficult, involve significant risks, require substantial expenditures of time in researching complex areas of law, and require careful research and development of factual issues. Because of the extensive commitments of time and resources for ERISA cases, attorneys who take these cases must forego their traditional and more financially predictable forms of representation.

7.      I am personally familiar with Michael J. Romano. Mr. Romano and I have litigated together and have consulted with each other on many other cases. We also worked together, for several years, planning and presenting Continuing Legal Education programs for the West Virginia Association for Justice. In addition, I am familiar with Mr. Romano's practice and areas of specialty as well as his reputation among his peers.

8.      Based on my knowledge of and familiarity with Mr. Romano, I can state that he is an extremely competent litigator who is willing to take on difficult cases and to pursue them with diligence on behalf of his client. I also know, from many years of working with and talking to him, that he is an attorney who takes seriously his responsibility to his client and who is willing to put in the hard work necessary to produce a successful outcome.

9.      Based on my familiarity with Mr. Romano and upon my personal knowledge of his experience, competence, diligence and reputation, an hourly rate of $350.00 per hour is reasonable

2

**Exhibit C to Declaration of M. Romano**

given the hourly rates for litigators in West Virginia, including those who litigate ERISA and other employment cases.

10.    I further believe that a national ERISA expert such as Mr. Romano's co-counsel, Joseph A. Garofolo, is entitled to a higher hourly rate based on my own experience working with ERISA national specialist in other cases. In order to effectively litigate ERISA cases, it is important that specialists with national practices be awarded fees at a rate reflecting the market rate for similar national specialists. If not, it would prove difficult for West Virginia attorneys to attract national specialists to co-counsel with them in West Virginia. Such a result would work to the detriment of West Virginia litigants.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 19th day of November at Sarasota, Florida.

_____
Allan N. Karlin

3

**Exhibit C to Declaration of M. Romano**

# Law Office of Michael J. Romano

128 South Second Street
Clarksburg, WV 26301

Marks Construction Profit Sharing Plan
Attn:  James Marks
18 Carriage Lane
Bridgeport, WV 26330
 In Reference To:   Marks Construction, et. al. v. Huntington National Bank, et. al.

Invoice #10296

Professional Services

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 8/2/2004 | Review of 1996 Prototype Plan and related documents; | 5.10 350.00/hr | 1,785.00 |
| 8/6/2004 | Review of 2003 Prototype Plan and related documents; | 7.50 350.00/hr | 2,625.00 |
| 2/1/2005 | Preparation of letter to Rice requesting docs; | 0.30 350.00/hr | 105.00 |
| 2/16/2005 | Preparation of letter to Rice requesting meeting; | 0.40 350.00/hr | 140.00 |
| 2/25/2005 | Meeting with  Jim Marks and Karen Marks regarding ▮▮▮▮ (2.1); Telephone conference with Sharon Hughes, James Marks and Karen Marks regarding circumstances of conversion and loans(0.5); | 2.60 350.00/hr | 910.00 |
| 4/1/2005 | Preparation of Complaint; | 4.90 350.00/hr | 1,715.00 |
| 5/2/2005 | Preparation of Letter to King and Hauptfuehrer regarding removal; | 1.30 350.00/hr | 455.00 |
| 5/30/2005 | Research on ERISA COAs and relief; | 6.50 350.00/hr | 2,275.00 |
| 5/31/2005 | Preparation of Motion to Stay Discovery; | 1.70 350.00/hr | 595.00 |
|  | Research on ERISA causes of action; | 8.10 350.00/hr | 2,835.00 |
| 6/8/2005 | Preparation of letter to King regarding Plan representation; | 0.30 350.00/hr | 105.00 |
|  | Preparation of Preliminary Planning Meeting Report; | 0.90 350.00/hr | 315.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 8/10/2005 | Telephone conference with ███ regarding engagement; | 0.80 350.00/hr | 280.00 |
| 8/24/2005 | Preparation of Letter to King regarding Summons & Complaint (0.4); Review of email including ERISA rule citation from ███ (0.8); | 1.20 350.00/hr | 420.00 |
| 8/30/2005 | Preparation of ROS - HNB; | 0.30 350.00/hr | 105.00 |
| 9/2/2005 | Preparation of letter to clients regarding Myers ███; | 0.40 350.00/hr | 140.00 |
| 9/13/2005 | Preparation of letter to ███ enclosing check; | 0.30 350.00/hr | 105.00 |
| 10/13/2005 | Review of D's Amended Answer; | 1.20 350.00/hr | 420.00 |
| 10/27/2005 | Preparation of letter to clients regarding ██████████ ██████; | 0.30 350.00/hr | 105.00 |
| | Research on award of attorneys' fees under ERISA; | 3.40 350.00/hr | 1,190.00 |
| 11/2/2005 | Research and preparation of Ps' Response to D's Counter; | 2.70 350.00/hr | 945.00 |
| 11/14/2005 | Preparation of letter to client regarding ███ Invoice; | 0.30 350.00/hr | 105.00 |
| 11/18/2005 | Preparation of letter to ███ enclosing check; | 0.30 350.00/hr | 105.00 |
| 11/28/2005 | Preparation of letter to Wiggins responding to threats; | 0.80 350.00/hr | 280.00 |
| 12/13/2005 | Preparation of letter to client regarding ███ Invoice; | 0.30 350.00/hr | 105.00 |
| 1/5/2006 | Revision of Planning Meeting Memorandum; | 0.50 350.00/hr | 175.00 |
| 1/10/2006 | Review of Scheduling Order; | 0.70 350.00/hr | 245.00 |
| 1/17/2006 | Preparation of letter to ███ enclosing check; | 0.30 350.00/hr | 105.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 1/17/2006 | Preparation of letter to clients regarding ███████; | 0.30 350.00/hr | 105.00 |
| 1/18/2006 | Preparation of letter to ████ enclosing notebook; | 0.70 350.00/hr | 245.00 |
| 1/30/2006 | Email exchange with ████ regarding conclusions as to Plan Documents (0.3); Preparation of Ps' Rule 26(a) Initial Disclosures (6.2); | 6.50 350.00/hr | 2,275.00 |
| 2/16/2006 | Preparation of letter to clients regarding ██████; | 0.20 350.00/hr | 70.00 |
| 3/6/2006 | Preparation of letter to clients regarding █████; | 0.40 350.00/hr | 140.00 |
| 4/5/2006 | Preparation of letter to Wiggins regarding Mot to Strike Jury Demand; | 0.40 350.00/hr | 140.00 |
| 4/10/2006 | Preparation of letter to Wiggins regarding Agreed Order regarding jury Demand; | 0.30 350.00/hr | 105.00 |
| | Preparation of Order regarding Motion to Strike (0.5);  Review suggested responses from Myers to Ds' interrogatories (0.4); | 0.90 350.00/hr | 315.00 |
| 4/12/2006 | Preparation of P's Rsp to D's 1st Interrogatories; | 9.50 350.00/hr | 3,325.00 |
| 4/16/2006 | Preparation of Ps' First CDRs to HNB; | 5.80 350.00/hr | 2,030.00 |
| 4/25/2006 | Preparation of Rule 7.1 Disclosures; | 2.70 350.00/hr | 945.00 |
| 5/3/2006 | Review ████ conclusions regarding loan issues (0.6); Preparation of Letter to client regarding Eckert invoice (0.2); | 0.80 350.00/hr | 280.00 |
| 5/8/2006 | Preparation of letter to ████ enclosing check; | 0.20 350.00/hr | 70.00 |
| | Preparation of letter to Wiggins regarding discovery issues; | 1.80 350.00/hr | 630.00 |
| 5/9/2006 | Preparation of letter to ████ enclosing Expert Notebook; | 0.30 350.00/hr | 105.00 |
| | Preparation of Expert Notebook and Index; | 3.70 350.00/hr | 1,295.00 |

Page    4

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 5/15/2006 | Preparation of Ord extending time for D's Motion to Compel; | 0.30<br>350.00/hr | 105.00 |
| 5/23/2006 | Preparation of Order entending time for D's Response to Ps' CDRs; | 0.40<br>350.00/hr | 140.00 |
| 5/30/2006 | Preparation of proposed Confidentiality Order (0.6); Research regarding damages and loss profits under ERISA (3.6); | 4.20<br>350.00/hr | 1,470.00 |
| 6/5/2006 | Telephone conference with Wiggins regarding extensions of time to respond (0.3); Review of revision to proposed Protective Order regarding confidential information (0.5); Email to Wiggins regarding extension for Motion to Compel and Protective Order (0.3); | 1.10<br>350.00/hr | 385.00 |
| 6/6/2006 | Review of erroneous stipulation (0.3); Telephone conference with Wiggins regarding Defendant's subpoena to Denny and erroneous stipulation (0.2); Email to Wiggins regarding same (0.4); Telephone conference with Wiggins regarding Huntington's discovery responses (0.1); | 1.00<br>350.00/hr | 350.00 |
| | Review of D's Subpoena to Smith & Denny; | 0.30<br>350.00/hr | 105.00 |
| 6/7/2006 | Telephone conference with Wiggins regarding Defendant's erroneous stipulation and subpoena (0.4); Review of corrected stipulation (0.3); Conference call with Wiggins and Judge's clerk regarding erroneous Order (0.2); Telephone conference with Hauptfurer and Wiggins regarding discovery, depositoins, etc.(0.3); | 1.20<br>350.00/hr | 420.00 |
| 6/8/2006 | Email to Wiggins regarding Order and depositions; | 0.30<br>350.00/hr | 105.00 |
| 6/9/2006 | Preparation of Change in Information of Counsel of Record; | 0.40<br>350.00/hr | 140.00 |
| 6/14/2006 | Receive and review Order extending Defendants' time to file Motion to Compel (0.4); Telephone conversation with Wiggins regarding suggestion to correct his erroneous Order extending time to file responses to Plaintiff's First CDRs (0.2); Preparation of revision to Order (0.5); | 1.10<br>350.00/hr | 385.00 |
| 7/7/2006 | Revision of Order extending time to file Ds' Responses to Ps' CDRs and Ps' Motion to Compel; | 0.40<br>350.00/hr | 140.00 |
| 7/12/2006 | Telephone conference with Karen Marks regarding production of personal tax returns (0.5); Preparation of email to Wiggins (0.3);  Telephone conference with Sara Hauptfuehrer regarding filing Motion to Compel (0.2); | 1.00<br>350.00/hr | 350.00 |
| 7/14/2006 | Review of Defendants' Motion to Compel; Preparation of email to Wiggins; | 1.90<br>350.00/hr | 665.00 |

**Exhibit D to Declaration of M. Romano**

Page    5

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 7/14/2006 | Preparation of letter to clients regarding ███████; | 0.30<br>350.00/hr | 105.00 |
| 7/17/2006 | Preparation of P's 1st CDR's to HNB; | 6.70<br>350.00/hr | 2,345.00 |
| 7/18/2006 | Review of Notice of W/D of D's Motion to Compel (0.2); Preparation of Ps' 1st supplement to Ds' first discovery requests and review of income tax returns (2.5); | 2.70<br>350.00/hr | 945.00 |
| 7/24/2006 | Preparation of letter to client regarding discovery responses; | 0.40<br>350.00/hr | 140.00 |
| 7/26/2006 | Telephone conference with Karen Marks regarding discovery requests (0.4); Email to Wiggins regarding supplement response (0.2); | 0.60<br>350.00/hr | 210.00 |
| 7/28/2006 | Preparation of letter to Myers enclosing check; | 0.30<br>350.00/hr | 105.00 |
| 7/31/2006 | Preparation of email to Wiggins regarding discovery (0.2); Preparation of Stipulation regarding extending time frame for Ps' Motion to Compel (0.7); | 0.90<br>350.00/hr | 315.00 |
| | Second revision to Order Ext D's Response to P's CDR's & M-C; | 0.30<br>350.00/hr | 105.00 |
| | Preparation of Order extending Ps' Motion to Compel; | 0.30<br>350.00/hr | 105.00 |
| 8/1/2006 | Review of discovery and preparation of deficiency letter; | 6.70<br>350.00/hr | 2,345.00 |
| 8/3/2006 | Review and revision of deficiency letter; | 5.40<br>350.00/hr | 1,890.00 |
| 8/4/2006 | Review of production of documents; | 3.20<br>350.00/hr | 1,120.00 |
| 8/6/2006 | Review of document production; | 4.20<br>350.00/hr | 1,470.00 |
| 8/7/2006 | Review of production of documents; | 5.50<br>350.00/hr | 1,925.00 |
| 8/11/2006 | Emails with Wiggins regarding change in date for M/L responses; | 0.50<br>350.00/hr | 175.00 |
| 8/14/2006 | Preparation of stipulation regarding change in deadline for responses to Motions in Limine (0.5); Review of email from Wiggins regarding Motion in Limine date and discovery (0.2);  Changes to stipulation (0.3); | 1.00<br>350.00/hr | 350.00 |

**Exhibit D to Declaration of M. Romano**

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 8/14/2006 | Review and revision of document memorandum; | 1.70 350.00/hr | 595.00 |
| 8/15/2006 | Preparation of letter to clients ███████████; | 0.50 350.00/hr | 175.00 |
| 8/16/2006 | Preparation of responses to Ds' 2nd Request for production of documents (1.5);  Telephone conversation with clients regarding responses to assure complete (0.5); | 2.00 350.00/hr | 700.00 |
| 8/18/2006 | Preparation of Order extending deadline for P's Motion to Compel  to 09/05/06 (0.4); Review of Email from Wiggins regarding 08/03/06 letter and Marks depositions (0.2); | 0.60 350.00/hr | 210.00 |
| 8/22/2006 | Review of HNB discovery responses (4.1); Emails regarding settlement, discovery, and extension of expert deadlines to Wiggins (0.3); | 4.40 350.00/hr | 1,540.00 |
| 8/23/2006 | Email to Wiggins regarding depositions (0.3); Preparation of deposition notice for Hughes (0.3); | 0.60 350.00/hr | 210.00 |
| 8/27/2006 | Review of document production by HNB, and preparation of discovery memorandum; | 4.50 350.00/hr | 1,575.00 |
| 8/28/2006 | Preparation of proposed Order extending Expert Disclosures; | 0.50 350.00/hr | 175.00 |
| 8/29/2006 | Preparation of Order extending P's Motion to Compel deadline  to 9-20-06 (0.4); Email exchange with Wiggins regarding agreement to extend expert disclosure deadlines, settlement offer of $150K,  HNB supplement and piecemeal discovery, and failure to comply with Rules (1.1); | 1.50 350.00/hr | 525.00 |
| 9/4/2006 | Review of supplemental production of documents and update of discovery memorandum; | 3.40 350.00/hr | 1,190.00 |
| 9/5/2006 | Preparation of letter to clients ███████████; | 0.20 350.00/hr | 70.00 |
| 9/6/2006 | Review of email and Bates Number reconciliation of documents to CDRs from Wiggins (0.8); Telephone conversation with Wiggins regarding depositions of participants (0.2); | 1.00 350.00/hr | 350.00 |
| 9/7/2006 | Review of email from Wiggins (0.1); Additional review of D's reconciliation of production to P's CDRs and comparison to actual (2.1); | 2.20 350.00/hr | 770.00 |
| 9/11/2006 | Preparation of letter to Myers enclosing check; | 0.30 350.00/hr | 105.00 |
| 9/17/2006 | Review of documents produced by supplement and revision of discovery points memo, index, and chronology; | 8.40 350.00/hr | 2,940.00 |

**Exhibit D to Declaration of M. Romano**

|  | | Hrs/Rate | Amount |
|---|---|---|---|
| 9/18/2006 | Review of documents produced by HNB in preparation for Hughes' deposition and preparation for deposition; | 13.50 350.00/hr | 4,725.00 |
|  | Review of D's 4th Supplemental Response to P's 1st CDRs; | 1.30 350.00/hr | 455.00 |
| 9/19/2006 | Preparation and attendance at Hughes' deposition; | 11.00 350.00/hr | 3,850.00 |
| 9/20/2006 | Preparation of Order extending Ps' Motion to Compel deadline to 10-9-06; | 0.30 350.00/hr | 105.00 |
| 9/21/2006 | Preparation of memoranda regarding Hughes deposition; | 1.90 350.00/hr | 665.00 |
|  | Preparation of letter to Wiggins regarding Ps' settlement offer; | 0.70 350.00/hr | 245.00 |
| 9/25/2006 | Telephone conference with Wiggins regarding Plaintiffs' responses to HNB's third discovery requests (0.4);  Preparation of Rule 30(b)(6) Notice of deposition (2.8); | 3.20 350.00/hr | 1,120.00 |
| 9/26/2006 | Preparation of Rule 30(b)(6) Notice of Deposition (1.9); Review of discovery in preparation of Rule 30(b)(6) notice (3.7); Telephone conference with expert regarding Hughes deposition (0.5); Telephone conference with client regarding scheduling of depositions (0.5); Telephone conference with Wiggins regarding settlement and other issues (0.3); | 6.90 350.00/hr | 2,415.00 |
|  | Preparation of P's Response to D's 3rd Interrogatory Requests; | 0.80 350.00/hr | 280.00 |
| 9/27/2006 | Preparation of letter to Wiggins and Hauptfuehrer regarding depositions (0.5); Review and revision of Notice of Deposition (2.7); | 3.20 350.00/hr | 1,120.00 |
|  | Preparation of letter to Wiggins regarding Rule 30(b)(6) depo of HNB; | 0.30 350.00/hr | 105.00 |
| 10/2/2006 | Review of email from Hauptfuehrer regarding Rule 30(b)(6) deposition (0.4); Reivew of Notice to Rule 30(b)(6) deposition (0.3); Preparation of email in response to Hauptfuehrer email regarding Rule 30(b)(6) deposition (0.3); | 1.00 350.00/hr | 350.00 |
| 10/3/2006 | Meeting with Karen Marks and Jim Marks to ███████████████ | 4.50 350.00/hr | 1,575.00 |
|  | Preparation of letters ███████████ to James Marks and Karen Marks; | 0.80 350.00/hr | 280.00 |
| 10/4/2006 | Review of discovery regarding fee sharing arrangements (1.2); Meeting with Karen and Jim Marks regarding ███████ (1.8); Preparation of Re-Notice of Amended Rule 30(b)(6) deposition (0.5); Preparation of letter to Wiggins | 5.90 350.00/hr | 2,065.00 |

**Exhibit D to Declaration of M. Romano**

Page    8

| | | Hrs/Rate | Amount |
|---|---|---|---|
| | regarding discovery issues (1.4);  Email from Hauptfuehrer regarding Rule 30(b)(6) areas of inquiry (0.2); Revision of letter to Wiggins regarding discovery issues (0.8); | | |
| 10/5/2006 | Preparation of letter to Wiggins regarding renotice of Rule 30(b)(6) deposition of HNB; | 0.20 350.00/hr | 70.00 |
| 10/6/2006 | Preparation and attendance at deposition of James Marks; | 5.90 350.00/hr | 2,065.00 |
| 10/8/2006 | ███████████ meeting with Karen Marks regarding ███████; | 2.00 350.00/hr | 700.00 |
| 10/9/2006 | Preparation of and attendance at deposition of Karen Marks; | 4.00 350.00/hr | 1,400.00 |
| | Review of D's Motion to Compel Discovery (0.8); Review of Conversion Manual (1.9); | 2.70 350.00/hr | 945.00 |
| | Initial review of D's Memo in Support of D's Mot. for Summary Judgment; | 1.70 350.00/hr | 595.00 |
| 10/10/2006 | Initial review of  D's First Motion for Summary Judgment and exhibits (1.8); Review of Ds' 4th discovery requests (0.3); | 2.10 350.00/hr | 735.00 |
| 10/11/2006 | Letter to Defendants regarding summary judgment, stay and discovery (0.6); Email exchange with Hauptfuehrer regarding threats and civility, and Motion for Protective Order (0.5); Research on standing issue (2.1); | 3.20 350.00/hr | 1,120.00 |
| | Preparation of response to Defendants' Motion for Stay (1.2);  Telephone conference call with J. Garofolo regarding stay, standing and summary judgment issues (0.5); Telephone conversation with Jim Marks regarding █████████ (0.6); Review of Quigley CV (0.8); Research on standing issue (2.1); | 5.20 350.00/hr | 1,820.00 |
| | Preparation of letter to Wiggins responding to 10/04/06 and 10/09/06 letters regarding discovery, stay and response to Motion for SJ; | 0.60 350.00/hr | 210.00 |
| 10/13/2006 | Preparation of Order extending P's deadline to respond to D's 1st Mot. for Summary Judgment to 11/20/06 (0.5); Email exchange with Hauptfuehrer regarding stay and extension for response to SJ (0.3); Review and revision of stipulation of extension of time to file response to Ds' Motion for SJ (0.5); | 1.30 350.00/hr | 455.00 |
| 10/16/2006 | Telephone conversations with Hauptfuehrer and response to email regarding stay and depositions (0.7); Continued review of Conversion Manual (2.9); | 3.60 350.00/hr | 1,260.00 |
| 10/19/2006 | Response to Hauptenfurer email regarding 10/23/06 deposition (0.2); Telephone conversation with Wiggins regarding Agreed Order for Stay (0.4); | 0.60 350.00/hr | 210.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 10/19/2006 | Review and revision of proposed Agreed Order to Stay; | 0.40 350.00/hr | 140.00 |
| 10/25/2006 | Review of entered Order to Stay Discovery; | 0.10 350.00/hr | 35.00 |
| 11/2/2006 | Research cases regarding ERISA causes of action for amended complaint; | 3.80 350.00/hr | 1,330.00 |
| 11/7/2006 | Preparation of 2nd Order extending P's response date to D's Motion for SJ; | 0.20 350.00/hr | 70.00 |
| 11/14/2006 | Preparation of letter to Garofolo regarding ▮▮▮▮▮▮ (0.4); Review and changes to fee agreement (0.9); Preparation of summary of HNB account statements 1999-2004 (3.2) | 4.50 350.00/hr | 1,575.00 |
| 11/15/2006 | Telephone conference with J. Garofolo regarding necessity of amending complaint; | 0.20 350.00/hr | 70.00 |
| 11/21/2006 | Preparation and research on response to D's First Motion for Summary Judgment (9.7);  Review and revision of HNB account statement memorandum (0.7); | 10.40 350.00/hr | 3,640.00 |
| 11/22/2006 | Preparation and research on response to D's First Motion for Summary Judgment (12.3); Telephone conference with Garofolo regarding amended complaint (0.2); | 12.50 350.00/hr | 4,375.00 |
| 11/27/2006 | Telephone conference with Garofolo regarding response to SJ (1.2); Research on issues for response to SJ (4.1); | 5.30 350.00/hr | 1,855.00 |
| 11/28/2006 | Further preparation of Response to D's Summary Judgment (8.1); Research on notice pleading and amendment issues with preparation of case analysis memorandum (3.2); Revision of Motion to Amend (1.7); Telephone conference with Joe Garofolo regarding amended complaint and response (0.2); | 13.20 350.00/hr | 4,620.00 |
| 11/29/2006 | Review and revision of Motion to Amend and Amended Complaint, with filing of the same (8.6);  Further preparation of response to 1st Summary Judgment (7.6); | 16.20 350.00/hr | 5,670.00 |
| 11/30/2006 | Preparation of response to Ds' 1st Motion for Summary Judgment (6.5); Consultations with Joe Garofolo regarding revisions to response to Motion for SJ (1.6);  Review and revision of response to Motion for SJ (3.1); Review of exhibits for response (1.1); Research on response issues (2.8); | 15.10 350.00/hr | 5,285.00 |
| 12/1/2006 | Preparation of letter to Judge Stamp regarding exhibits to SJ (0.3); | 0.30 350.00/hr | 105.00 |
| 12/12/2006 | Review of HNB reply brief to Motion for SJ and exhibit (1.2); Telephone conference with Joe Garofolo regarding Reply (0.2); | 1.40 350.00/hr | 490.00 |

**Exhibit D to Declaration of M. Romano**

| Date | Description | Hrs/Rate | Amount |
|------|-------------|----------|--------|
| 12/13/2006 | Preparation of letter to client regarding Garofolo Invoice; | 0.40 350.00/hr | 140.00 |
| 12/14/2006 | Preparation of letter to Garofolo regarding payment; | 0.40 350.00/hr | 140.00 |
| 12/18/2006 | Review of D's response to P's Motion Amend Complaint (2.1); Research on case citations in Ds' Response (2.8); Telephone conference with Garofolo regarding Response (0.2); | 5.10 350.00/hr | 1,785.00 |
| 12/21/2006 | Research on Motion to Amend issues raised in HNB response (3.4); Telephone consultation with Garofolo from Peru regarding reply (0.6); Preparation of reply on Motion to Amend (3.2); | 7.20 350.00/hr | 2,520.00 |
| 12/22/2006 | Research on Motion to Amend issues (2.1);  Review of HNB discovery for reply (2.9); Preparation of reply on Motion to Amend (4.4); | 9.40 350.00/hr | 3,290.00 |
| 12/26/2006 | Preparation of Ps' Reply to D's Response to Motion to Amend (6.3); Research on amendment issues and ERISA (2.9); | 9.20 350.00/hr | 3,220.00 |
| 12/27/2006 | Preparation of Ps' Reply to D's Response to Motion to Amend with research (10.1); Telephone conference with Garofolo regarding Reply (1.0); | 11.10 350.00/hr | 3,885.00 |
| 12/28/2006 | Telephone conference with Garofolo regarding Reply to Motion to Amend; | 1.20 350.00/hr | 420.00 |
| 12/29/2006 | Preparation of Reply to Ds' Response to Motion to Amend (6.8); Review and revision of Motion to Exceed Page Limit (1.2); | 8.00 350.00/hr | 2,800.00 |
|  | Preparation of P's Motion to exceed page limitation; | 0.70 350.00/hr | 245.00 |
| 12/31/2006 | Preparation of Reply to Ds' Response to Motion to Amend and additional research; | 5.50 350.00/hr | 1,925.00 |
| 1/1/2007 | Preparation of Reply to Ds' Response to Motion to Amend and additional research; | 8.50 350.00/hr | 2,975.00 |
| 1/2/2007 | Research on futility issue (2.7); Review and revision of Reply (4.5); | 7.20 350.00/hr | 2,520.00 |
| 1/23/2007 | Preparation of letter to expert ███████████; | 0.50 350.00/hr | 175.00 |
| 3/2/2007 | Preparation of letter to clients regarding ███████████; | 0.40 350.00/hr | 140.00 |
| 5/11/2007 | Preparation of letter to clients regarding ███████████; | 0.20 350.00/hr | 70.00 |

**Exhibit D to Declaration of M. Romano**

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/2/2007 | Preparation of letter to clients regarding ███████ | | 0.20 350.00/hr | 70.00 |
| 8/7/2007 | Preparation of letter to clients regarding ███████; | | 0.20 350.00/hr | 70.00 |
| 10/5/2007 | Preparation of letter to clients regarding ███████; | | 0.20 350.00/hr | 70.00 |
| 10/11/2007 | Review of D's Mot to W/D Wiggins; | | 0.30 350.00/hr | 105.00 |
| 10/29/2007 | Review of Order granting Wiggins' Motion to Withdraw; | | 0.20 350.00/hr | 70.00 |
| 3/8/2008 | Review of Order Granting Defendants' Motion to File Supplemental Memorandum regarding Motion for SJ; | | 0.30 350.00/hr | 105.00 |
| 3/14/2008 | Preparation of Ps' response to Defendants' Motion to File Supplemental Memorandum regarding Motion for SJ; | | 1.10 350.00/hr | 385.00 |
| 4/3/2008 | Review of Defendants' Supplemental Memo Regarding SJ and research; | | 5.60 350.00/hr | 1,960.00 |
| 4/8/2008 | Research and Preparation of Plaintiffs' Response to Defendants' Supplemental Memo Regarding SJ; | | 10.20 350.00/hr | 3,570.00 |
| 4/9/2008 | Preparation of Ps' Responses to Ds' Supplemental Memo Regarding SJ; | | 14.20 350.00/hr | 4,970.00 |
| 4/10/2008 | Final Preparation of Ps' Response to Ds' Supplemental Memo Regarding SJ; | | 6.80 350.00/hr | 2,380.00 |
| 4/18/2008 | Review of Ds' Motion to Extend Time for Reply; | | 0.40 350.00/hr | 140.00 |
| | Telephone conversation with Hauptfuehrer regarding agreement to file reply (0.3); Email exchange with Hauptfuehrer regarding Reply (0.6); | | 0.90 350.00/hr | 315.00 |
| 4/22/2008 | Review of Ds' Reply to Ps' Response to Supplemental Memo Regarding SJ; | | 1.50 350.00/hr | 525.00 |
| 5/3/2008 | Preparation of letter to client regarding ███████; | | 0.20 350.00/hr | 70.00 |
| 5/29/2008 | Preparation of letter to Garofolo ███████; | | 0.30 350.00/hr | 105.00 |

**Exhibit D to Declaration of M. Romano**

Page    12

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 6/25/2008 | Review of case law forwarded by Garofolo (In re: Mutual Funds); | 1.20<br>350.00/hr | 420.00 |
| 10/1/2008 | Email exchange with Garofolo regarding status and strategy; | 0.60<br>350.00/hr | 210.00 |
| 1/23/2009 | Review of Order Granting in part and Denying in part Ps' Motion for SJ | 1.70<br>350.00/hr | 595.00 |
| | Email exchange with Garofolo forwarding decision on Ds' Motion for Summary Judgment and reply from Garofolo (0.5); | 0.50<br>350.00/hr | 175.00 |
| 1/27/2009 | Review of Order Scheduling Status Conference (0.3); Email to Garofolo regarding revisions to Rule 30(b)(6) notice of deposition (0.5); | 0.80<br>350.00/hr | 280.00 |
| 1/28/2009 | Email to Garofolo forwarding ███████████ (0.2); Telephone conference with Garofolo regarding strategy and scheduling order (0.7); | 0.90<br>350.00/hr | 315.00 |
| 1/29/2009 | Review of Ds' Motion Regarding Scheduling Order; | 1.20<br>350.00/hr | 420.00 |
| | Telephone conversation with Hauptfuehrer regarding scheduling (0.2); Attendance at telephone Status Conference (0.6); Email exchange with Hauptfuehrer regarding expedited trial date (0.3); | 1.10<br>350.00/hr | 385.00 |
| | Email to Garofolo summarizing Status Conference regarding scheduling and S&J motion for quick trial; | 0.40<br>350.00/hr | 140.00 |
| 2/2/2009 | Review of Order Denying Ds' Motion for Entry for Scheduling Order; | 0.30<br>350.00/hr | 105.00 |
| | Preparation of Rule 30(b)(6) Notice of Deposition (4.6); Email exchange with Garofolo regarding case law, pro hoc filings, Rule 30(b)(6) and scheduling (0.5); Review of case law (0.9); | 6.00<br>350.00/hr | 2,100.00 |
| | Telephone conference with Garofolo regarding changes to Rule 30(b)(6) notice (0.5); Review of prior pro hoc filings for Garofolo (1.4) | 1.90<br>350.00/hr | 665.00 |
| 2/4/2009 | Email exchange with Garofolo regarding ██████████████<br>████ ; | 0.20<br>350.00/hr | 70.00 |
| 2/6/2009 | Review of revised 30(b)(6) Notice of Deposition from Garofolo (0.5);  Email exchange with Garofolo regarding Rule 30(b)(6) notice, conclusions regarding fee disclosures, Ps' Motion to Compel, and potential class action (0.5); Review of case law regarding pretermination attorney/client privilege documents (0.6); Telephone conference with Garofolo regarding 30(b)(6) notice (0.2); | 1.80<br>350.00/hr | 630.00 |
| 2/18/2009 | Review of Ds' Answer and Amended Counterclaim to 1st Amended Complaint; | 0.90<br>350.00/hr | 315.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 2/25/2009 | Telephone conference with Garofolo regarding Ps' Answer to Ds' Amended Counterclaim (0.5); Review of Ds' 5th discovery requests (0.5) | 1.00 350.00/hr | 350.00 |
| 3/2/2009 | Preparation of Second CDRs to HNB; | 7.70 350.00/hr | 2,695.00 |
| | Email series with Garofolo regarding Ps' Answer to Amended Complaint and Rule 30(b)(6) notice (0.7); Telephone conference with Garofolo regarding expert witness selection and losses (0.3); | 1.00 350.00/hr | 350.00 |
| 3/3/2009 | Research on Counterclaim issues (3.5); Preparation of Answer to Ds' Amended Counterclaim (4.1); Email exchange with Garofolo regarding alleged conflict (0.3); | 7.90 350.00/hr | 2,765.00 |
| 3/11/2009 | Email exchange with Garofolo regarding S&J allegations of conflict and scheduling issues (0.2); Research of cases regarding unwaivable conflict (4.3); | 4.50 350.00/hr | 1,575.00 |
| 3/17/2009 | Telephone conference with Garofolo regarding conflict allegations and waivers (0.2); Email to Hauptfuehrer regarding alleged conflict (0.3); Review of email from Garofolo regarding alleged conflict (0.4); | 0.90 350.00/hr | 315.00 |
| 3/24/2009 | Preparation of Ps' Responses to Ds' Fifth Request for Discovery (4.1); Review of copy of tape recording (0.8); | 4.90 350.00/hr | 1,715.00 |
| | Review of email from Hauptfuehrer regarding Ps' Discovery Responses and reply; | 0.30 350.00/hr | 105.00 |
| 3/28/2009 | Telephone conversation with Terango regarding witness location; | 0.30 350.00/hr | 105.00 |
| 3/29/2009 | Meeting with Richard Straight ███████████████████; | 3.50 350.00/hr | 1,225.00 |
| 4/6/2009 | Review of HNB's Responses to Ps' Second CDRs and begin preparation of deficiency letter; | 3.30 350.00/hr | 1,155.00 |
| | Review of Pro Hac Vice filings (2.3); Telephone conversations with Clerk of Court regarding pro hac fee (0.2); Preparation of Order (0.4); | 2.90 350.00/hr | 1,015.00 |
| 4/8/2009 | Telephone conference with Garofolo regarding strategy, time line for engagement of experts and expert qualifications (0.7); Email to Garofolo regarding pro hac fee and HNB discovery responses to Ps' 2nd CDRs (0.3); | 1.00 350.00/hr | 350.00 |
| 4/9/2009 | Review and reply to email from Hauptfuehrer claiming response to Ds' Request for Production No. 7 is unacceptable; | 0.50 350.00/hr | 175.00 |
| 4/11/2009 | ████████████████ to client ███████ (2.7); Email to Garofolo with draft letter (0.2); | 2.90 350.00/hr | 1,015.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 4/12/2009 | Email exchange with Garofolo regarding clients ████████; | 0.50<br>350.00/hr | 175.00 |
| 4/13/2009 | Telephone conference with Garofolo regarding client meetings and discovery needed (0.4); Revision to clients' letter (0.8); | 1.20<br>350.00/hr | 420.00 |
| 4/14/2009 | Email from Garofolo regarding revisions to clients' letters (0.5); Revisions to clients' letter (0.6) | 1.10<br>350.00/hr | 385.00 |
| 4/21/2009 | Telephone conference with Garofolo regarding discovery responses and potential class action; | 0.30<br>350.00/hr | 105.00 |
| 4/24/2009 | Review of HNB's responses to Ps' 2nd CDRs and preparation of discovery deficiency letter to HNB and forward to Garofolo; | 13.40<br>350.00/hr | 4,690.00 |
| 5/6/2009 | Telephone conference with Garofolo regarding deficiency letter to HNB regarding responses to 2nd CDRs; | 0.30<br>350.00/hr | 105.00 |
| 5/7/2009 | Telephone conference with Garofolo regarding potential experts; | 0.20<br>350.00/hr | 70.00 |
| 5/8/2009 | Telephone conference with Garofolo regarding expert retention, amendment, and review (1.4); Review of Mark Johnson and ████████ qualifications (0.7); Telephone conversation with Mark Johnson regarding potential engagement (1.2);  Meeting with clients to review and execute fee addendums (2.1); | 5.40<br>350.00/hr | 1,890.00 |
| 5/14/2009 | Review of HNB objections to Ps' discovery deficiency letter (0.8); Telephone conference with Garofolo regarding upcoming meet and confer for HNB's deficient responses to Ps' 2nd CDRs (0.2); Meet and confer with Callcott and Hauptfuehrer regarding same (1.4);  Telephone conference with Garofolo regarding motion to compel (0.2); Telephone conversation with Garofolo regarding experts and losses from liquidation (0.5); Preparation of confirmation of meet and confer (1.9); | 5.00<br>350.00/hr | 1,750.00 |
| 5/15/2009 | Telephone conference with Garofolo regarding response to Hauptfuehrer letter alleging conflict and expert issues; | 0.30<br>350.00/hr | 105.00 |
| 5/18/2009 | Telephone conference with Garofolo regarding potential expert Johnson and documents to be produced; | 0.80<br>350.00/hr | 280.00 |
| 5/19/2009 | Review of Johnson engagement letter (0.9); Telephone conference with Garofolo, regarding expert engagement letter and documents (0.6); Email to Garofolo regarding experts and other litigation issues (0.2); Review of discovery to select documents for expert (5.1); | 6.80<br>350.00/hr | 2,380.00 |
| 5/20/2009 | Selection of documents for Johnson (2.5); Emails to Johnson conveying and indexing documents (2.7); Telephone conversation with expert Johnson (0.4); Telephone conversation of Garofolo regarding documents and S&J withdraw request (0.6); | 6.20<br>350.00/hr | 2,170.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 5/21/2009 | Telephone conversation of Garofolo regarding conflict strategy; | 0.30 350.00/hr | 105.00 |
| 5/22/2009 | Telephone conversation of Garofolo regarding extensions for motion to compel; | 0.40 350.00/hr | 140.00 |
| 5/26/2009 | Telephone conference with Garofolo regarding loss calculation issues (0.6); Telephone conversation of Garofolo regarding expert issues (0.8); Preparation of letter to Johnson regarding fee (0.3); Rereview of Johnson engagement letter (0.7); | 2.40 350.00/hr | 840.00 |
| 5/27/2009 | Telephone conference with Garofolo regarding documents and engagement of Johnson (0.9); Calls to Johnson and Clawson regarding valuation (0.8); | 1.70 350.00/hr | 595.00 |
| 5/31/2009 | Preparation of stipulation to extend Motion to Compel deadline (0.3); Email to Hauptfuehrer conveying stipulation (0.3); | 0.60 350.00/hr | 210.00 |
| 6/1/2009 | Review of email from Hauptfuehrer regarding stipulation (0.2); Correction of stipulation and email to Hauptfuehrer (0.3); Email to Johnson conveying HNB Fourth Supplement (0.2); | 0.70 350.00/hr | 245.00 |
| 6/2/2009 | Telephone conference with Garofolo regarding Motion to Continue; | 0.30 350.00/hr | 105.00 |
| 6/4/2009 | Review and revision of Motion for Continuance (2.4) ; Email exchange with Garofolo regarding Motion for Continuance and experts (0.4); Telephone conference with Hauptfuehrer (0.3); | 3.10 350.00/hr | 1,085.00 |
| 6/5/2009 | Email exchange with Hauptfuehrer regarding Motion to Continue (0.8); Emails to Garofolo regarding Motion to Continue (0.3); Emails to Clawson conveying contact information (0.2); Email from Johnson regarding prior deposition completed (0.2);  Telephone conference with Garofolo regarding extension of time to file response to Motion to Disqualify (1.0);  Email from Garofolo regarding calculation of time to respond (0.3); Review and revision of Motion for Continuance with Garofolo (1.3); | 4.10 350.00/hr | 1,435.00 |
| 6/8/2009 | Review of pending motions and due dates (1.3); Email exchange with Hauptfuehrer regarding extension for Ds' response to Motion to Amend and Ps' to Ds' Motion to Disqualify, and stay (0.9); Telephone conference with Garofolo regarding various matters including stipulation for extension of time, discovery issue, and responses to various motions (0.4); Telephone conference with Garofolo and Carlson regarding engagement (0.7); Telephone conference with Hauptfuehrer regarding stipulations (0.3); Telephone conference with Garofolo regarding Clawson opinions (0.5); | 4.10 350.00/hr | 1,435.00 |
| 6/9/2009 | Telephone conference with Garofolo and Johnson regarding engagement (1.5);  Email to Hauptfuehrer regarding revisions (0.1); Email to Johnson conveying Hughes' depo (0.2); Review of Hauptfuehrer email and proposed | 4.10 350.00/hr | 1,435.00 |

| | | Hrs/Rate | Amount |
|---|---|---|---|
| | Stipulations, and revision, regarding stay and responses to Motions (2.1); Email to Garofolo conveying revised stipulations (0.2); | | |
| 6/10/2009 | Telephone conference with Garofolo regarding stay, responses to Motions and revisions to stipulations (0.6); Email from Garofolo regarding motion for stay (0.3); Review of discovery for selection of documents to Clawson (0.8); Email to Clawson conveying discovery documents (0.4); | 2.10 350.00/hr | 735.00 |
| 6/11/2009 | Telephone conference with Garofolo and Johnson regarding expert opinions; | 1.50 350.00/hr | 525.00 |
| 6/16/2009 | Review of Johnson prior expert reports; | 3.30 350.00/hr | 1,155.00 |
| 6/17/2009 | Telephone conference with Garofolo regarding timing of expert reports (0.2); Email to Johnson conveying Hughes' depo transcript (0.2); Telephone conference with Kim Bree and Hauptfuehrer regarding stay (0.3); Email to Garofolo regarding conversation with Judge's staff (0.3); Emails to Clawson and Garofolo regarding scheduling of conference (0.3); | 1.30 350.00/hr | 455.00 |
| 6/18/2009 | Telephone conference with Garofolo regarding telephonic hearing (0.2); Telephone conference with Garofolo and Clawson regarding expert opinions (0.5); Emails with Garofolo and Clawson regarding scheduling of telephone conference (0.2); Email to Hauptfuehrer regarding stipulation for expert reports (0.4); | 1.30 350.00/hr | 455.00 |
| 6/19/2009 | Email with Garofolo and Clawson regarding scheduling of telephone conference (0.1); Email with Garofolo regarding issues for hearing (0.3); Email to Clawson conveying post-liquidation investment forms (0.2); Email from Garofolo conveying cases on loss calculations (0.2); Review of cases regarding loss calculations under ERISA (4.1); | 4.90 350.00/hr | 1,715.00 |
| 6/22/2009 | Telephone conference with Garofolo regarding Ds' response to motion for discovery and telephonic hearing(0.2); Telephone conference with Garofolo and Clawson regarding allegations in complaint (0.6); Email exchange with Garfolo and Clawson regarding scheduling of telephone conference (0.3); | 1.10 350.00/hr | 385.00 |
| 6/23/2009 | Preparation for hearing on other pending Motions (2.3); Appearance for telephonic hearing regarding various Motions to Continue (0.8); Email to Johnson regarding report due date and conversion manual (0.3); | 3.40 350.00/hr | 1,190.00 |
| 6/24/2009 | Telephone conference with Garofolo regarding depo scheduling and discovery from experts (0.2); Review of discovery to select documents for Johnson (2.4); Emails to and telephone conference with Johnson conveying discovery documents (0.5); Telephone conference and emails to Johnson regarding conveyance of discovery documents in segments (1.5);  Email exchange with Hauptfuehrer regarding continued depositions of Davis, Straight, Hughes and Michigan personnel (0.5); Email to Callcott and Hauptfuehrer correcting Garofolo email address (0.2); | 5.30 350.00/hr | 1,855.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 6/25/2009 | Emails reconveying documents to Johnson (0.9); Email to Garofolo regarding scheduling of conference with Johnson (0.2); Review of correspondence with Clawson (0.2); Telephone conference with Garofolo and Johnson regarding opinions and additional documents (1.8); Email to Garofolo regarding engagement with Clawson (0.2); Email to Callcott and Hauptfuehrer regarding Hughes' and Marks' continued depositions (0.3); | 3.60 350.00/hr | 1,260.00 |
| 7/2/2009 | Review of email from Garofolo regarding HNB's 2nd Supplement Responses, Hughes' personnel file and documents to expert (0.2);  Review of Garofolo email conveying Clawson's engagement agreement (0.2); Review of discovery to locate and email 2000 investment policy, HNB investment reviews, and Plan reports to Clawson (1.8);  Email of Hughes' personnel file to Johnson (0.4); Email to Callcott regarding grounds for Hughes' continued deposition, piecemeal discovery responses, and offer of compromise (0.6); | 3.20 350.00/hr | 1,120.00 |
| 7/3/2009 | Preparation of Plaintiffs' Motion to Compel, including research, review of second supplemental responses to 2nd CDRs (8.2);  Telephone conference with Garofolo and Johnson regarding additional documents and effect on opinions (0.9); Email to Johnson conveying additional documents (0.2); Preparation of list for documents delivered to Johnson and email of list to Johnson (1.7); Email to Garofolo regarding addition to Motion to Compel for excessive fees (0.3); | 11.30 350.00/hr | 3,955.00 |
| 7/5/2009 | Preparation of Plaintiffs' Motion to Compel including research, review of second supplemental responses to Ps' 2nd CDRs (12.9); Conference call with Garofolo regarding Ps' response to Ds' Motion for Disqualification (0.2);  Email to Clawson regarding documents, report, engagement letter, and conference (0.3); Email to Garofolo advising of document of Hughes' ordering liquidation and Jim and Karen Marks not originally counter defendants (0.4);  Email to Garofolo requesting form list (0.2); Review of Garofolo email regarding documents redacted by HNB and brief review of documents (0.8);  Review of additional Garofolo email regarding documents redacted by HNB and brief review of documents (0.6);  Emails to Garofolo regarding document list for expert reports (0.2); Email to Johnson regarding HNB discovery response regarding proposal to Marks and associated documents (0.5); | 16.10 350.00/hr | 5,635.00 |
| 7/6/2009 | Preparation of Plaintiffs' Motion to Compel, research, review of second supplemental responses to 2nd CDRs; | 11.40 350.00/hr | 3,990.00 |
| | Telephone conference with Garofolo regarding supplemental documents to experts, anticipated opinions, and issues surrounding drafts (2.1);Telephone conference with Johnson, Garofolo attending, regarding opinions, additional documents and report (2.1); Telephone conference with Garofolo and Clawson regarding report status (0.4); Email to Johnson conveying additional documents (0.4);  Emails to Clawson regarding scheduling and conveying additional documents (0.2); Revision of document list and convey to Johnson (0.4); Revision of document list and convey to Clawson (0.6); Email exchange with Garofolo regarding documents redacted by Garofolo (0.3); | 6.50 350.00/hr | 2,275.00 |

**Exhibit D to Declaration of M. Romano**

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 7/7/2009 | Preparation of Plaintiffs' Motion to Compel, research, review of second supplemental responses to 2nd CDRs (9.6); Conference call with Garofolo regarding Johnson report (0.2); Receipt and review of Johnson report and final report with attachments (1.6); Conference call with Johnson and Garofolo regarding report (1.1); Conference call with Clawson and Garofolo regarding opinions and report layout (1.7); Receipt and review of Clawson report and final report (1.8); Telephone conference with Garofolo regarding Clawson report (0.7); Telephone conference with Garofolo regarding CF/ECF technical problems (1.0) | 17.70 350.00/hr | 6,195.00 |
| 7/8/2009 | Review Ps' response to Ds' Motion to Disqualify (2.1); Email to Garofolo regarding additional potential HNB deponents (0.2);  Email exchange with Hauptfuehrer regarding receipt of Ps' Motion to Compel exhibits and their objecting to timeliness of filing (0.4); Email exchange with Garofolo regarding HNB's plan to object to Ps' Motion to Compel based on filing time (0.3); | 3.00 350.00/hr | 1,050.00 |
| 7/12/2009 | Research on Ds' case citations; | 1.80 350.00/hr | 630.00 |
| 7/13/2009 | Review of discovery depositions regarding proof of fee negotiation, access to internet, and loan issues (2.9); Preparation of memorandum regarding proof issues (1.2); Email to Garofolo conveying proof issues and deposition excerpts (1.2); | 5.30 350.00/hr | 1,855.00 |
| 7/15/2009 | Telephone call to Court Reporter regarding release of transcripts (0.2); Review of HNB's correction to 2nd Supp to Ps' 2nd CDRs (0.3); Review of Ds' Reply to Ps' Response to Motion to Disqualify (0.9); Email to Garofolo regarding S&J order of hearing transcript (0.2);  Email exchange with Callcott regarding scheduling depositions, Hughes' continued deposition, and Rule 30(b)(6) deposition issues (0.6); Telephone conference with Garofolo regarding Ds' Reply to Response to Motion to Disqualify (0.2) | 2.40 350.00/hr | 840.00 |
| 7/16/2009 | Email exchange with Garofolo regarding scheduling; | 0.30 350.00/hr | 105.00 |
| 7/17/2009 | Email exchange with Garofolo regarding scheduling (0.3); Telephone conference with Garofolo regarding engagement of rebuttal experts and deposition scheduling (0.7); Review emails from Callcott regarding deposition scheduling (0.2); | 1.20 350.00/hr | 420.00 |
| 7/18/2009 | Email to Garofolo regarding Hughes' deposition, Ds' anticipated protective order regarding same and other depositions; | 0.40 350.00/hr | 140.00 |
| 7/20/2009 | Review of email from Garofolo regarding experts, motions, deposition scheduling, and settlement (0.4); Telephone conference with Garofolo regarding settlement, additional experts, discovery issues, deposition scheduling, Davis and Straight depos (0.6); Email to Callcott regarding deposition issues (0.4);  Email from Garofolo regarding scheduling (0.2); | 1.60 350.00/hr | 560.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 7/22/2009 | Email exchange with Callcott regarding depositions of Davis and Straight and Plaintiffs' requested depositions (0.4); Telephone conference with Garofolo regarding deposition strategy and order (0.6); Review of expert disclosure requirements under Rules and Scheduling Order and cases (2.3); Email exchange with Callcott regarding depositions of Straight and Davis, Hughes' protective order, and Rule 30(b)(6) depositions (1.4); Telephone conference with Garofolo regarding settlement demand (0.3); | 5.00 350.00/hr | 1,750.00 |
| 7/23/2009 | Review of email from Callcott regarding depositions (0.2); Response to Callcott email (0.4); Further email exchange with Callcott regarding Hughes and Petter depositions and addresses of potential witnesses (0.6); Review of responses to Judge Stamp treatment of experts with follow-up (0.9); Preparation of notice of continued deposition for Hughes (0.2); | 2.30 350.00/hr | 805.00 |
| 7/24/2009 | Review of Ds' Motion for extension of time to make expert disclosures (0.9); Telephone conference with Garofolo regarding pending motions and response (0.2);  Preparation of response to D's Motion for extension and conveyance to Garofolo (2.2); Review of Order regarding Ds' motion to exceed page limit (0.2) | 3.50 350.00/hr | 1,225.00 |
| 7/28/2009 | Telephone conference with Garofolo regarding settlement demand (0.7); Email from Garofolo regarding Ds' expert search (0.1); Email exchange with Callcott regarding scheduling of Petter deposition and conveyance of Conversion Manual at his request (0.3); Preparation of Ps' response to Ds' Motion for extension of time to file rebuttal expert disclosures and research (3.9); Email of partial response to Ds' Motion of extension of time to file rebuttal expert disclosures (0.1); | 5.10 350.00/hr | 1,785.00 |
| 7/29/2009 | Email from Garofolo regarding Ps' Response to Ds' Request for extension of time to file expert disclosures and review of corrected response (1.1); Review of Order regarding response to extension of time to file expert disclosures (0.2); Preparation of notice of deposition for Petter (0.3); | 1.60 350.00/hr | 560.00 |
| 7/30/2009 | Telephone conference with Garofolo regarding settlement offer, indemnification issues, and revisions to settlement offer (0.7);  Email exchange with Garofolo regarding prejudgment interest (0.3); Email exchange with Callcott regarding change of deposition dates for Davis and Straight (0.3); Email exchange from Garofolo regarding settlement letter and review of settlement demand letter (1.1) | 2.40 350.00/hr | 840.00 |
| 8/2/2009 | Initial review of HNB's response to Motion to Compel (1.9); Research of Ds' cited legal authority (0.8);  Begin preparation of reply for Motion to Compel (1.8); Review of FOIA request to DOL from Garofolo for additions (0.4); | 4.90 350.00/hr | 1,715.00 |
| 8/3/2009 | Review of Ds' withdraw of Motion for extension of time to file expert disclosures (0.3); Preparation of draft Reply to Motion to Compel, review of discovery responses, review of case law (11.4); Email to Callcott regarding deposition dates (0.2); Email to Garofolo providing additional areas of inquiry for Rule 30(b)(6) deposition (1.1); Telephone conference with Garofolo regarding Rule 30(b)(6) areas of inquiry and Reply to Motion to Compel (0.9); | 13.90 350.00/hr | 4,865.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 8/4/2009 | Review of Ds' expert disclosures (1.4); Continued preparation of Reply to Motion to Compel (10.2); Telephone conference with Garofolo regarding Ds' expert disclosures and Reply to Motion to Compel (0.5); Email from Callcott regarding deposition dates with replies (0.4); Review of PTE 77-4 from Garofolo (0.7); Email from Garofolo regarding Ds' expert disclosure (0.2); Email exchange with Garofolo regarding adequacy of Petter expert disclosure (0.4); | 13.80 350.00/hr | 4,830.00 |
| 8/5/2009 | Final preparation of Reply to Motion to Compel (13.5); Preparation of Motion to exceed page limitation for Reply to Motion to Compel (1.1);  Email from Garofolo regarding injunctive relief (0.3); Review of case law regarding injunctive relief (0.9); Telephone conference with Garofolo regarding revisions to Reply (1.9); Email to Callcott regarding settlement (0.3); | 18.00 350.00/hr | 6,300.00 |
| 8/6/2009 | Email exchange with Garofolo regarding service of Rule 30(b)(6) notice; | 0.30 350.00/hr | 105.00 |
| 8/7/2009 | Email from Garofolo conveying Rule 30(b)(6) notice and reply (0.4); Telephone conference with Garofolo regarding review of Rule 30(b)(6) notice (0.5); Telephone conference with Garofolo regarding strategy, motion to strike D's experts and motions on Ds' counterclaims (0.5); Review and revision of Rule 30(b)(6) notice (3.3); Email to Callcott conveying Rule 30(b)(6) notice (0.5); | 5.20 350.00/hr | 1,820.00 |
| 8/10/2009 | Telephone conference with James Marks regarding status (0.6);  Telephone conference with Richard Straight ███████████ (0.3); Telephone conference with Angela Davis ████████████████ (0.3); Review of Callcott letter regarding Rule 30(b)(6) notice (0.5); Telephone conference with Garofolo regarding Callcott objections to Rule 30(b)(6) deposition (0.2); Preparation of response to Callcott letter regarding Rule 30b)(6) notice (1.2); | 3.10 350.00/hr | 1,085.00 |
| 8/12/2009 | Telephone conference regarding Rule 30(b)(6) depo with Callcott, Hauptfuehrer, Solomon, and Garofolo (2.1); Preparation of letter confirming conference (1.9); Email to Garofolo of meet and confer letter (0.2); | 4.20 350.00/hr | 1,470.00 |
| 8/14/2009 | Review of Ds' Motion for PO re Hughes (1.0); Review of case law cited in Ds' Motion for PO regarding Hughes deposition (2.4); Telephone conference with Garofolo regarding revisions to meet and confer letter to Ds (0.5); Preparation of Ps' Response to Ds' Motion for PO regarding Hughes' deposition (5.1); | 9.00 350.00/hr | 3,150.00 |
| 8/15/2009 | Preparation of Ps' Response to Ds' Mot. for PO regarding Hughes' depositions (5.8); Review of Hughes' deposition with updating of memorandum (2.1); | 7.90 350.00/hr | 2,765.00 |
| 8/16/2009 | Complete review of Hughes' deposition with updating of memorandum (1.5); Review of Garofolo email regarding designation of Rule 30(b)(6) designee (0.4);Telephone conference with Garofolo regarding Rule 30(b)(6) and expert subpoenas (0.7); Continued preparation of Ps' Response to Ds' Mot. for PO (9.1) | 11.70 350.00/hr | 4,095.00 |

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 8/17/2009 | Preparation of Response to Ds' Mot for PO re Hughes and filing (16.1); Email to Garofolo regarding subpoena language (0.2); Telephone conference with Garofolo regarding documents sought from experts (0.2); | 16.50 350.00/hr | 5,775.00 |
| 8/18/2009 | Preparation of declaration regarding filing under CM/ECF system (1.3); Telephone conference with Garofolo regarding subpoenas to experts (0.2); Email from Garofolo regarding subpoenas and service (0.3); Review of final attachments for subpoenas duces tecum (0.7); Telephone conference with James Terango regarding service of subpoenas and locating of Lightfoot and Hogan  (0.4); Review Callcott letter regarding objections to Rule 30(b)(6) and Ps' confirmation of meet and confer (0.5); | 3.40 350.00/hr | 1,190.00 |
| 8/19/2009 | Emails from Garofolo regarding subpoena revisions (0.3); Telephone conference with Garofolo regarding subpoenas to Ds' experts and anticipated subpoenas to Ps' experts (1.0); Email to Dr. Johnson conveying Ds' expert disclosures (0.2);  Telephone conference with Callcott, Garofolo attending, regarding agreements as to service of subpoenas on respective experts and document production (0.4); Preparation of letter to Callcott confirming agreements (1.1); | 3.00 350.00/hr | 1,050.00 |
| 8/20/2009 | Review of email from Callcott regarding depositions, Rule 30(b)(6) objections, agreements regarding subpoena  of expert documents, and scheduling (0.5); Telephone conference with Garofolo regarding scheduling of depositions and expert subpoena (0.8); Review and revision of Garofolo email to Callcott (0.3); | 1.60 350.00/hr | 560.00 |
| 8/21/2009 | Preparation of Subpoenas Duces Tecum for Petter and Rodgers (1.2); Preparation of Notice of Issuance of Subpoenas (1.1); Preparation of letter to Callcott regarding deposition issues (2.2); Email to Garofolo conveying draft letter to Callcott (0.2); Telephone conference with Garofolo regarding subpoenas, service, and revisions to letter to Callcott (0.2);  Email from Garofolo regarding document requests to experts (0.4); Review of cases regarding documents requested from experts (2.4);  Email conveying subpoenas to Callcott and Hauptfuehrer (0.3); | 8.00 350.00/hr | 2,800.00 |
| 8/22/2009 | Email to Garofolo regarding Callcott request for Bates Numbers (0.2);  Email to Garofolo regarding suggested revised deposition schedule (0.4); | 0.60 350.00/hr | 210.00 |
| 8/24/2009 | Preparation of Re-Notices for Petter and Hughes depositions (0.4); Revision of Rule 30(b)(6) Notice (0.7); Review of letter from Callcott regarding depositions and proposed joint motion (1.1); Email to Johnson conveying Ds' subpoena (0.2);Telephone conference with Garofolo and Johnson regarding Ds' subpoena (0.3); Research on specifics of expert disclosures (2.2); Emails to Callcott regarding agreements to Rule 30(b)(6) deposition, inadequacy of Rodgers' disclosures and documents reviewed, and Callcott's prior request for Bates Numbers (1.2); | 6.10 350.00/hr | 2,135.00 |
| 8/25/2009 | Email from Callcott regarding meet and confer and deposition schedule (0.3); Email from Callcott regarding request for documents for Petter (0.2); Email to Callcott regarding expert deposition schedule (0.3); Telephone conference with Garofolo regarding strategy for conference with Callcott and document | 4.70 350.00/hr | 1,645.00 |

**Exhibit D to Declaration of M. Romano**

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
|  | production by experts (0.9); Telephone conference with Johnson regarding document requests (0.3); Email to Callcott regarding his request for Bates Numbers of documents for Petter and identifying documents (0.6); Meet and confer conference with Callcott and Soloman, Garofolo attending, regarding deposition schedule and production by experts (1.0); Telephone conversation with Johnson regarding deposition dates (0.3); Emails with Clawson regarding conference and deposition dates (0.3);  Review of subpoenas for Johnson and Clawson (0.5); |  |  |
| 8/26/2009 | Preparation of letter to Callcott regarding deposition dates, stipulation on continuance, deficiencies in Rodgers' expert disclosures, agreements regarding expert production, expert fees, Petter deposition and documents, and other issues (2.2); Email to Garofolo conveying draft of Callcott letter (0.2); Email exchange with Callcott regarding Petter deposition dates, dates for Ps' experts and Hughes' deposition dates (0.4); | 2.80 350.00/hr | 980.00 |
| 8/27/2009 | Email from Garofolo conveying changes to Callcott meet and confer letter and expert document requests (0.2); Revision of Callcott meet and confer letter (0.4); | 0.60 350.00/hr | 210.00 |
| 8/28/2009 | Telephone conferences  with Garofolo regarding depositions (0.4); Telephone conferences with Johnson and Garofolo regarding document production (0.4); Telephone conversation with Clawson and Garofolo regarding document production (0.3); Email exchange with Quest regarding DOL investigations (0.3);  Review of DOL investigation materials (2.5); Emails to Quest and Garofolo regarding DOL investigations of HNB and FOIA request (0.4); Emails from Callcott regarding meet and confer and conveying joint stipulation (0.2); Review of joint stipulation (0.4); Meet and confer with Calcott regarding experts production of confidential and protected documents and expert expenses (0.3); Telephone conversation with Garofolo regarding travel arrangements (0.1);  Email to Callcott confirming meet and confer regarding permission to file stipulation, agreements as to expert production, expert fees for production, and Davis and Straight deposition dates (0.5); | 5.80 350.00/hr | 2,030.00 |
| 8/29/2009 | Review of discovery in preparation for Petter deposition (11.2); Email from Callcott confirming meet and confer (0.1); | 11.30 350.00/hr | 3,955.00 |
| 8/30/2009 | Preparation with Garofolo for Petter deposition; | 15.20 350.00/hr | 5,320.00 |
| 8/31/2009 | Preparation for and attendance at Petter deposition; | 9.30 350.00/hr | 3,255.00 |
| 9/1/2009 | Review of Amended Scheduling Order; | 0.30 350.00/hr | 105.00 |
| 9/3/2009 | Telephone conference with Garofolo regarding depositions and briefs due (0.2); Email exchange with Callcott regarding deposition arrangements (0.4); Staff conference for deposition planning (1.1); | 1.70 350.00/hr | 595.00 |

**Exhibit D to Declaration of M. Romano**

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 9/3/2009 | Email exchange with Garofolo regarding Petter deposition (0.3); Email from Johnson regarding deposition travel (0.1) | 0.40<br>350.00/hr | 140.00 |
| 9/4/2009 | Review of Ds' Motion for Summary Judgment regarding injunctive relief (2.2); Email exchange with Garofolo regarding work schedule (0.3); Email to Clawson regarding document production and conference (0.2); | 2.70<br>350.00/hr | 945.00 |
| 9/7/2009 | Research of case law regarding HNB's Motion for PO Re: Rule 30(b)(6) (4.5); Email exchange regarding Petter documents, deposition arrangements, Rodgers' disclosure deficiencies, and Davis and Straight depositions (0.6); Email exchange with Garofolo regarding support for compelling Petter to respond as rule 30(b)(6) designee (0.5); Telephone conference with Garofolo regarding Motion to Strike expert (0.2); Review of case law regarding compelling Petter to respond (3.2); Preparation of response to Ds' Motion for PO regarding Rule 30(b)(6) and motion to compel (3.1); | 12.10<br>350.00/hr | 4,235.00 |
| 9/8/2009 | Preparation of Response to HNB's PO regarding Rule 30(b)(6) designee (11.8); Telephone conference with Garofolo regarding precedents on Ds' Motion for PO and motion to compel (0.3); Telephone conference with Garofolo regarding motion for judgment on the pleadings (0.4); Email to Garofolo regarding assistance needed on certain areas of inquiry objected to in Ds' Motion for PO (0.5);Telephone conference with Garofolo regarding areas of inquiry requiring his input (0.2); Revision of Rule 30(b)(6) Notice pursuant to meet and confer (1.7); | 14.90<br>350.00/hr | 5,215.00 |
| 9/9/2009 | Preparation of Response to HNB's PO Rule 30(b)(6) designee including review and revision of Garofolo additions (9.6); Email exchange with Garofolo regarding attendance at hearing, filing of documents in response to subpoenas and Callcott letter (0.5); Telephone conference with Court staff regarding Garofolo's telephonic attendance at hearing on discovery issues (0.3); Telephone conference with Garofolo regarding hearing on discovery issues (0.1);  Review of Clawson documents produced pursuant to subpoena (2.3); Review of letter from Callcott to Court urging ruling (0.3); Telephone conference with Garofolo regarding Callcott letter to Court (0.4); | 13.50<br>350.00/hr | 4,725.00 |
| 9/10/2009 | Preparation for hearing on discovery issues (14.1); Telephone conferences with Garofolo regarding Motions to be heard and various motions to be filed (0.6); Telephone conference with Callcott regarding improper communication with the Court, deposition arrangements, and deficiencies in Rodgers' report with confirming email (0.8); Email exchange with Garofolo conveying deposition transcripts (0.2); Telephone conference with Garofolo regarding accessing internet database download for Rodgers' document production (0.5); Downloading of Rodgers' documents to Garofolo database (0.5); | 16.70<br>350.00/hr | 5,845.00 |
| 9/11/2009 | Preparation for hearing on HNB's PO Re: Rule 30(b)(6) and motions to compel (2.5); Attendance at hearing regarding discovery (2.0); Telephone conference with Garofolo regarding further trial and deposition preparation as result of hearing (0.4);  Email exchange with Callcott regarding deposition arrangements, delaying Petter deposition, and Rodgers' document list (0.4); | 6.20<br>350.00/hr | 2,170.00 |

| | | Hrs/Rate | Amount |
|---|---|---|---|
| | Review of Rodgers' document list (0.5); Letter to Garofolo conveying updated case file (0.3); Review of Minute Order regarding discovery hearing (0.1); | | |
| 9/13/2009 | Preparation of response to Motion to Quash SDT-Petter (8.7); Telephone consultation with Garofolo regarding response, scheduling of depositions, MILs and strategy (0.8); Email to Garofolo regarding Davis and Straight depositions and case law on striking Ds' experts (0.3); Telephone consultation with Garofolo regarding DOL guidance on mutual fund fees and investment (0.3); | 10.10 350.00/hr | 3,535.00 |
| 9/14/2009 | Research on Motion to Quash SDT-Petter and preparation of response (9.7); Email exchange with Garofolo regarding supplementing Johnson report and Hughes' depositions (0.4);  Email to Callcott regarding Petter deposition and stipulation regarding cutoff for Motions to Compel (0.4); | 10.50 350.00/hr | 3,675.00 |
| 9/15/2009 | Review of case law regarding Petter deposition (3.4); Preparation for Rodgers' deposition, review of Rodgers' documents, reports and transcripts (6.4);  Email exchange with Callcott regarding delay of Petter deposition and rescheduling of Hughes' deposition (0.2); | 10.00 350.00/hr | 3,500.00 |
| 9/16/2009 | Preparation for Rodgers' deposition with Garofolo (4.9);  Lunch meeting with Garofolo regarding Petter deposition (1.0); Email exchange with Callcott regarding deposition scheduling (0.6); Review of response to and consultation with Garofolo regarding changes of Ds' Motion to Quash (3.2);Travel for deposition (2.0); Continued preparation of Rodgers' deposition (0.8); | 12.50 350.00/hr | 4,375.00 |
| 9/17/2009 | Preparation for and attendance at Rodgers' deposition with Garofolo (9.5); Dinner meeting with Garofolo regarding deposition and strategy (2.5)  Return travel (2.0); | 14.00 350.00/hr | 4,900.00 |
| 9/18/2009 | Email exchange with Callcott regarding deposition scheduling for Davis, Straight and Petter and missing Rodgers' reports and recent depositions (0.5); Preparation of letter to Callcott regarding documents and information to be obtained by Petter before next deposition (2.8); Telephone conference with Garofolo regarding scheduling issues and preparation for depositions (0.3); Review of deposition notices for Straight, Davis, Clawson, and Johnson (0.5); | 4.10 350.00/hr | 1,435.00 |
| 9/20/2009 | Email exchange with Garofolo regarding preparation of Davis and Straight and issues likely to be raised by Ds; | 0.50 350.00/hr | 175.00 |
| 9/21/2009 | Preparation of letters to Davis and Straight regarding ███████ (0.5); Email exchange with Callcott regarding deposition issues for Petter, Straight, and Davis, and scheduling of Rule 30(b)(6) (0.5); Email exchange with Garofolo regarding summary judgment response (0.2); Telephone conference with Garofolo regarding response to summary judgment (0.2); Email exchange with Garofolo regarding issues for Davis and Straight depositions (0.5); Preparation of joint motion to alter motion deadline (1.2); Email from Callcott conveying offer of judgment (0.1); Initial review of Offer of | 9.70 350.00/hr | 3,395.00 |

Page    25

| | | Hrs/Rate | Amount |
|---|---|---|---|
| | Judgment (0.9);  Meeting with A. Davis ███████████ (2.1);  Meeting with R. Straight ███████████ (3.5); | | |
| 9/28/2009 | Telephone conference with Garofolo regarding fee petition and support; | 0.30 350.00/hr | 105.00 |
| 10/29/2009 | Review of Ds' Motion to interplead settlement funds (0.8); Research regarding effect of Rule 68 Offer on conflict (3.1); Preparation of Ps' Response to Ds' Motion to interplead settlement funds (3.1); | 7.00 350.00/hr | 2,450.00 |
| 10/30/2009 | Preparation of Ps' Response to Ds' Motion to interplead settlement funds (9.1); Telephone consultation with Garofolo regarding Response and case law (0.7); | 9.80 350.00/hr | 3,430.00 |
| 11/2/2009 | Telephone consultation with Garofolo regarding Response and filing; | 0.20 350.00/hr | 70.00 |
| 11/11/2009 | Telephone conference with Garofolo regarding fee petition,  4th Circuit cases, affidavits, and drafting; | 0.90 350.00/hr | 315.00 |
| 11/13/2009 | Review of time and billing records for case; | 5.20 350.00/hr | 1,820.00 |
| 11/16/2009 | Research regarding fee petition, review of discovery, and selection of exhibits for petition; | 7.40 350.00/hr | 2,590.00 |
| 11/17/2009 | Preparation of factual summary for petition; | 6.40 350.00/hr | 2,240.00 |
| 11/18/2009 | Preparation of factual summary for petition; | 6.70 350.00/hr | 2,345.00 |
| 11/19/2009 | Review and revision of factual summary for petition (2.3); Research regarding prejudgment interest on Rule 68 Offer of Judgment (2.3); Preparation of Declaration (0.9); Review of completed affidavits (1.1); | 6.70 350.00/hr | 2,345.00 |
| 11/20/2009 | Review and revision of memorandum in support of motion for fees (2.5); Preparation of exhibits to Declaration and Memorandum (0.9); Redaction of attorney-client privileged communications from billing (1.2); Final Review and revision of motion and memorandum for fees and expenses (2.7) | 7.30 350.00/hr | 2,555.00 |
| | ESTIMATED preparation time for Reply to Ds' Response in Opposition to Ps' Petition and Memorandum for Fees and Expenses; | 15.00 350.00/hr | 5,250.00 |
| | For professional services rendered | 1110.90 | $388,815.00 |

**Exhibit D to Declaration of M. Romano**

# Law Office of Michael J. Romano

128 South Second Street
Clarksburg, WV 26301


Marks Construction Profit Sharing Plan
Attn:  James Marks
18 Carriage Lane
Bridgeport, WV 26330
 In Reference To:   Marks Construction, et. al. v. Huntington National Bank, et. al.

Invoice #10296

Additional Charges :

| | | <u>Amount</u> |
|---|---|---|
| 4/1/2005 | Filing fee - State Court Complaint (Check No. 1968) | 125.00 * |
| 10/1/2006 | Copying Costs through 10/01/06 (437 copies @ .20 each) (For Discovery Production, Deposition Exhibits, Work Copies of Pleadings, Client Copies) | 87.40 * |
| 10/13/2006 | Deposition Transcript Costs for James Marks (Check No. 269) | 217.60 * |
| | Deposition Transcript Costs for Karen Marks (Check No. 269) | 182.35 * |
| 11/1/2006 | Deposition Transcript Costs for Sharon Hughes (Check No. 295) | 1,114.50 * |
| 4/7/2009 | Witness Location Fee | 83.10 |
| 5/22/2009 | FedEx - Garofolo | 44.30 |
| 5/26/2009 | Expert Fees - Johnson | 5,000.00 |
| 6/22/2009 | Postage | 4.94 |
| 7/3/2009 | Pacer Print Charges - 04/30/09 (Check No. 1379) | 40.80 |
| | Filing fee - Pro hac vice, Joseph A. Garofolo - 05/11/09 (Check No. 1379) | 50.00 |
| | Travel (Meeting with Client, Richard Straight) - 40 miles @ .50 per mile - 03/29/09 (Check No. 1379) | 20.00 |
| 7/10/2009 | FedEx (Check 1382) | 25.91 |
| 7/13/2009 | Postage | 17.70 |
| 7/27/2009 | Postage | 9.57 |
| 7/31/2009 | Expert Fees - Johnson (Check No. 1413) | 7,873.75 |
| 8/12/2009 | Postage | 9.22 |

**Exhibt E to Declaration of M. Romano**

Page    2

| | | Amount |
|---|---|---|
| 8/28/2009 | Postage | 3.15 |
| 9/21/2009 | Postage | 6.88 |
| 9/23/2009 | Deposition Transcript Costs for Petter | 1,364.80 * |
| 9/24/2009 | Attorney Meeting (Dinner) 08-30-09  (Check No. 1469) (Rodgers' Depo) | 104.83 |
| | 224 Miles - Pttisburgh - 09/16/09 (Check No. 1469) (Rodgers' Depo) | 112.00 |
| 10/16/2009 | Deposition Transcript Costs for Rodgers | 1,458.50* |
| 10/27/2009 | Travel - Meeting Room (Rodgers' Depo) 09/17 | 217.22 |
| | Travel - Sleeping Room (Rodgers' Depo) 09/18 | 160.50 |
| | Attorney Meeting (Dinner) - 09/17/09 | 114.84 |
| 11/16/2009 | Copying Costs through 11-16-09 (4569 copies @ .20 each) (For Discovery Production, Deposition Exhibits, Work Copies of Pleadings, Client Copies) | 913.80* |
| 11/20/2009 | Rodgers - Witness Fees & Expenses (Defense Expert) | 3,671.18 |
| | Expert Travel Expenses - Johnson (for Ds' Depo - Unreimbursable) | 688.87 |
| | Expert Fees - Johnson (Final) | 1,870.45 |
| | Total additional charges | $25,593.16 |
| | Less:   Total Taxable Costs (Form AO-133) | $5,513.95 |
| | Net Litigation Expenses | $20,079.21 |

*Taxable Costs submitted on Form AO-133

**Exhibt E to Declaration of M. Romano**