```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

MARKS CONSTRUCTION CO., INC.,
a West Virginia corporation
on behalf of
Marks Construction Co., Inc.
401(k) Profit Sharing Plan and
JAMES MARKS, KAREN MARKS,
ANGELA DAVIS and RICHARD STRAIGHT,
all individual participants
thereunder,

       Plaintiffs,

v.                                          Civil Action No. 1:05CV73
                                                        (STAMP)

THE HUNTINGTON NATIONAL BANK
and SHARON HUGHES,

       Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISQUALIFY
MICHAEL J. ROMANO AND JOSEPH A. GAROFOLO
AS COUNSEL FOR THE PLAINTIFFS**

I.   Background

The defendants in the above-styled civil action filed a motion to disqualify Michael J. Romano ("Romano") and Joseph A. Garofolo ("Garofolo") as counsel for the plaintiffs. The defendants removed this action to this Court on April 27, 2005. The defendants filed the present motion to disqualify on May 22, 2009. The defendants believe that these attorneys need to step down as counsel because of an alleged unwaivable conflict of interest between plaintiffs Marks Construction Co., Inc. ("Marks Construction"), James Marks, and Karen Marks and plaintiffs Angela Davis and Richard Straight in violation of West Virginia Rule of Professional Conduct 1.7(b). On

October 1, 2009, the parties agreed to a settlement and this Court entered an order of dismissal on October 2, 2009.

The plaintiffs' claims relate to services the defendants provided in connection with a 401(k) profit sharing plan ("plan") sponsored by Marks Construction, in which the individual plaintiffs participated.  The plaintiffs allege that the defendants breached their fiduciary duties under ERISA and engaged in transactions prohibited by ERISA.  Specifically, the plaintiffs allege the defendants improperly liquidated the investments of the plan without authorization and without regard to gain or loss, failed to prudently reinvest plan assets after liquidating the investments of the plan, and received excessive and unreasonable compensation from the plan and the plan's participants.  The plaintiffs further allege that these unauthorized acts violated ERISA §§ 404(a)(1)(A)-(D) as the defendants failed to act in the sole interest of the plaintiffs, to act with prudence, to diversify the plan's assets, and to adhere to the plan documents.  The plaintiffs also allege a violation of ERISA § 406(a)-(b).

In their motion, the defendants contend that plaintiffs Marks Construction, as the "employer," "plan administrator," and "named fiduciary," and James Marks and Karen Marks, in their capacity in acting for Marks Construction in matters relating to administration of the plan, were plan fiduciaries.  As plan fiduciaries, the defendants argue that these three plaintiffs owed fiduciary duties

to the plan's participants and beneficiaries, including plaintiffs Angela Davis and Richard Straight.  The defendants contend that even if they are fiduciaries with respect to the plan, Marks Construction, James Marks, and Karen Marks still were obligated to observe their fiduciary duties under ERISA.  The defendants state that if the plan suffered losses in connection with the conversion from a managed plan to a participant direct plan, which the defendants dispute, Marks Construction, James Marks, and Karen Marks are all fiduciaries who are responsible for such losses.  The defendants allege that these three plaintiffs were liable to the plan, and therefore, were liable indirectly to the other participants, Angela Davis and Richard Straight, for any harm the plan suffered as a result of the liquidation of the portfolio.  Therefore, the defendants contend that the plaintiffs' counsel have alleged a factual scenario in which some of their clients are liable to their other clients.  The defendants argue that because some plaintiffs' interests directly conflict with those of other plaintiffs', Romano and Garofolo should be disqualified from representing either group of plaintiffs.

The plaintiffs filed a response, arguing that the defendants' motion should be denied for three reasons: the defendants lack standing to bring the disqualification motion; the defendants waived any right to assert a conflict because of delay; and the

plaintiffs' counsel do not have an unwaivable conflict. The defendants filed a reply.

## II.   Applicable Law

In West Virginia, "one attorney may not represent two parties with conflicting interests without a knowing and voluntary waiver of rights." Ware v. Ware, 687 S.E.2d 382, 388 (W. Va. 2009). West Virginia Rule of Professional Conduct ("Rule") 1.7(b) provides, in relevant part:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client . . . unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation . . . [T]he consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

W. Va. R. Prof'l Conduct 1.7(b). A client may consent to representation, even when there is a conflict. Id. cmt. However, this consent has limits. Id. "[W]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent." Id.

The responsibility to resolve questions of conflict of interest lies primarily with the lawyer undertaking the representation. Id. Opposing counsel may raise the question

4

where "the conflict is such as clearly to call in question the fair or efficient administration of justice." Id. This Court, however, views an objection from an opposing party with caution, "for it can be misused as a technique of harassment." Id. The party moving for disqualification "must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1114 (D.N.J. 1993) (citing Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)).

### III.  Discussion

This Court first addresses the defendants' allegation that if the plan suffered losses in connection with the conversion from a managed plan to a participant-directed plan, Marks Construction, James Marks, and Karen Marks are fiduciaries who are responsible for such losses. While ERISA does require that a plan fiduciary make discretionary investment decisions "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matter would use," "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries." 29 U.S.C. § 1104(a)(1)(B); Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996). When employers or plan sponsors adopt, modify, or terminate welfare plans, they do not act as fiduciaries, "but are analogous to the settlors of a trust." Id.; Tatum v. R.J. Reynolds Tobacco Co.,

392 F.3d 636, 640 (4th Cir. 2004).  This rule finds its justification in ERISA's definition of fiduciary, which does not include the function of plan design.  Id.  Therefore, an employer may decide to amend a plan without being subject to fiduciary review.  Id.; see also Tootle v. ARINC, Inc., 222 F.R.D. 88, 98 (D. Md. 2004) ("[T]he fiduciary duties under ERISA generally are not triggered by decisions to amend or convert a benefits plan").  Accordingly, this Court cannot say that by approving the conversion from a managed plan to a participant-directed plan, Marks Construction, as the employer and plan sponsor, triggered a fiduciary duty to plaintiffs Angela Davis and Richard Straight.

The defendants next contend that there is a conflict of interest among the plaintiffs because if the fees were unreasonable and excessive, Marks Construction, James Marks, and Karen Marks violated a fiduciary duty by hiring Huntington National Bank in the first place and then signing the document approving of Huntington National Bank's fees and expenses.  This Court finds that the first part of the argument, that the defendants would not have provided services for the plan had Marks Construction not engaged it for that purpose, is without merit.  If this Court accepted that argument, then any fiduciary could then shift the blame for any possible alleged misconduct to the plan sponsor for simply hiring them.  The plaintiffs state that they bring the excessive and unreasonable fee argument because the services the defendants

rendered were inadequate and unauthorized and that the fees were not fully disclosed.  Because the plaintiffs' challenge over excessive and unreasonable fees involves the competency of the defendants and the value received for the money rather than the fee itself, this Court does not find the existence of a conflict among the plaintiffs.

Assuming without deciding that the defendants have standing to raise this issue, this Court finds that there is no conflict of interest.  A movant may raise the question of a conflict where the "conflict is such as clearly to call in question the fair or efficient administration of justice."  The movants, in this case, the defendants, have not met that burden.

Alternatively, even if a conflict existed, the defendants could not successfully disqualify the plaintiffs' counsel because the challenge is brought too late and any possible conflict is waivable and waived by the plaintiffs.

The defendants filed their notice of removal from state court on April 27, 2005.  The defendants filed the motion to disqualify on May 22, 2009, over four years after the notice of removal to this Court.  The defendants state in their reply brief that they were not aware of all of the circumstances surrounding the various roles of the parties at the time the action was removed and that the conflict crystalized when the plaintiffs filed the first amended complaint on January 23, 2009.  After reviewing the notice

of removal and the filings in this case, this Court cannot agree that the defendants' counsel, who specialize in ERISA matters, did not see the alleged conflict of interest that they now raise. In the notice of removal, the defendants discuss the plaintiffs' allegations that the defendants owed and breached fiduciary duties. They further state that ERISA preempts the state law claims and that this Court has original jurisdiction over the civil action because of the plaintiffs' claims under ERISA. On September 23, 2005, in the defendants' answer to the plaintiffs' complaint, the defendants state in paragraph ten on page seven that "[t]he plaintiffs, by their breach of fiduciary duties, proximately caused or contributed to the Plan's losses and other damages the Plaintiffs seek . . ." This is the exact argument that the defendants contend was not "crystalized" until January 2009. Further, on November 2, 2005, the plaintiffs, in their answer to the defendants' counterclaim, state on page three, paragraph seven, that the defendants' state law contractual right to indemnification claim "is preempted by ERISA or, alternatively, its enforcement should be denied on the ground that it would violate public policy to require an <u>ERISA Plan sponsor</u> to indemnify an <u>ERISA fiduciary</u> for the expenses of suit by a beneficiary or participant" (emphasis added). The plaintiffs there identified themselves as ERISA plan sponsors. On April 3, 2006, the defendants filed a motion to strike the plaintiffs' jury demand because of ERISA. The

defendants filed their motion for summary judgment on October 9, 2006, in which they allege the original complaint alleges breaches of defendants' fiduciary duties.  The plaintiffs' response, too, alleges the defendants breached their fiduciary duties.  On November 29, 2006, the plaintiff filed a motion to amend their state court complaint to state ERISA causes of action, attaching the proposed amended complaint.  In a supplemental memorandum in support of its motion for summary judgement filed on April 1, 2008, the defendants state, in explaining their October 9, 2006 motion for summary judgment, that "Counts I and II of the original Complaint, while they did not invoke ERISA expressly, alleged facts that, if true, would state claims for breach of the fiduciary duties prescribed by § 404(a) of ERISA, 29 U.S.C. § 1104(a)."

Every essential fact which underlies this motion was known to the defendants from the start of the litigation, which this Court pointed out in its memorandum opinion and order on January 23, 2009 granting the plaintiffs' motion to amend their complaint. Despite knowing the facts and alleging from the beginning that this was an ERISA case, the defendants inexplicably waited four years after removing this lawsuit to file the motion to disqualify.  "Courts have not hesitated to deny motions to disqualify brought after shorter periods of undue delay."  See Alexander, 822 F. Supp. at 1116 (denying motion to disqualify when suit brought more than three years after the filing of the complaint and the grounds of

9

the alleged conflict were known from the commencement of the suit); Trust Corp. of Mont. v. Piper Aircraft Corp., 701 F.2d 85, 87-88 (9th Cir. 1983) (same, delay of over two years); Central Milk Producers Co-op. v. Sentry Food Stores, Inc., 573 F.2d 988, 992 (8th Cir. 1978) (same, delay of over two years); Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1208-09 (E.D. Pa. 1992) (same, delay of over two years); Zimmerman v. Duggan, 81 B.R. 296, 300-01 (E.D. Pa. 1987) (same, delay of almost three years); Warpar Mfg. Corp. v. Ashland Oil, Inc., 606 F. Supp. 852, 858-59 (N.D. Ohio 1984) (same, delay of twenty one months); Glover v. Libman, 578 F. Supp. 748, 767 (N.D. Ga. 1983) (same, delay of thirteen months); Jackson v. J.C. Penney Co., Inc., 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981) (same, delay of fifteen months).  If Romano and Garofolo's representation of the plaintiffs "was as significant as [the defendants] now argue, it is inconceivable that they would have allowed this litigation to progress for [four] years" with full knowledge of the facts.  Alexander, 882 F. Supp at 1117.  Because the defendants knew the facts of this case and that the plaintiffs' state law claims were preempted by ERISA, as evidenced by the notice of removal, their answer to the complaint, the plaintiffs' answer to the counterclaim, the defendants' motion to strike the jury demand, their motion for summary judgment and their subsequent supplemental memorandum in support of their summary judgment motion, they could easily have anticipated the

present motion to disqualify from the beginning of this civil action. The defendants suggestion that this alleged conflict was not "crystalized" until the filing of the amended complaint in January 2009 is without merit.

Further, as to consent, the plaintiffs bear the burden of proving consent. <u>Celgene Corp. v. KV Pharmaceutical Co.</u>, 2008 WL 2937415, *6 (D.N.J. July 29, 2008) (unpublished). The plaintiffs' counsel assert that they secured an oral and written waiver for any potential conflict of interest.[1] Because the plaintiffs' counsel have met their burden of proving consent, the defendants must prove that a "disinterested lawyer would conclude that the client should not agree to the representation under the circumstances." W. Va. R. Prof'l Conduct 1.7(b) cmt. The defendants have failed to meet their heavy burden. Quoting the comment to the rule and then making a conclusory statement that the conflict is not waivable does not meet this heavy burden. Accordingly, this Court finds that in the alternative, even if a conflict existed, the defendants cannot challenge it because of undue delay and because the conflict was waived by the plaintiffs and the defendants have failed to demonstrate that a disinterested lawyer would conclude that the

---

[1] Plaintiffs' counsel assert that they are willing to present this written waiver or consent to this Court, <u>in camera</u>. Plaintiffs' counsels' representation, as officers of this Court, is sufficient for this Court to determine that the plaintiffs gave them consent to any conflict of interest, as alleged, and no submission of the waiver or consent by the plaintiffs is deemed necessary at this time.

11

plaintiffs should not have agreed to the representation under the circumstances.

## IV. Conclusion

For the reasons stated above, the defendants' motion to disqualify Michael J. Romano and Joseph A Garofolo as Counsel for the plaintiffs is hereby DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    April 2, 2010

                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE