IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARKS CONSTRUCTION CO., INC.,
a West Virginia corporation
on behalf of
Marks Construction Co., Inc.
401(k) Profit Sharing Plan and
JAMES MARKS, KAREN MARKS,
ANGELA DAVIS and RICHARD STRAIGHT,
all individual participants
thereunder,

      Plaintiffs,

v.                                Civil Action No. 1:05CV73
                                         (STAMP)

THE HUNTINGTON NATIONAL BANK
and SHARON HUGHES,

      Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING THE PLAINTIFFS' MOTION**
**FOR LEAVE TO FILE EXCESS PAGES;**
**GRANTING IN PART AND DENYING IN PART**
**PLAINTIFFS' PETITION FOR ATTORNEYS' FEES**
**AND EXPENSES PURSUANT TO ERISA § 502(g);**
**DENYING AS MOOT PLAINTIFFS' MOTION TO AMEND FIRST**
**AMENDED COMPLAINT TO ASSERT ERISA CLASS ACTION CLAIMS;**
**DENYING AS MOOT PLAINTIFFS' MOTION TO COMPEL DISCOVERY**
**FROM DEFENDANT, THE HUNTINGTON NATIONAL BANK;**
**DENYING AS MOOT DEFENDANTS' MOTION FOR PROTECTIVE ORDER**
**CONCERNING PLAINTIFFS' RULE 30(b)(6) NOTICE OF DEPOSITION AND**
**DENYING AS MOOT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON THE ISSUE OF PLAINTIFFS' REQUEST FOR AN INJUNCTION**
**DEBARRING DEFENDANTS FROM PROVIDING SERVICES FOR**
**ANY EMPLOYEE BENEFIT PLAN IN THE FUTURE**


I.  <u>Background</u>

Plaintiffs Marks Construction Company, Inc. ("Marks

Construction"), on behalf of its 401(k) profit sharing plan

("Plan"), and James Marks, Karen Marks, Angela Davis, and Richard

Straight, filed this civil action in the Circuit Court of Harrison County, West Virginia against defendants Huntington National Bank ("HNB") and Sharon Hughes ("Hughes"). The complaint alleged breach of fiduciary duty, negligence, fraud, and liability of HNB for Hughes' wrongful conduct under the doctrine of respondeat superior. As relief, the plaintiffs sought compensatory, general, and exemplary damages, pre- and post-judgment interest, and other relief as may be deemed just. The plaintiffs also sought attorneys' fees and costs. Thereafter, the defendants removed this action to this Court, invoking federal jurisdiction on the grounds of preemption pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

The plaintiffs' original complaint asserted claims for breach of fiduciary duty, negligence, fraud and vicarious liability. This Court granted in part and denied in part the defendants' motion for summary judgment and granted the plaintiffs' motion for leave to amend their complaint. The plaintiffs' amended complaint set forth three claims. Count I alleged that the defendants' liquidation of Plan investments without regard to income loss and the defendants' subsequent failure to appropriately reinvest Plan assets violated ERISA §§ 404(a)(1), 406(a)(b) (29 U.S.C. §§ 1104(a)(1), 1106(a)-(b)). Count II alleged that the defendants charged unreasonable fees to the Plan in violation of ERISA §§ 404(a)(1), 406(a)-(b) (29 U.S.C. §§ 1104(a)(1), 1106(a)-(b)). Count III

2

alleged that the defendants knowingly participated in violations of ERISA § 404(a)(1) and/or §§ 406(a)-(b), thereby entitling the plaintiffs to relief pursuant to ERISA § 502(a)(3). As to Count III, the plaintiffs alleged, in the alternative, that to the extent the defendants were found not to have been acting as fiduciaries with respect to certain conduct, their knowingly having engaged in conduct which constituted ERISA violations entitled the plaintiffs to equitable relief.

According to the plaintiffs, HNB and its agents and employees acted as the trustees, custodians, investment advisors, and managers of the Plan. The beneficiaries of the Plan were the principal shareholders of Marks Construction, James Marks and Karen Marks, and two employees, Angela Davis and Richard Straight. HNB initially managed the Plan from its office in Columbus, Ohio, and provided services from an HNB division in Michigan.

James Marks raised concerns with HNB concerning the Plan's performance and HNB's services relating to the Plan. At that time, James Marks explained to HNB that if the services and performance relating the Plan did not improve, Marks Construction would move the Plan to a new financial institution. In response, defendant Hughes, an HNB employee working in Charleston, West Virginia, contacted Marks Construction to address the concerns James Marks had raised on behalf of Marks Construction. Subsequently, Hughes met with James Marks, Karen Marks, and Angela Davis at Marks

Construction's office. The plaintiffs claim that at that meeting, Hughes stated that if Marks Construction retained Hughes as the account representative for the Plan, she would lower the fees charged to the Plan, provide better service, and generate a higher return on the Plan assets. Relying upon Hughes' representations, Marks Construction elected to keep the Plan with HNB and to have Hughes serve as the Plan's account representative. On February 18, 2003, Marks Construction adopted a board resolution to amend the Plan effective April 1, 2003.

Thereafter, HNB converted the Plan from an HNB-managed plan to a participant-directed plan. The conversion began some time in February 2003 and was completed on September 9, 2003. To implement the conversion, HNB liquidated the Plan's investment portfolio assets over a two-day period, April 6-7, 2003, causing losses to the Plan. The plaintiffs claim that Marks Construction did not authorize the liquidation of the Plan's assets and that Marks Construction learned about the liquidation only after it had been effected, when the plaintiffs received a copy of the amended Plan on or about April 30, 2003. After liquidating the assets, HNB did not reinvest the proceeds, but instead placed them in a Huntington Bank money market fund pending completion of the conversion process.

On July 31, 2004, the Plan was terminated and its assets distributed to each plan participant, then rolled over into

separate individual retirement accounts managed by a different financial institution, Bank One.

The defendants filed a motion to disqualify the plaintiffs' counsel on May 22, 2009. The defendants believed that these attorneys needed to step down as counsel because of an alleged unwaivable conflict of interest between plaintiffs Marks Construction Co., Inc. ("Marks Construction"), James Marks, and Karen Marks and plaintiffs Angela Davis and Richard Straight in violation of West Virginia Rule of Professional Conduct 1.7(b).

On October 2, 2009, this Court entered an order of dismissal after the parties notified this Court of the defendants' offer of judgment and the plaintiffs' acceptance of the defendants' offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure ("Rules"). Thereafter, on October 14, 2009, the defendants filed a motion to reopen and for leave to deposit funds with this Court. The plaintiffs then filed a motion for attorneys' fees and expenses.

This Court then denied the defendants' motion to disqualify the plaintiffs' counsel. This Court found that because the plaintiffs' challenge over excessive and unreasonable fees involved the competency of the defendants and the value received for the money rather than the fee itself, there was no existence of a conflict among the plaintiffs. This Court found that, in the alternative, even if a conflict existed, the defendants could not

challenge it because of undue delay and because the conflict was waived by the plaintiffs and the defendants failed to demonstrate that a disinterested lawyer would conclude that the plaintiffs should not have agreed to the representation under the circumstances.

This Court also granted in part and denied in part the defendants' motion to reopen and for leave to deposit funds with this Court. In that memorandum opinion and order, this Court directed the defendants to pay the settlement and denied the plaintiffs' request for a "Rollover Payment." Thereafter, Magistrate Judge John S. Kaull granted the defendants' motion to quash subpoena duces tecum regarding records of Steptoe & Johnson, PLLC.

This Court now addresses the plaintiffs' petition for attorneys' fees.[1] For the reasons stated below, this Court grants in part and denies in part the plaintiffs' petition for attorneys' fees.[2]

---

[1] The plaintiffs filed a motion to exceed page limitation in reply. For good cause shown, this Court GRANTS the plaintiffs' motion to exceed page limitation.

[2] The parties settled this case prior to this Court making a ruling on the following motions: the plaintiffs' motion to amend first amended complaint to assert ERISA class action claims; the plaintiffs' motion to compel discovery from defendant, The Huntington National Bank; the defendants' motion for protective order concerning the plaintiffs' Rule 30(b)(6) notice of deposition; and the defendants' motion for partial summary judgment on the issue of the plaintiffs' request for an injunction debarring the defendants from providing services for any employee benefit

## II.  Applicable Law

Under ERISA, "a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved 'some degree of success on the merits.'" Williams v. Metro. Life Ins. Co., 609 F.3d 622, 634 (4th Cir. 2010) (quoting Hardt v. Reliance Std. Life Ins. Co., 130 S. Ct. 2149, 2152 (2010)).[3]  However, there is no presumption in favor of an attorneys' fees award to a successful party.  Id. at 635.  Once a district court determines that a party in an ERISA case has achieved "some degree of success on the merits," the court "should" apply the factors set out in Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc).  Id.  The five Quesinberry factors do not provide a "rigid test," but instead provide "general guidelines." Id.; Quesinberry, 987 F.2d at 1029.

## III.  Discussion

### A.  Whether to Award Attorneys' Fees

In determining whether to award attorneys' fees under the ERISA statute, this Court must first determine whether the plaintiffs achieved "some degree of success on the merits." Williams, 609 F.3d at 634.  A party does not satisfy this standard

---

plan in the future.  Accordingly, these motions are DENIED AS MOOT.

[3]The parties filed a joint disclosure after the United States Supreme Court issued Hardt, in which the plaintiffs and defendants provided their interpretation of the opinion.

by achieving a purely procedural victory or a trivial success on the merits. A party satisfies this standard "if the court can fairly call the outcome of the litigation some success on the merits" without conducting a lengthy inquiry into whether the party's success was substantial or whether it occurred on a central issue. Hardt, 130 S. Ct. at 2158 (citing Ruckelshaus v. Sierra Club, 463 U.S. 680, 688 n.9 (1983)).

This Court finds that the plaintiffs have easily demonstrated "some success on the merits." The defendants made an offer of judgment to the plaintiffs for $150,000.00. The defendants made this offer after four years of litigation and four days before the parties were to complete discovery. Moreover, the plaintiffs state that they sought approximately $150,000.00 to compensate for their losses earlier in the litigation. Accordingly, this Court finds that the plaintiffs have achieved more than a "trivial success on the merits" or a "purely procedural" victory.

Because the plaintiffs are eligible for an award of attorneys' fees under Hardt, this Court moves to the second step of applying the Quesinberry factors as a general guide to the determination of whether to award attorneys' fees to the plaintiffs. Williams, 609 F.3d at 635. The factors this Court considers are:

(1) degree of opposing parties' culpability or bad faith;

(2) ability of opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

Quesinberry, 987 F.2d at 1029.

Under the first factor of Quesinberry, this Court determines whether the defendants acted in a culpable manner or in bad faith. Id. at 1028-29. Negligence or error does not establish culpability or bad faith. Wheeler v. Dynamic Eng'g Inc., 62 F.3d 634, 641 (4th Cir. 1995). Further, a party's legally justifiable position, while technical and disputed, does not indicate bad faith conduct. Custer v. Pan Am. Life. Ins. Co., 12 F.3d 410, 423 (4th Cir. 1993).

A "losing party may be culpable . . . without having acted with an ulterior motive." McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc., 33 F.3d 253, 256-57 (3d Cir. 1994). In the context of a civil case, "culpable conduct is commonly understood to mean conduct that is 'blameable; censurable; . . . at fault . . . . Such conduct normally involves something more than simple negligence . . . . [It] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose.'" Id. (citing Black's Law Dictionary (6th ed. 1990)); see also Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 48 (2d Cir. 2009) (quoting from McPherson). Further, culpable

9

conduct may involve the breach of a duty.  Phillips v. The Brink's Co., 2009 WL 3681835 at *2 (W.D. Va. Oct. 31, 2009).  "Culpability connotes wrongful conduct that is not intentional or deliberate and can be found where a plan's decision is discernibly against the weight of the evidence."  Cross v. Fleet Reserve Ass'n Pension Plan, 2010 WL 610870 at *3 (D. Md. Feb. 16, 2010).

This Court finds that the first factor weighs in favor of awarding attorneys' fees because the defendants' conduct was culpable.  The defendants did not act in bad faith, but their conduct was "wrong," amounting to more than negligence or error. Hughes allegedly represented that she would generate a better return, reduce fees, and provide better service to the plaintiffs. After meeting with Hughes, Marks Construction amended the Plan. The defendants then placed the money in an HNB money market fund, which provided a return of 0.5%.  As the plaintiffs state, the HNB money market fund was not the only investment in which the funds could have been invested.  The defendants admit that Hughes made mistakes involving the conversion of the Plan.  She used the wrong form in two instances and her contemporaneous documentation of events was not as thorough as it could have been.  The document executed by plaintiff Karen Marks, which HNB originally stated was the "default investment alternative" selection form, turned out to be a "sweep account" disclosure used for small amounts of cash remaining at the end of each business day.  Hughes testified in her

10

deposition that she "knew all along," as did the HNB conversion team, that the proceeds from the unauthorized liquidation were idly sitting in the HNB money market fund. HNB and Hughes had a fiduciary duty to prudently invest the proceeds or contact the Plan for instructions. Hughes testified that she used a written manual to guide her conversion of the Plan. Hughes used the wrong instruction manual. The use of the manual was a violation of HNB policy. An HNB official in charge of all HNB conversions and procedures testified that the proper conversion manual could only be found on a propriety HNB website and that no HNB employee should rely on any printed manual. Hughes failed to document certain alleged meetings, requests for information, instructions or representations she made to the Plan or its participants. This is another violation of HNB policy. HNB failed to supervise and review this conversion. As stated above, this Court does not believe the defendants' mistakes were performed with malice or guilty purpose, but the mistakes rose above mere error or simple negligence. These "censurable" mistakes also involved a breach of a duty to prudently invest. Therefore, this Court finds that the defendants' conduct was culpable and this factor weighs in favor of this Court granting attorneys' fees.

As to the second factor, HNB concedes that it could afford to pay an award of attorneys' fees. This Court finds that defendant Hughes cannot afford to pay an award of attorneys' fees. This

Court agrees with the defendants that HNB's capacity to pay does not by itself justify an award of attorneys' fees. <u>Quesinberry</u>, 987 F.2d at 1030. However, because HNB is capable of paying an award, this factor weighs in favor of awarding fees in this case.

This Court agrees with the plaintiffs that an award of attorneys' fees would be a deterrent to HNB to engage in similar conduct in the future. In their opposition to the petition for attorneys' fees, the defendants state that there will be little, if any, deterrent effect from this litigation and proceeded to state that HNB is unlikely "to deal again with a plan administrator and named fiduciary like the Markses that not only failed to carry out their responsibilities, but that affirmatively claimed complete ignorance of their duties and obligations toward the plan." At the same time, the defendants state that they were, at the worst, guilty of simple negligence. This Court disagrees with the defendants and believes that attorneys' fees are an adequate method of deterring the defendants from repeating the same mistakes that they made in this case and deter others from acting in similar circumstances.

The fourth factor, whether plaintiffs sought to benefit all participants and beneficiaries of the Plan, is met here as the lawsuit included every participant as a plaintiff. Furthermore, the plaintiffs' proposed distribution shows that each participant

did benefit from the lawsuit. This Court finds that the fourth factor weighs in favor of attorneys' fees.

Finally, this Court looks to whether the plaintiffs' positions were meritorious. Rather than proceeding to trial or a summary judgment ruling, the parties settled the case. This Court has reviewed the facts leading up to the settlement and believes that the plaintiffs' claims do have merit. Accordingly, this Court finds that the fifth factor tips in favor of awarding attorneys' fees.

Using the Quesinberry factors as a guide, this Court concludes that defendant The Huntington National Bank should pay reasonable attorneys' fees to the plaintiffs. Accordingly, this Court now moves to the calculation of the award of attorneys' fees authorized by § 1132(g)(1).

B.    Determination of Reasonable Attorneys' Fees

This Court must "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). To determine what is a "reasonable" number of hours and a "reasonable" rate, this Court must consider and make detailed findings with regard to twelve factors, commonly known as the Johnson factors. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978) (adopting the test from Johnson v. Georgia Highway

Express, Inc., 488 F.2d. 714, 717-19 (5th Cir. 1974)).  These

factors include:

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services rendered;
> (4) the attorney's opportunity costs in pressing the
> instant litigation; (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the
> litigation; (7) the time limitations imposed by the
> client or circumstances; (8) the amount in controversy
> and the results obtained; (9) the experience, reputation
> and ability of the attorney; (10) the undesirability of
> the case within the legal community in which the suit
> arose; (11) the nature and length of the professional
> relationship between attorney and client; and (12)
> attorneys' fees awards in similar cases.

Id. at n.28.

The plaintiffs' counsel requests $667,941.88 in attorneys'

fees and non-taxable costs.  Romano also seeks $5,513.95 in taxable

costs.  This total amount includes $388,815.00[4] for Michael J.

Romano; $195,390.00[5] for Joseph A. Garofolo; $22,895.00[6] for Jon F.

Doyle; $38,040.00[7] for Benjamin P. Quest; $2,722.67 in non-taxable

costs allegedly recoverable under ERISA § 502(g) by ERISA Law

Partners; $20,079.21 in non-taxable costs allegedly recoverable

under ERISA § 502(g) by Michael Romano.

---

[4]Based on 1110.9 hours worked at a rate of $350.00/hour.

[5]Based on 434.2 hours worked at a rate of $450.00/hour.

[6]Based on 48.2 hours worked at a rate of $475.00/hour.

[7]Based on 190.2 hours worked at a rate of $200.00/hour.

1.   <u>Time and Labor Expended</u>

The plaintiffs' attorneys submitted an itemized time sheet for the time and labor expended on this civil action.   The defendants make several objections to the amounts of time that the plaintiffs' attorneys' request fees.   First, the defendants believe that this Court should not award fees for work performed prior to the filing of the first amended complaint on January 23, 2009.   Before that date, the plaintiffs' complaint alleged only state law causes of action.   As discussed above, the plaintiffs filed a four count complaint against the defendants in the Circuit Court of Harrison County.   These four counts alleged breach of fiduciary duties, negligence, common law fraud, and vicarious liability.   The defendants then removed this case to this Court.   The plaintiffs contend that, from the beginning of this civil action, attorney time was directly related to the plaintiffs' ERISA claims.   In support of this contention, the plaintiffs point to their first combined discovery requests, served on April 17, 2006.   These requests do focus on the plaintiffs' ERISA claims.   The plaintiffs state that none of their discovery requests focused on claims of common law fraud or vicarious liability, the two counts of the original complaint that this Court dismissed.   The plaintiffs state that they abandoned their state law claims not cognizable under ERISA from the date of removal and never pursued those claims to any degree.   The defendants filed a motion for summary judgment on

October 9, 2006.  On October 25, 2006, this Court then entered an order staying all proceedings.  On December 29, 2006, while this action was stayed, the plaintiffs filed their first motion for leave to amend their complaint.  This Court lifted the stay on January 23, 2009 when it ruled on the defendants' motion for summary judgment.  This Court granted the plaintiffs' motion for leave to file an amended complaint in that same order.  In the memorandum opinion and order granting in part and denying in part the defendants' motion to dismiss, this Court stated that the plaintiffs' claims for breach of fiduciary duty and negligence "set forth sufficient allegations under ERISA to survive a motion for summary judgment . . . .  [T]he plaintiff's initial complaint states claims relating to Plan investments and claims relating to the loans Plan participants took out against the Plan."

The Supreme Court rejected the argument that a court may calculate attorneys' fees based on a purely mathematical comparison between successful claims versus unsuccessful claims.  Hensley v. Eckerhart, 461 U.S. 424, 435-36 (1983).  Instead of a mathematical ratio, a court should look to "whether the claims on which the plaintiff prevailed are related to those on which he did not."  Brodziak v. Runyon, 145 F.3d 194, 197 (4th Cir. 1998).  When "all claims 'involve a common core of facts . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim

basis.'" Id. (quoting Hensley, 461 U.S. at 435). Thus, the court should focus on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435.

The defendants cite cases from outside the Fourth Circuit for the proposition that this Court cannot award attorneys' fees to preempted claims. Life Partners, Inc. v. Life Ins. Co. of N. Am., 203 F.3d 324, 326 (5th Cir. 1999) (per curiam). The Life Partners court did not provide details of the underlying action. The court stated that the district court correctly ruled that the initial complaint "failed to state a claim on which relief could be granted because it alleged only state causes of action that were preempted by ERISA." Id. It held that until the plaintiffs amended their complaint to state a cause of action under ERISA, the defendant's "defense to the claims was valid and meritorious." Id. The court then concluded that the plaintiffs should not have been awarded attorneys' fees prior to the filing of the amended complaint. Id. In 2007, a federal district court in Alabama applied Life Partners. Anderson v. Unum Life Ins. Co. of Am., 2007 WL 604728 (M.D. Ala. Feb. 27, 2007) (unpublished). In that case, the plaintiff's ERISA claim and her state law claims for fraud, concealment, breach of contract, and bad faith shared a common core of facts, but the court found that the legal theories were vastly different. Anderson, 2007 WL 604728 at *12. It stated that there were few, if

17

any, legal similarities between the plaintiff's state law and ERISA claims. Id. The court stated that the first three years of the litigation focused on the plaintiff's challenge to ERISA preemption. Id. The court directed that the plaintiff file an amended complaint to allege an ERISA claim, which she did. Id. However, the plaintiff in that case continued to oppose ERISA preemption. Id. The plaintiff continued to fight the preemption issue until the Eleventh Circuit decided an interlocutory appeal, ruling that the plaintiff's claims were preempted by ERISA. Id. The Court then considered the relationship between the amount of the fee awarded and the result obtained, as required by Hensley. Id. at 13. The court concluded that it would be unjust to permit the plaintiff's counsel to recover the full amount of time expended pursing the state law claims as a basis for recovery. Id. The court stated that, in sum, "the attorney's fees [the plaintiff] incurred in fighting ERISA preemption is excessive when weighed against the nearly indisputable fact that ERISA controlled the outcome of this litigation." Id. It reduced the lodestar by forty percent to reflect the plaintiff's lack of success. Id. The court did not reduce the lodestar from the clear cut filing of the amended complaint. Id. Instead, the court looked to the percentage of the time the plaintiff spent fighting her ERISA claim opposed to fighting the preemption issue. Id.

18

In this case, the plaintiffs did not object to ERISA preemption. From the beginning, they did not argue that their claims were preempted by ERISA after removal. In fact, in their response to the defendants' motion for summary judgment, the plaintiffs argue that they never disputed that their state law claims in the initial complaint were preempted. The plaintiffs never filed a motion to remand and agreed to the defendants' motion to strike the plaintiffs' jury demand. All discovery conducted, briefs filed, and depositions conducted prior to the amended complaint related solely to the plaintiffs' ERISA claims. In addition, not only was there a core of common facts between the ERISA claims and Counts I and II of the original complaint the same, but also the legal theories were not vastly different. Most importantly, the plaintiffs achieved success on the merits.

This Court finds that the present case can easily be distinguished from <u>Life Partners</u>. As the defendants state in their notice of removal, this Court has original jurisdiction of the <u>original</u> complaint pursuant to ERISA and that the original "complaint alleges breaches of fiduciary duty <u>under ERISA</u>, and § 502(a) of ERISA provides a potential remedy for such alleged violations" (emphasis added). The text of the applicable statute provides that this Court may award attorneys' fees "in any action under this subchapter." 29 U.S.C. § 1132(g)(1). This Court finds that it would be unjust to adjust the lodestar under the rationale

that the action was not an action under ERISA until the filing of the amended complaint. At the time of removal, the plaintiffs' counsel began to litigate this action as an action under ERISA. To reduce the lodestar and not award attorneys' fees prior to January 23, 2009 would promote form over substance. However, this Court finds that the lodestar will be adjusted downward for Michael Romano by 20.8 hours, the amount of hours Romano spent on the case prior to the removal of this action.

The defendants next argue that the plaintiffs should not be awarded fees for work performed regarding the proposed second amended complaint, including research and related motion practice, because the motion to amend was not granted and the claims were never before this Court. This Court disagrees. The parties settled this case prior to this Court ruling on the motion for leave to file a second amended complaint. The proposed second amended complaint alleged ERISA class claims with a common core of fact and related legal theories.

In addition, the defendants argue that the plaintiffs only "partially" prevailed and therefore should not be entitled to full attorneys' fees. The defendants also believe that because the plaintiffs offered to settle for $775,000.00, they only achieved partial success. This Court does not agree. First, as to the amount of settlement, the plaintiffs state that the $775,000.00 included fees and costs, which, according to plaintiffs, amount to

$667,422.00 plus the $5,513.95 in taxable costs. Secondly, as to their success, the plaintiffs state that the amount accepted is similar to what they initially requested. This Court cannot say, as the defendants believe, that $150,000.00 is not a significant victory for the plaintiffs.

The defendants contend that certain tasks by the plaintiffs took excessive amounts of time. This Court has carefully reviewed the defendants' objections and find that the plaintiffs' counsels' time on tasks was not excessive, redundant, or unnecessary. Daly, 790 F.2d at 1079. The test for proper exercise of "billing judgment" is reasonableness. City of Riverside v. Rivera, 477 U.S. 561, 569 n.4. Here, the number of hours expended by the plaintiffs' counsel was reasonable.

The defendants also argue that the plaintiffs' fee requests for alleged inappropriate discovery and alleged wasteful motion practice should be denied. The plaintiffs argue that the defendants' alleged obstinate tactics forced the plaintiffs' attorneys to devote significant resources to motion practice and discovery. This Court acknowledges that the underlying litigation involved difficult legal issues. This Court has reviewed the case and finds that the plaintiffs did not engage in inappropriate discovery or wasteful motion practice. This Court notes, without ruling that the defendants acted inappropriately, that a defendant "cannot litigate tenaciously and then be heard to complain about

the time necessarily spent by the plaintiff in response." Id. at 580 n.11 (internal citations omitted).

Finally, the defendants argue that the plaintiffs' counsels' hourly rates should be reduced for any fees awarded for the years 2005, 2006, 2007, and 2008. This Court does not agree. District courts must account for the effect of delay in payment on the value of the attorneys' fee award. Ohio River Valley Envtl. Coal. Inc. v. Green Valley Coal Co., 511 F.3d 407, 419 (4th Cir. 2007). Courts therefore account for this delay factor by "either using a fee rate based on the current market or by using the historical fee rate with reasonable interest added." Id.

### 2. Novelty and Difficulty of the Questions Raised

The plaintiffs alleged that the defendants' conduct involved fiduciary breaches, prohibited transactions, and self-dealing. This civil action also involved issues of standing of plan participants to sue after a plan has been terminated. The defendants contend that there is nothing novel in this. Nonetheless, this Court finds that the issues presented in this were complex and difficult.

### 3. Skill Required

Allan N. Karlin, a West Virginia attorney, testified in a declaration that ERISA is a specialized practice area. He stated that ERISA cases are "generally difficult, involve significant risks, require substantial expenditures of time in researching

complex areas of law, and require careful research and development of factual issues." This Court agrees.

Romano's declaration indicates that he is a certified public accountant, has a background in publicly traded securities and investments, and has legal experience in securities and financial instruments. He also states that while he has provided in the past and currently provides legal advice to employers in connection with potential litigation regarding employee benefit plans, ERISA issues are a small part of his overall litigation practice. Three other attorneys provided affidavits which speak highly of Romano's competence as an attorney.

Joseph A. Garofolo submitted a declaration, in which he indicates that he specializes in ERISA. He states that he is a partner with ERISA Law Partners, LLP, a boutique firm specializing in ERISA. He states that he has successfully litigated numerous ERISA cases in federal courts across the country. Three attorneys provided affidavits, which state that Garofolo is an ERISA specialist.

This Court believes that Romano and Garofolo are experienced attorneys with good reputations in their fields. This Court will not adjust the lodestar downward for lack of skill on the part of the attorneys.

4. <u>Attorneys' Opportunity Costs</u>

Romano states in his declaration that he conservatively estimates that his contingency fees collected in 2008 and 2009 would equate to between $500.00 and $750.00 per hour. He states that his acceptance of this case forced him to forgo more lucrative contingency fee cases which otherwise would be available. This is not disputed.

5. <u>Customary Fee for Like Work</u>

The defendants argue that the plaintiffs' requested rates are excessive when compared to the prevailing market in the community where the plaintiffs filed the case. Michael Romano billed his work in this case at $350.00 per hour. Joseph Garofolo billed his work at $450.00 per hour. Jon Doyle billed his work at $475.00 per hour. Benjamin Quest billed his work at $200.00 per hour. The defendants believe that lead counsel in an ERISA case in north central West Virginia should earn between $230.00 and $320.00 per hour.

Reasonable attorney's fees in federal civil actions should be calculated "according to prevailing market rates in the relevant community" at the time the services were rendered. <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984); <u>Trimper v. City of Norfolk, Va.</u>, 58 F.3d 68, 73 (4th Cir. 1995). In determining the relevant market, this Court looks to the "community in which the court where the action is prosecuted sits." <u>Rum Creek Coal Sales, Inc. v.</u>

Caperton, 31 F.3d 169, 175 (4th Cir. 1994).  This determination is "fact-intensive and best guided by what attorneys earn from paying clients for similar services in similar circumstances." Id. Evidence "to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Robinson, 560 F.3d at 245.  Where it is reasonable to retain attorneys from other communities, a court may also consider those rates.  Rum Creek Coal Sales, 31 F.3d at 175. This Court must look to whether "services of like quality [are] truly available in the locality where the services are rendered." Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988).

The plaintiffs argue that Romano had to seek assistance outside of West Virginia.  They state that Romano was unsuccessful in finding in-state counsel specializing in the relevant ERISA issues and it was reasonable for him to seek out ERISA Law Partners.  Allan Karlin, in his affidavit, states that Romano needed to bring in a national specialist in this case and that Garofolo's billing rate is reasonable for a national specialist. The plaintiffs also attach affidavits from three attorneys outside of West Virginia that testify ERISA Law Partners' rates are reasonable in the national market for ERISA attorneys.

The defendants believe that the relevant community rate for a lead counsel in an ERISA suit is between $230.00 and $320.00.  To

25

support this figure, the defendants attach affidavits from Grant Shuman and Michael Foster, West Virginia attorneys practicing in the area of ERISA. Foster is a partner in a law firm and bills his work at $320.00 per hour. Shuman is a member in a law firm and bills his work at $230.00 per hour. The defendants argue that Romano is not entitled to $350.00 because, while he is lead counsel, his specialty is not ERISA. The defendants also object based on Garofolo's years of experience, arguing that Foster was admitted to the bar the same year Garofolo was born.

This Court agrees with the defendants that the plaintiffs were not reasonable in leaving West Virginia to seek assistance. As the defendants' evidence shows, there are capable ERISA attorneys in West Virginia who could have capably assisted Romano. The plaintiffs contend that Shuman and Foster do not offer like quality services as Garofolo because Shuman and Foster often represent clients on the defense side. This Court does not agree with the plaintiffs' contentions. Foster's affidavit makes clear that there are several competent attorneys that litigate ERISA cases in north central West Virginia. This Court also notes, however, that it does not agree with the contention that hourly rates should be based on years of experience. While that is a factor to consider, this Court points out that the Supreme Court has also indicated that skill and reputation are important in determining a reasonable hourly rate. Blum, 465 U.S. at 896 n.11.

Accordingly, this Court finds that the lodestar should be adjusted downward for Garofolo and Doyle's hourly rate. This Court believes, based on the affidavits attached as exhibits, that $350.00 is a reasonable hourly fee for lead counsel in this case. Therefore, this Court agrees that Romano and Quest's hourly rates are reasonable. However, Garofolo and Doyle's hourly rate will be reduced to $350.00, the reasonable rate in the relevant community of north central West Virginia.

6. <u>Attorneys' Expectations at the Outset</u>

This factor relates to "whether the fee is fixed or contingent." <u>Johnson</u>, 488 F.2d at 718. The plaintiffs retained the attorneys in this case on a contingent fee basis. Courts "have generally recognized that a contingent fee lawyer may have the right to expect a fee greater than if his fee were guaranteed." <u>Va. Acad. of Clinical Psychologists v. Blue Shield of Va.</u>, 543 F. Supp. 126, 148 (E.D. Va. 1982).

7. <u>Time Limitations</u>

This factor seeks to compensate "[p]riority work that delays the lawyer's other legal work" and is "particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." <u>Johnson</u>, 488 F.2d at 718. Although Garofolo joined in the proceedings later in the litigation and the plaintiffs' attorneys had to devote significant amounts of time to this case, "the demands imposed were not

sufficient to merit an adjustment under this factor." <u>Va. Acad.</u>,
543 F. Supp. at 149.

     8.   <u>Amount in Controversy and the Results Obtained</u>

As noted earlier, the parties disagree as to the significance
of an award of $150,000.00. The plaintiffs achieved a successful
result. The plaintiffs state that $150,000.00 is the amount they
sought at the beginning of this litigation and this Court believes
it is a significant award. Accordingly, this factor does not
support a downward adjustment of the lodestar.

     9.   <u>Experience, Reputation, and Ability of the Attorneys</u>

Romano has been practicing law for fifteen years and has been
awarded the Trial Lawyer of the Year by the former West Virginia
Trial Lawyers Association, now known as the West Virginia
Association for Justice. Before being an attorney, Romano worked
in publicly traded securities and investments with the United
States Securities Exchange Commission. Romano is also a certified
public accountant. Romano attached affidavits of attorneys
familiar with his work who testify to his character and competence
as an attorney. This Court believes that Romano's demonstrated
skill and reputation support his requested fee.

Garofolo specializes in ERISA and devotes the majority of his
practice to ERISA litigation. In his affidavit, he states he
successfully litigated numerous ERISA cases in federal courts
ranging from complex class actions involving fiduciary breach

claims to individual participant benefit denials.  Garofolo also provided this Court with affidavits from attorneys across the country who testify as to the excellence of his work in the filed of ERISA litigation.  Based upon these affidavits, this Court finds that Garofolo's demonstrated skill, reputation, and experience in ERISA litigation supports awarding him fees pursuant to the prevailing market rate in this community.

    10.  <u>Undesirability of the Case</u>

The plaintiff and the defendant dispute the undesirability of the case.  Barry Hill, an attorney licensed to practice in West Virginia, Ohio, and Pennsylvania, stated in a declaration that "[m]ost plaintiffs' attorneys find ERISA cases unappealing, because the bad faith component of litigation against one's own carrier is not incorporated into the ERISA statute . . ."  Hill further stated that if not for the possibility of recovering lodestar fees and an upward adjustment, it would be difficult for a plaintiff to obtain competent legal counsel.  Karlin stated in his declaration that few attorneys in West Virginia are willing to represent plaintiffs in matters such as the ones in the present case because of the extensive commitments of time and resources for ERISA cases.

The defendants point to Foster's affidavit, in which he states that there are several competent and effective attorneys that litigate employee benefits matters in north central West Virginia. This Court agrees with the position of the defendants as to this

factor. While this Court has acknowledged that the litigation in this case involved a complex, difficult topic, this Court believes that there are competent attorneys focusing on employee benefits willing to take a case such as this in north central West Virginia.

11.  Nature and Length of the Professional Relationship

Plaintiffs' counsel decided to represent the plaintiffs on a contingency fee basis. This Court notes that Romano has represented the plaintiffs from the beginning of this litigation.

12.  Attorneys' Fees Awards in Similar Cases

The plaintiffs direct this Court to a 2006 opinion by Judge W. Craig Broadwater, in which he awarded $300.00 an hour for an ERISA benefits denial claim. Bouzahar v. CNA Group Life Assurance Co., No. 3:04cv52, (N.D. W. Va. June 26, 2006). The defendants believe that Judge Broadwater did not analyze the fee request. Instead, they point to the language of his opinion, in which he states that the defendants did not argue an alternative hourly rate. Here, the defendants contend that they have persuasively shown that the hourly rate for lead counsel is $230.00 to $320.00 based on affidavits. Bouzahar involved a case on the Martinsburg docket. The defendants believe that Martinsburg's proximity to Washington, D.C. may cause its rates to be higher than in other parts of West Virginia.

The defendants also cite Cook v. Jones & Jordan Engineering, Inc., 2009 WL 3169152 (S.D. W. Va. Sept. 29, 2009). In that case,

the court found that the 2009 rate for an ERISA attorney was $275.00. Cook, 2009 WL 3169152 at *5 n.7. The defendants state that the attorney awarded $275.00 in Cook had more experience in handling ERISA litigation matters than either of the plaintiffs' counsel. The plaintiffs believe Cook is not an appropriate comparison because the matters were not as complex. The plaintiffs cite the court's statement that in Cook, the "issues were neither novel nor particularly difficult." Id. at *4.

This Court finds that the lodestar should not be adjusted pursuant to this twelfth factor, based upon the cases provided to this Court by the parties. This Court believes that $350.00 per hour is reasonable for Romano and Garofolo in this case.

Based on this Court's analysis of all of the applicable factors, this Court awards attorneys' fees as follows, taking into account the downward adjustments made to the lodestar above in factors one and five:

| Attorney | Hours | Rate | Total |
|----------|-------|------|-------|
| Romano | 1090.1 | $350.00/hour | $381,535.00 |
| Garofolo | 434.2 | $350.00/hour | $151,970.00 |
| Doyle | 48.2 | $350.00/hour | $ 16,870.00 |
| Quest | 190.2 | $200.00/hour | $ 38,040.00 |
| Total | 1762.7 | | $588,415.00 |

C.   Costs

In addition to attorneys' fees, the plaintiffs request an award of costs in the amount of $25,593.16 to Romano and $2,722.67

for ERISA Law Partners.  The defendants do not object to the award
of taxable costs, but argue that this Court should not award non-
taxable costs.

In making its determination on whether to award costs, this
Court is guided by Federal Rule of Civil Procedure 54(d).  O'Bryhim
v. Reliance Standard Life Ins. Co., 997 F. Supp. 728, 737 (E.D. Va.
1998).  Therefore, this Court will allow costs allowed under 28
U.S.C. § 1920.[8]  Id.; Cook, 2009 WL 3169152 at *6.

The plaintiffs ask for $5,513.95 in taxable costs.  This
includes $50.00 for fees of the Clerk; $4,337.75 for fees for
printed or electronically recorded transcripts necessarily obtained
for use in the case; $1,001.20 for copies of materials where the
copies are necessarily obtained for use in the case; and $125.00
for filing fees with the Harrison County, West Virginia Clerk.

---

[8]Title 28, United States Code, Section 1920 states:

A judge or clerk of any court of the United States may
tax as costs the following: (1) Fees of the clerk and
marshal; (2) Fees for printed or electronically recorded
transcripts necessarily obtained for use in the case; (3)
Fees and disbursements for printing and witnesses; (4)
Fees for exemplification and the costs of making copies
of any materials where the copies are necessarily
obtained for use in the case; (5) Docket fees under
section 1923 of this title; (6) Compensation of court
appointed experts, compensation of interpreters, and
salaries, fees, expenses, and costs of special
interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Because these fees are authorized under 28 U.S.C. § 1920, this Court will award the plaintiffs $5,513.95 in taxable costs.

The plaintiffs ask for $19,104.25 in expert fees and expenses. In 1991, the Supreme Court did not allow an award of expert fees in a case arising under the Civil Rights Act of 1964, reaffirming its decision in Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987), which stated that absent a specific statutory provision, an award of expert fees must be based on 28 U.S.C. § 1821. W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 97-101 (1991). The United States Congress legislatively overturned Casey when it allowed the recovery of expert fees in the 1991 Civil Rights Act. Stender v. Lucky Stores, Inc., 780 F. Supp. 1302, 1306 n.13 (N.D. Cal. 1992). The Fourth Circuit has not ruled on whether expert costs are recoverable under the ERISA fee shifting statute. In the past year, two unpublished cases in the Southern District of West Virginia reached two different conclusions as to this point. Compare Cook, 2009 WL 3169152 at *6, with Watkins v. Wells Fargo Home Mortg., 2010 WL 2486247, *5 (S.D. W. Va. June 15, 2010). In Cook, the court held that pursuant to the Supreme Court's decision in Crawford Fitting, expert fees were limited to those authorized under 28 U.S.C. § 1821. The court in Cook did not discuss the impact of the 1991 Civil Rights Act. The court in Watkins distinguished Cook, stating that expert fees were recoverable because the expert conducted an investigation and prepared a report

33

while in <u>Cook</u>, the expert had simply been retained for possible future use. <u>Watkins</u>, 2010 WL 2486247 at *6. The court in <u>Watkins</u> did not rely on any authority in granting expert costs and travel costs.

This Court will not award the plaintiffs expert costs. In making this decision, this Court relies on the Tenth Circuit's well-reasoned decision in <u>Holland v. Valhi, Inc.</u>, 22 F.3d 968, 979-80 (10th Cir. 1994). The <u>Holland</u> court recognized that Congress legislatively overruled the prohibition of awarding expert costs in actions brought pursuant to certain civil rights statutes. The court then cited <u>Crawford Fitting</u> for the proposition that "absent a specific statutory provision, an award of expert fees must be based on 28 U.S.C. § 1821 and 1920." <u>Holland</u>, 22 F.3d at 979. ERISA's fee shifting statute states that a district court, in its discretion, "may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). This language does not specifically provide for expert costs. Because this is an ERISA action and not a civil rights action, 42 U.S.C. § 1988 does not "authorize or mandate an award of expert fees in this case." <u>Id.</u> at 980. This Court finds that ERISA is not included in 42 U.S.C. § 1988 and that its specific fee shifting language is inapposite. <u>Id.</u>; <u>Agredano v. Mut. of Omaha Cos.</u>, 75 F.3d 541, 544 (9th Cir. 1996).

This Court also denies the plaintiffs' request for costs for postage and Federal Express expenses. The costs are incidental expenses of litigation and not allowable costs under Rule 54(d) or 28 U.S.C. § 1920. <u>O'Bryhim</u>, 997 F. Supp. at 737.

Other district courts in this circuit have held that "costs of computer legal research are properly reflected as part of the law firm's overhead and, as such, are a factor to be included in the setting of attorneys fees as opposed to ordinary costs." <u>Id.</u>; <u>Cook</u>, 2009 WL 3169152 at *6. Thus, this Court denies the plaintiffs' request for PACER print charges.

Finally, the plaintiffs request an award of costs for a "witness location fee" as well as all of the travel expenses of Romano and the attorneys at ERISA Law Partners. Because these expenses are not compensable under Rule 54(d) or 28 U.S.C. § 1920, this Court denies the plaintiffs' request for these costs.

Accordingly, this Court awards no costs to the attorneys of ERISA Law Partners and awards the following costs to the Law Office of Michael J. Romano:

| <u>Expense</u> | <u>Amount</u> |
|---|---|
| Fees of the Clerk | $    50.00 |
| Deposition Transcripts | $4,337.75 |
| Copies | $1,001.20 |
| Filing Fee in State Court | $   125.00 |
| <u>Total</u> | $5,513.95 |

## IV.  Conclusion

For the reasons stated above, this Court GRANTS the plaintiffs' motion to exceed page limitation in reply (Docket No. 229); GRANTS IN PART and DENIES IN PART the plaintiffs' petition for attorneys' fees (Docket No. 214); and DENIES AS MOOT the plaintiffs' motion to amend first amended complaint to assert ERISA class action claims (Docket No. 131); the plaintiffs' motion to compel discovery from defendant, The Huntington National Bank (Docket No. 146); the defendants' motion for protective order concerning the plaintiffs' Rule 30(b)(6) notice of deposition (Docket No. 183); and the defendants' motion for partial summary judgment on the issue of the plaintiffs' request for an injunction debarring the defendants from providing services for any employee benefit plan in the future (Docket No. 190).  It is ORDERED that defendant, The Huntington National Bank, shall pay the plaintiffs attorneys' fees in the total of $588,415.00 and costs in the amount of $5,513.95.  It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:     August 27, 2010


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE